**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DONALD W. FINCH, Individually and On Behalf Of All Others Similarly Situated, | Civ. No.: |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS** |
| -against- | |
| iANTHUS CAPITAL HOLDINGS, INC., GOTHAM GREEN PARTNERS, HADLEY C. FORD, JULIUS JOHN KALCEVICH, and JASON ADLER, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Donald W. Finch ("Plaintiff") alleges the following based upon the investigation by his counsel, which includes, among other things: a review of public documents, media reports, filings with the Canadian Securities Administrators (the "CSA"), wire and press releases published by and regarding iAnthus Capital Holdings, Inc. ("iAnthus" or the "Company"), securities analysts' reports and advisories about the Company, and information readily available on the Internet. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal class action on behalf of purchasers (the "Class") of the common stock of iAnthus, who purchased or otherwise acquired the Company's common stock between May 14, 2018 and April 6, 2020, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated under Section 10(b) of the Exchange Act, 17 C.F.R. § 240.10b-5.

3.      This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331.

4.      Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b).  Many of the acts and transactions alleged herein, including the dissemination of materially false and misleading information, occurred in substantial part in this Judicial District.

5.      In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.      Plaintiff purchased iAnthus common stock at artificially inflated prices during the Class Period, as indicated in the Certification filed herewith, and has been damaged thereby.

7.      Defendant iAnthus is incorporated in Canada, with its registered office located at Suite 1500, 1055 West Georgia Street, Vancouver, British Columbia, Canada, V6E 4N7, and its principal executive offices at 505 Fifth Avenue, 23rd Floor, New York, NY 10017.  The Company's common shares are listed on the Canadian Stock Exchange under the trading symbol "IAN," and trade in the United States over-the-counter on the OTCQX, part of the OTC Markets Group, under the trading symbol "ITHUF."

8.      Gotham Green Partners ("GGP") is a private equity firm that focuses on deploying capital into cannabis and cannabis-related enterprises. GGP manages a diversified portfolio of investments, investing across the cannabis value chain.  GGP maintains its primary offices at 1437 4th Street, Suite 200, Santa Monica, CA 90401.  GGP entered into a Secured Debenture Purchase Agreement (the "2018 Debenture Agreement") with iAnthus on May 24, 2018, which provided for $40 million in secured debenture financing and a concurrent $10 million equity financing agreement with GGP (the "2018 Debenture").  On September 30, 2019, GGP entered into a non-brokered private placement offering of US$20.0 million 13% secured notes (the "2019 Debenture") under an Amended and Restated Secured Debenture Purchase Agreement between the Company and GGP (the "Amended Debenture Agreement").

9.      Defendant Hadley C. Ford ("Ford") is the co-founder of the Company who is, and at all times relevant hereto has been, the Chief Executive Officer and a director of the iAnthus. Defendant Ford signed the 2018 Debenture Agreement and the Amended Debenture Agreement on behalf of iAnthus.

10.     Defendant Julius John Kalcevich ("Kalcevich") is, and at all times relevant hereto has been, the Chief Financial Officer of the Company.  Defendant Kalcevich signed the 2018 Debenture Agreement on behalf of iAnthus.

11.     Defendant Jason Adler ("Adler") is, and at all times relevant hereto has been, the Managing Partner of GGP.  Defendant Adler signed the 2018 Debenture Agreement and the Amended Debenture Agreement on behalf GGP.

12.     Defendants Ford, Kalcevich and Adler are collectively referred to herein as the "Individual Defendants."

13.     The Individual Defendants, iAnthus and GGP are collectively referred to herein as "Defendants."

**BACKGROUND**

14.     iAnthus is a holding company and, "[t]hrough its wholly-owned subsidiaries, the Company's principal business activity is to provide Shareholders with diversified exposure to best-in-class licensed cannabis cultivators, processors and dispensaries throughout the United States" by "acquir[ing] and operat[ing] a diversified portfolio of cannabis licenses and investments for Shareholders." Heavily leveraged, iAnthus is dependent upon equity and debt financing to fund its aggressive expansion plans. Throughout the Class Period, the Company issued a series of statements showing that the Company's business operations, financed through various debt and equity offerings, were expanding throughout the United States.

15.     In May 2018, the Company entered into the $50 million 2018 Debenture Agreement with GGP. Among other things, that agreement provided for the withholding and escrow of $5,722,222.22 from the 2018 Debenture proceeds to pay one year's interest on the 2018 Debentures in the event of an iAnthus default.

16.     On September 30, 2019, iAnthus and GGP entered into the Amended Debenture Agreement, which provided an additional $20 million to the Company. The Amended Debenture Agreement included the provision from the 2018 Debenture Agreement that provided for the withholding and escrow of $5,722,222.22 to pay one year's interest under the Amended Debenture Agreement in the event of an iAnthus default.

17.     On April 6, 2020, iAnthus issued a press release announcing that it did not make the applicable interest payments to GGP under the Amended Debenture Agreement, due on March 31, 2020. The Company ascribed its inability to make the payments to the "decline in the overall public

4

equity cannabis markets, coupled with the extraordinary market conditions that began in Q1 2020 due to the novel coronavirus known as COVID-19 ("COVID-19") pandemic" that caused liquidity constraints for iAnthus.  The Company stated that it had "attempted in good faith to negotiate with the holders of the Secured Debentures for temporary relief of interest payments, but the parties were not able to reach a satisfactory agreement" and, as a result, "iAnthus and its subsidiaries did not fund the March 31, 2020 interest payment totaling $4.4 million to the holders of the Secured Debentures and Unsecured Debentures . . . ."

18.     On news of the default, the price of the Company's common stock fell from a close of $0.469 per share on April 3, 2020, the last trading day before the announcement, to a close of $0.179 per share on April 6, 2020, on unusually high trading volume.

19.     Neither the Company nor GGP, however, disclosed why funds that had been withheld and escrowed under the 2018 Debenture Agreement and the Amended Debenture Agreement, approximately $5.72 million, were not used to satisfy iAnthus' interest obligations. That money, purportedly set aside under those agreements in the event of the Company's interest payment default, was adequate to make the $4.4 million payments due to GGP in March 2020. Moreover, Defendants never disclosed that the escrowed funds had ever been released, exhausted or were otherwise unavailable to satisfy interest payment obligation to GGP.

20.     Defendants' materially false and misleading statements concerning the withholding, escrow and intended use of the $5,722,222.22 in proceeds in the 2018 Debenture Agreement and the Amended Debenture Agreement were publicly disclosed and available on the CSA System for Electronic Document Analysis and Retrieval ("SEDAR").   The members of the Class reasonably relied on Defendants' materially false and misleading statements concerning the intended use and availability of the escrowed funds to protect against an event of default in connection with the

Company's interest obligations to GGP.  If such funds had been released pursuant to the terms of the Escrow Agreement, were exhausted and/or were otherwise unavailable for payment of the March 2020 interest payments to GGP, Defendants intentionally, or recklessly, failed to disclose such information rendering the earlier statements concerning the availability of the escrowed funds materially false and misleading.

21.     The members of the Class, who relied upon Defendants' Class Period statements concerning the intended use, and availability, of the escrowed funds to protect against a default under the debenture agreements with GGP, were ignorant of Defendants' unwillingness to use, and/or the unavailability of, the escrowed funds to make the March 2020 interest payments to GGP. Consequently, members of the Class were injured when the price of iAnthus common stock dropped approximately 62% due to disclosure of the Company's the March 31, 2020 default on the $4.4 million interest payments due under the debenture agreements with GGP.

## **RELEVANT FACTS**

22.     On May 14, 2018, the Company issued a press release announcing that it had closed a $40 million secured debenture financing and concurrent $10 million equity financing with GGP, the 2018 Debentures.  The press release stated that iAnthus had

> received a US$50 million investment from Gotham Green Partners ("GGP" or the "Investor"), which management believes to be the largest investment to date by a single investor in a publicly traded U.S. cannabis operating company.

> "As an early mover in the space, the iAnthus team has successfully assembled a portfolio of valuable licensed cannabis assets in attractive states with desirable demographics," said Jason Adler, Managing Member of GGP. "iAnthus' recent acquisitions in New York and Florida, combined with its operations in Massachusetts, provide a compelling growth and investment opportunity. With this infusion of capital, we look forward to working with the management team to source additional strategic opportunities and accelerate the Company's growth profile."

"Jason and the GGP team have demonstrated the ability to help portfolio companies accelerate geographic expansion and operational efficiencies to create meaningful value for investors," said Julius Kalcevich, CFO of iAnthus. "GGP's investment enables iAnthus to recapitalize its balance sheet with long-term exchangeable debt and significantly fund its key operations, particularly in New York and Florida.  We look forward to GGP's involvement in these activities in the coming quarters."

Through 2018, the Company plans to allocate the proceeds of this financing in the following manner:

> Repayment of US$20 million one-year note and accrued interest to VCP Bridge LLC;

> Continued cultivation and dispensary build-outs in New York and Florida markets; and

> Potential expansion activities consistent with iAnthus' strategic objectives.

The remaining expenditures for completing iAnthus' Massachusetts and Vermont operations will be funded with current cash on hand.

The Company's wholly owned subsidiary iAnthus Capital Management, LLC has issued US$40 million aggregate principal amount of high yield senior secured notes, with a maturity date of three years (the "HY Notes"). The HY Notes have a 13% coupon, which may be paid in cash or in-kind for the first year. The HY Notes are exchangeable into shares of the Company at US$3.08 per share, which amount was reserved by price reservation with the Canadian Securities Exchange. The HY Notes include warrants to purchase, in the aggregate, up to 6,670,372 shares of the Company at US$3.60 per share, which amount was reserved by price reservation with the Canadian Securities Exchange. Beginning one year from today, iAnthus Capital Management may force the exchange of the HY Notes into common shares if the daily volume weighted average trading price of the Company's common shares is greater than US$5.14 for any 20 consecutive trading days.

The Company has concurrently issued US$10 million aggregate amount of Units, with each Unit comprised of one Class A share of the Company at US$2.57 per share and a warrant to purchase one share of the Company at a price of US$3.86 per share, which amount was reserved by price reservation with the Canadian Securities Exchange.

Net cash proceeds to the Company are approximately US$46 million after the deductions of various fees and structuring costs. Pro forma for the repayment to VCP Bridge LLC, the Company will have a cash balance of approximately US$32 million.

23.     The 2018 Debenture Agreement, executed between iAnthus and GGP in connection

with the 2018 Debentures. was filed with the CSA on May 24, 2018 and made publicly available

7

on SEDAR.  The 2018 Debenture Agreement provided, *inter alia*, that at least one year's accrued interest on the 2018 Debentures, US$5,272,222.22, was being withheld and escrowed to protect against iAnthus' inability to make its interest payments under the agreement.  The 2018 Debenture Agreement, in pertinent part, provided:

> Interest Escrow.  On the Closing Date, the Lenders, the Company and the Issuer shall enter into an escrow agreement (the "**Escrow Agreement**") with Skylaw Professional Corporation (the "**Escrow Agent**") pursuant to which the Escrow Agent will hold back US$5,272,222.22 (the "**Escrowed Interest Payment**") from the Proceeds in an escrow account held by the Escrow Agent (the "**Interest Payment Escrow**") to ensure the timely payment of one (1) year's accrued interest on the Debentures in the event that the Issuer does not have sufficient funds to satisfy such interest obligations in accordance with the Debentures.  If the Issuer does not have sufficient funds to satisfy such interest obligations under the Debentures, whether during the first year of the term of the Debentures or thereafter, then the Issuer and the Lenders shall direct the Escrow Agent in writing in accordance with the Escrow Agreement to release the funds from the Interest Payment Escrow to satisfy such interest obligations.  The Interest Payment Escrow, or the portion held in trust, shall be fully released by the Escrow Agent, after payment of all fees and other obligations under the Escrow Agreement, in accordance with the Escrow Agreement (a) to the Lenders promptly upon notice to the Escrow Agent of the occurrence of the Event of Default, (b) to the Issuer as directed by the Issuer and the Lenders if the Issuer has not used the Interest Payment Escrow to satisfy interest on the Debentures for two consecutive financial quarters during the second year of the term of the Debentures, provided that the Issuer has satisfied all interest obligations under the terms of the Debentures and is not in default thereunder, or (c) to the Issuer as directed by the Issuer and the Lenders on the Maturity Date of the Debentures (as defined therein), provided that the Issuer has satisfied all Obligations under the terms of the Debentures and is not in default.

*Id.*, §420 (i) (emphasis in original).

24.     After securing the $50 million in financing from GGP, iAnthus issued a series of announcements portraying the Company's business prospects in a favorable light, including additional debt and equity offerings to fund the Company's planned expansion.  One of the debt offerings was a $35 million private placement with Oasis Investments II Master Fund Ltd. ("Oasis").

8

25.     On May 2, 2019, the Company issued a press release announcing that it had closed

an incremental $25 million private placement of unsecured convertible note units.  The press release

stated:

> The Company has issued units consisting of US$25.0 million aggregate principal
> amount of unsecured convertible notes, maturing on March 15, 2023 (the "Notes")
> and 1,555,207 warrants ("Warrants") to purchase common shares of the Company
> ("Common Shares").
>
> The Notes accrue interest at the rate of 8% per annum, payable quarterly, which
> may, at the Company's option, be paid up to 50% in common shares of the Company
> ("Common Shares") for two years following closing. The Notes are convertible into
> an aggregate of 4,222,971 Common Shares at US$5.92 per Common Share. At any
> time following September 1, 2019, iAnthus may force the conversion of the Notes
> into Common Shares if the daily volume weighted average trading price of the
> Common Shares on the OTCQX is greater than US$10.29 for any ten consecutive
> trading days. Each Warrant entitles the holder thereof to acquire one Common
> Shares at an exercise price of US$6.43 per Common Share until March 15, 2022.

26.     On September 30, 2019, the Company issued a press release announcing that it had

entered into a second financing agreement with GGP and had "completed a non-brokered private

placement offering of . . . US$20.0 million 13% secured notes which are exchangeable into common

shares of iAnthus due May 21, 2021 . . . to Gotham Green Partners, LLC."  The purchase agreement

provided GGP with the right to purchase up to an additional US$66.5 million Notes on the same

terms and conditions as the private placement.  GGP also waived its right to receive the quarterly

cash interest payment, $1,357,777.78, under the 2018 Debenture Agreement and agreed to a

"payment in kind" on September 30, 2019, which was accrued and added to the principal amount

of the notes under the 2018 agreement.

27.     On October 10, 2019, iAnthus filed a copy of the Amended Debenture Agreement

with the CSA on SEDAR.  In addition to memorializing the above-referenced terms and conditions,

the Amended Debenture Agreement, in pertinent part, provided:

Interest Escrow. On the Closing Date, the Lenders, the Company and the Issuer shall enter into an escrow agreement (the "Escrow Agreement") with SkyLaw Professional Corporation (the "Escrow Agent") pursuant to which the Escrow Agent will hold back US$5,272,222.22 (the "Escrowed Interest Payments") from the Proceeds in an escrow account held by the Escrow Agent (the "Interest Payment Escrow") to ensure the timely payment of one (1) year's accrued interest on the Debentures in the event that the Issuer does not have sufficient funds to satisfy such interest obligations in accordance with the Debentures. If the Issuer does not have sufficient funds to satisfy such interest obligations under the Debentures, whether during the first year of the term of the Debentures or thereafter, then the Issuer and the Lenders shall direct the Escrow Agent in writing in accordance with the Escrow Agreement to release funds from the Interest Payment Escrow to satisfy such interest obligations. The Interest Payment Escrow, or the portion then held in trust, shall be fully released by the Escrow Agent, after payment of all fees and other obligations under the Escrow Agreement, in accordance with the Escrow Agreement (a) to the Lenders promptly upon notice to the Escrow Agent of the occurrence of an Event of Default, (b) to the Issuer as directed by the Issuer and the Lenders if the Issuer has not used the Interest Payment Escrow to satisfy interest on the Debentures for two consecutive financial quarters during the second year of the term of the Debentures, provided that the Issuer has satisfied all interest obligations under the terms of the Debentures and is not in default thereunder, or (c) to the Issuer as directed by the Issuer and the Lenders on the Maturity Date of the Debentures (as defined therein), provided that the Issuer has satisfied all Obligations under the terms of the Debentures and is not in default. Notwithstanding the preceding sentence and the terms of the Escrow Agreement, the Lenders, the Company and the Issuer may by joint, irrevocable direction direct that the Escrow Agent release the Interest Payment Escrow to the Company in accordance with the terms of the Escrow Agreement.

*Id.*, § 4.20(i).

28.     Subsequently, the relationship between Oasis and iAnthus soured.  On February 27,

2020, iAnthus issued a press release announcing that it had:

filed a Statement of Claim (the "Claim") in the Ontario Superior Court of Justice against Oasis Investments II Master Fund Ltd. ("Oasis").  iAnthus filed the Claim in the interests of defending the Company against interference with the Company's financing and business by an unsecured lender who is seeking to better its position at the expense of the Company's shareholders and other stakeholders.

Oasis was issued an unsecured convertible debenture (the "Unsecured Debenture") in the principal amount of US$25 million in connection with the Company's offering of unsecured convertible note units announced March 18, 2019 and May 2, 2019 (the "Offering").  Since closing of the Offering, Oasis has consistently agitated

iAnthus with unfounded allegations and self-interested proposals, all with the goal of renegotiating the terms of the Unsecured Debenture. Recently, Oasis has alleged that iAnthus breached certain debt covenants and that an event of default has occurred.  iAnthus vehemently disagrees that there is currently, or has ever been, an event of default and is confident that iAnthus has complied with all covenants under the Unsecured Debenture. While iAnthus believes that Oasis' allegations are entirely unfounded, Oasis' behavior has interfered with iAnthus' ongoing financing activities and the Company's business.

Remedies sought by iAnthus include a declaration that iAnthus is not in breach of its obligations under the Unsecured Debenture (and related purchase agreement), damages, and a court ordered injunction restraining Oasis from making further false or misleading statements about iAnthus and otherwise interfering with iAnthus' contractual relationships.

29.    The press release quoted Defendant Kalcevich as stating:

After good faith efforts led by iAnthus' management, it is highly regrettable that we have been forced to take this action against Oasis.  Unfortunately, Oasis, which has a long history of taking activist measures to better its position through the courts and other means, has decided it would try the same tactics with iAnthus. We are disappointed with Oasis' attempt to extract value at the expense of our shareholders and other stakeholders, and we will pursue any and all remedies available to us as a result of Oasis' self-interested behavior. We are in active discussions with a variety of financing sources, including significant existing lenders and investors who continue to believe strongly in the prospects of both iAnthus and the broader industry . . . .

30.    On March 16, 2020, iAnthus issued a press release disclosing that Oasis had filed a

Statement of Defence and Counterclaim against the Company.  The press release stated:

Remedies sought by that of Oasis within the counterclaim include the admission by iAnthus that they are in breach of their obligations under the unsecured debentures, and a declaration that the company has acted in a manner that is oppressive to Oasis. Oasis is also seeking a court order for a payment of funds which covers the unsecured convertible debenture, applicable interest, as well as expenses and fees in full. iAnthus finds the counterclaim to be without merit.

The court case is in relation to a March 2019 unsecured convertible debenture, for which Oasis Investments subscribed to for $25.0 million. In the time since, iAnthus alleges that the lender has repeatedly agitated the company with unfounded allegations and self interest proposals as a means of bettering their investment within iAnthus.

The firm has allegedly attempted to renegotiate the terms of the unsecured convertible debentures a number of times as a result of the fall out in iAnthus' share price over the period. Oasis also alleges that debt covenants have been breached and an event of default has occurred, which is believed to be in connection with a recent investment by Gotham Green Partners.

## THE MATERIALLY FALSE AND MISLEADING STATEMENTS

31.    The statements concerning the escrowed $5.72 million set forth in the 2018 Debenture Agreement and the Amended Debenture Agreement, described above, were materially false and misleading.  Those agreements specifically provided that the monies were withheld from the proceeds of the 2018 Debentures and/or the 2019 Debentures:

> to ensure the timely payment of one (1) year's accrued interest on the Debentures in the event that the Issuer does not have sufficient funds to satisfy such interest obligations in accordance with the Debentures.

2018 Debenture Agreement, § 420(i); Amended Debenture Agreement, § 420(i).  Moreover, under those agreements, use of the escrowed funds to avoid default on the interest payments was mandatory:

> If the Issuer does not have sufficient funds to satisfy such interest obligations under the Debentures, whether during the first year of the term of the Debentures or thereafter, then the Issuer and the Lenders *shall direct the Escrow Agent* in writing in accordance with the Escrow Agreement *to release funds from the Interest Payment Escrow to satisfy such interest obligations*.

*Id*. (emphasis added).

32.    However, the escrowed $5.72 million was not used to make the March 31, 2020 payments on the 2018 and 2019 Debentures.  Defendants were either unwilling or, due to the unavailability of the escrowed funds, unable to direct the Escrow Agent to use the escrowed funds to make the March 31, 2020 interest payment to GGP under the Debenture Agreements.  Defendants failure to disclose that they had the ability to withhold use of the Interest Payment Escrow under the 2018 Debenture Agreement and/or the Amended Debenture Agreement, or that the Interest

Escrow Payment was exhausted, diminished or otherwise unavailable to satisfy iAnthus' March 31, 2020 interest payment obligations, was an omission of material fact that rendered the statements concerning the Interest Payment Escrow in the 2018 Debenture Agreement and the Amended Debenture Agreement materially false and misleading.

33.     If the Interest Payment Escrow was released, exhausted or otherwise unavailable to iAnthus because, under the terms of the Amended Debenture Agreement, the "the Lenders, the Company and the Issuer . . . by joint, irrevocable direction direct[ed] that the Escrow Agent release the Interest Payment Escrow to the Company in accordance with the terms of the Escrow Agreement," Defendants intentional, or reckless, failure to disclose information concerning release of the funds in the Interest Payment Escrow rendered the earlier statements concerning the availability of the escrowed funds to ensure that iAnthus would not default on the interest payments materially false and misleading.

## THE TRUTH IS REVEALED

34.     Three weeks after the announcement concerning the filing of the Oasis counterclaim, on April 6, 2020, iAnthus issued a press release announcing that it did not make the applicable interest payments due on its 13.0% Senior Secured Debentures and 13.0% Unsecured Convertible Debentures due on March 31, 2020.  The Company stated:

> The decline in the overall public equity cannabis markets, coupled with the extraordinary market conditions that began in Q1 2020 due to the novel coronavirus known as COVID-19 ("COVID-19") pandemic, have negatively impacted the financing markets and have caused liquidity constraints for the Company.  Despite its best efforts as of this date, the Company has not been able to secure a further round of financing since December 20, 2019, whether as part of the larger financing plan previously announced on September 30, 2019 or from other sources.
>
> iAnthus attempted in good faith to negotiate with the holders of the Secured Debentures for temporary relief of interest payments, but the parties were not able to reach a satisfactory agreement. As a result, iAnthus and its subsidiaries did not

fund the March 31, 2020 interest payment totaling $4.4 million to the holders of the Secured Debentures and Unsecured Debentures, and the applicable cure period prior to triggering an event of default of the Secured Debentures has lapsed. The Company is currently in default of the obligations to its Secured Debenture holders and the existence of such default triggers a cross-default of the obligation to its Unsecured Debenture holders.

"It was a difficult decision to not make the interest payment when it was due, but management and the board decided it was in the best interest of the Company and our stakeholders to spend our cash to maintain the inherent value of our business operations," said Hadley Ford, CEO of iAnthus. "We have moved aggressively over the past few months to reduce headcount and overhead spend in addition to other cost savings. Our business has never been stronger, and iAnthus is on track to achieve positive adjusted EBITDA and operational cash flow in 2020 as previously planned."

Despite the challenging conditions, the Company will continue to pursue expansion opportunities in retail, cultivation and manufacturing, as well as further development of its retail and product brands. Deploying these efforts with a ruthless focus on the customer experience and the patient journey, iAnthus remains committed to its mission to create the most valuable cannabis brands and network of cannabis operations and distribution nationally.

35.     In addition, the Company announced the formation of a special committee to

investigate alleged related party transactions involving Defendant Ford:

The Board of Directors (the "Board") has formed a Special Committee, comprised of the five independent, non-management directors.  The Special Committee was formed to:

1.  investigate any potential conflicts of interest and/or required disclosures with respect to the Company's CEO and certain related parties; and

2.  with a view to the best interests of the Company, explore and consider strategic alternatives available to the Company in light of the prospective liquidity requirements of the Company, the condition of the capital markets affecting companies in the cannabis industry and the rapid change in the state of the economy and capital markets generally caused by COVID-19, including but not limited to:

  2.1    renegotiation of existing financing arrangements and other material contracts, including any amendments, waivers, extensions or similar agreements with the lenders to and/or stakeholders of the Company and/or its subsidiaries that the Special Committee determines are in the best interests of the Company and/or its subsidiaries;

2.2     managing available sources of capital, including equity investments or debt financing or refinancing and the terms thereof;

2.3     implementing the operational and financial restructuring of the Company and its subsidiaries and their respective businesses, assets and licensure and other rights; and

2.4     implementing other potential strategic transactions.

36.     On news of the default, the price of the Company's common stock fell 62%, from a close of $0.469 per share on April 3, 2020, the last trading day before the announcement, to a close of $0.179 per share on April 6, 2020 on unusually high trading volume.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

37.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all those who purchased or otherwise acquired iAnthus common stock between May 14, 2018 through April 6, 2020, inclusive, seeking to pursue remedies under the Exchange Act (the "Class").

38.     The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by iAnthus or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

39.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

15

40.     Plaintiff will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation.

41.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the Interest Payment Escrow; and

(c)     whether the members of the Class have sustained damages and, if so, the proper measure of damages.

42.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## **LOSS CAUSATION**

43.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

44.     During the Class Period, Plaintiff and the Class purchased iAnthus' common stock at artificially inflated prices and were damaged thereby.  The price of the Company's common stock significantly declined first when it was disclosed on April 6, 2020 that the Company had defaulted

under the 2018 and 2019 Debenture Agreements and had not directed release of the Interest Payment Escrow to satisfy the Company's interest payment obligations, causing investors' losses.

## <u>SCIENTER ALLEGATIONS</u>

45.    The Individual Defendants acted with scienter because: (i) they were each signatories to the 2018 Debenture Agreement and/or Amended Debenture Agreement; (ii) knew that $5.72 million had been withheld from the 2018 Debenture and/or the 2019 Debenture to ensure the Company's payment of its interest obligations under the agreements; (iii) knew that the use of the Interest Payment Escrow to meet the Company's interest obligations under the 2018 Debenture Agreement and/or the Amended Debenture Agreement was contractually required; (iv) knew that the amount of the Interest Payment Escrow, $5.72 million, was adequate to make the March 2020 interest payment of $4.4 million to GGP; (v) knew that they had not directed the Escrow Agent to release the Interest Payment Escrow to make the March 2020 interest payments; (vi) knew that the statements in the 2018 Debenture Agreement and the Amended Debenture Agreement were materially false and misleading because Defendants failed to disclose that iAnthus or GGP had the ability to forego use of the Interest Payment Escrow to meet the Company's interest payment obligations under the debenture agreements or, alternatively, that the escrowed funds were exhausted, diminished or otherwise unavailable to satisfy the Company March 2020 inteest payment obligations; (vii) knew that such statements would be issued or disseminated to the investing public through the CSA's SEDAR system; and (viii) knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

46.    As set forth herein, the Individual Defendants, as signatories to the 2018 Debenture Agreement and/or the Amended Debenture Agreement, approved the issuance of the statements

concerning the Interest Payment Escrow, and knew that neither the Issuer, iAnthus, nor the Lender, GGP, had directed the Escrow Agent to release the Interest Payment Escrow to satisfy the Company's March 2020 interest obligations to GGP as required under those agreements or, alternatively, that the escrowed funds were unavailable to make the Company's March 31, 2020 interest payments to GGP.

**Applicability of Presumption of Reliance:**
**Fraud On The Market Doctrine**

47.     At all relevant times during the Class Period, the market for the Company's common stock was an efficient market for the following reasons, among others:

(a)     iAnthus common stock was traded on the CSE in Canada and the over-the-counter in the United States, with trading volume of in the millions throughout the Class Period;

(b)     As a regulated issuer, iAnthus filed regular periodic public reports with the CSA;

(c)     iAnthus regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)     iAnthus was followed by several securities analysts during the Class Period, including Northland Capital Markets, PI Financial, Echelon Wealth Partners, Canaccord Genuity, and Cormark Securities, whose publicly available reports and analyses entered the public marketplace.

(e)     As a result of the foregoing, during the Class Period, the market for iAnthus' common stock promptly digested current information regarding the Company from all publicly-available sources and reflected such information in the Company's stock price.  For example, the price of iAnthus common stock fell from a close of $0.469 per share on April 3, 2020, the last trading day before the announcement of the Company's default on its interest payments to GGP, to a close of $0.179 per share on April 6, 2020 on unusually high trading volume, after the Company disclosed the default.

**NO SAFE HARBOR**

48.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The specific statements pleaded herein were not identified as "forward-looking statements" when made and involve statements of historical fact, such as the existence of the Interest Payment Escrow and the obligation under the terms of the 2018 and Amended Debenture Agreements to release the Interest Payment Escrow in the event that iAnthus lacked sufficient funds to meet its interest payment obligations.

**FIRST CLAIM**

**Violation of Section 10(b) Of The Exchange Act And Rule 10b-5
Promulgated Thereunder Against All Defendants**

49.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

50.     During the Class Period, Defendants carried out a plan, scheme and course of conduct that was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase iAnthus common stock at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

51.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain

artificially high market prices for iAnthus' common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

52.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about iAnthus financial condition and ability to satisfy its interest payment obligations under the 2018 Debenture Agreement and/or the Amended Debenture Agreement as specified herein.

53.     Defendants employed devices, schemes and artifices to defraud, while in possession of material, adverse, non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of iAnthus ability to satisfy its obligations under the 2018 Debenture Agreement and/or the Amended Debenture Agreement, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about the Interest Payment Escrow and the parties' obligations under the 2018 Debenture Agreement and/or the Amended Debenture Agreement in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of common stock during the Class Period.

54.     Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.  Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of supporting the artificially inflated price of the Company's common stock.

55.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of iAnthus' common stock was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's common stock were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the common stock trades, and/or in the absence of material, adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired iAnthus' common stock during the Class Period at artificially high prices and were damaged thereby.

56.     At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of the falsity of the statements, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the Interest Payment Escrow under the 2018 Debenture Agreement and the Amended Debenture Agreement, which was not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their iAnthus' common stock, or, if they had acquired such common stock during the Class Period, they would not have done so at the artificially inflated prices which they paid.

57.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

58.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of iAnthus' common stock during the Class Period.

## SECOND CLAIM

### Violation Of Section 20(a) Of The Exchange Act Against Defendants Ford and Kalcevic

59.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

60.     Defendants Ford and Kalcevich acted as controlling persons of iAnthus within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their execution of the 2018 Debenture Agreement and/or the Amended Debenture Agreement on behalf of iAnthus, high-level positions, and intimate knowledge of the false statements in connection with the Interest Payment Escrow, the 2018 Debenture Agreement and/or the Amended Debenture Agreement made during the Class Period that were disseminated to the investing public, Defendants Ford and Kalcevich had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the 2018 Debenture Agreement and the Amended Debenture Agreement which Plaintiff contends are false and misleading.  Defendants Ford and Kalcevich executed the 2018 Debenture Agreement and/or the Amended Debenture Agreement on behalf of iAnthus, which included the statements that Plaintiff alleges are materially false and misleading, and had the ability to cause the statements to be corrected.

61.     In particular, the Defendants Ford and Kalcevich had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, are presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

62.     As set forth above, Defendants Ford and Kalcevich violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their positions as

controlling persons, Defendants Ford and Kalcevich are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of the wrongful conduct of Defendants Ford and Kalcevich, Plaintiff and other members of the Class suffered damages in connection with their purchases of iAnthus common stock during the Class Period.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding damages in favor of Plaintiff and the other Class members against all Defendants for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands

trial by jury of all issues that may be so tried.

Dated:  April 20, 2020        **RIGRODSKY & LONG, P.A.**

By: */s/ Timothy J. MacFall*
Seth D. Rigrodsky
Timothy J. MacFall
825 East Gate Boulevard, Suite 300
Garden City, NY  11530
Tel. No.:  (516) 683-3516
Fax No.:  (302) 654-7530
Email: sdr@rigrodskylong.com
tjm@rigrodskylong.com

Joshua H. Grabar
**GRABAR LAW OFFICE**
1735 Market Street
Suite 3750
Philadelphia, PA 19103
Tel. No.:  (267) 507-6085
Fax No.:  (267) 507-6048
Email:  jgrabar@grabarlaw.com

*Attorneys for Plaintiff Donald W. Finch*