**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE iANTHUS CAPITAL HOLDINGS, INC. SECURITIES LITIGATION | No.: 1:20-cv-03135-LAK |
| THIS DOCUMENT RELATES TO: SECURITIES CLASS ACTION (CASE Nos: 1:20-cv-03135 AND 1:20-cv-03513) | |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD**
**PLAINTIFF'S MOTION FOR LEAVE TO FILE THE SECOND**
**CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

Lead Plaintiff Jose Antonio Silva ("Plaintiff") respectfully submits this Memorandum of Law in Support of his Motion For Leave to File the Second Consolidated Amended Class Action Complaint. Plaintiff's Proposed Second Consolidated Amended Class Action Complaint ("Proposed Second Amended Complaint"), along with a redline to the Consolidated Amended Class Action Complaint (ECF No. 48, "Amended Complaint"), are attached as exhibits to the accompanying Declaration of Michael Grunfeld. Plaintiff makes these amendments to show why he has satisfied the requirements of *Morrison v Nat'l Austl. Bank Ltd.*, 561 U.S. 247 (2010) ("*Morrison*").[1]

On September 4, 2020, Plaintiff filed the Amended Complaint alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 arising out of Defendants' misrepresentation of the nature of iAnthus's relationship with Gotham Green Partners. On August 30, 2021, the Court dismissed the Amended Complaint solely on the ground that Plaintiff did not adequately plead "'transactions in securities listed on domestic exchanges' or a 'domestic transaction in other securities,'" as required by *Morrison*. (ECF No. 81). The Court, however, granted Plaintiff permission to move for leave to file a proposed second amended complaint. (*Id.* at 19).

The Court should grant Plaintiff's Motion because the Proposed Second Amended Complaint far surpasses the permissive standard for allowing leave to amend and directly addresses the issues that the Court held were deficient in the Amended Complaint.

---

[1] Capitalized terms not otherwise defined herein have the same meaning as in the Amended Complaint and Proposed Second Amended Complaint. Paragraph ("¶_") references are to the Proposed Second Amended Complaint.

## I.    ARGUMENT

### A.    Legal Standard

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a "court should freely give leave to amend when justice so requires." *See also In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281, 397 (S.D.N.Y. 2003) (same). Moreover, "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend." *Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990) (internal quotation marks omitted).

"This permissive standard is consistent with [the Second Circuit's] 'strong preference for resolving disputes on the merits.'" *Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011). The Supreme Court has similarly held that leave to amend should be "freely given" because the purpose of pleading under the Federal Rules of Civil Procedure is "to facilitate a proper decision on the merits," not to set the stage for "a game of skill in which one misstep by counsel may be decisive to the outcome." *Foman v. Davis*, 371 U.S. 178, 181-82 (1962).

The Second Circuit supports leave to amend particularly in securities fraud cases because they "combine[] a complex commercial reality with a long, multi-prong complaint." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 191 (2d Cir. 2015); *see also In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 312 (S.D.N.Y. 2008) (holding leave to amend is particularly appropriate in securities fraud lawsuits); *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051-53 (9th Cir. 2003) (same).

"Where there is neither a showing of the movant's undue delay, bad faith or dilatory motive, nor a showing of undue prejudice to the opposing party by virtue of allowance of the amendment, leave to amend should be granted." *In re Winstar Commc'ns*, No. 01 CV 11522, 2006 WL 473885, at *1 (S.D.N.Y. Feb. 27, 2006). The Supreme Court has held that the "mandate" to freely grant leave to amend "is to be heeded" absent undue delay, bad faith, undue prejudice, or

2

futility. *Foman*, 371 U.S. at 182. The judicial policy favoring amendment is so strong that the burden is on the **non-**moving party to demonstrate bad faith or undue prejudice. *See Anthony v. City of New York*, 339 F.3d 129, 138 n.5 (2d Cir. 2003) (interpreting Rule 15(a) "in favor of allowing the amendment absent a showing by the non-moving party of bad faith or undue prejudice").

Defendants will not be able to show any reason to deny leave to amend here. The Second Circuit has stated that a non-movant is required to show delay coupled with prejudice to the non-moving party or bad faith by the moving party. *Block v. First Blood Associates*, 988 F.2d 344, 350 (2d Cir. 1993). "In determining what constitutes prejudice, courts consider whether the amended pleading would 'require the opponent to expend significant additional resources to conduct discovery and prepare for trial [or] significantly delay the resolution of the dispute.'" *Michael Miller Fabrics, LLC v. Studio Imports Ltd., Inc.*, 12 CV 3858 KMW JLC, 2012 WL 4513546, at *2 (S.D.N.Y. Oct. 1, 2012) (*quoting Block*, 988 F.2d at 350). Where, as here, a party seeks leave to amend at the pleading stage, before the parties have started discovery, courts in this circuit routinely find a lack of prejudice. *See e.g.*, *Jt. Stock Co. v. Infomir LLC*, 16CIV1318GBDBCM, 2017 WL 2988249, at *1 (S.D.N.Y. Mar. 27, 2017) (finding lack of prejudice where discovery has not yet begun and no answer has yet been served). Defendants therefore have no grounds to assert any prejudice.

There also is no bad faith here. Courts consistently hold that a plaintiff's desire to amend a complaint at the motion to dismiss stage is valid. *See Take-Two Interactive*, 551 F. Supp. 2d at 312 (holding plaintiffs should be given leave to amend because they did not previously have "the benefit of full adversarial briefing of their pleadings"). Moreover, there is no prejudice or bad faith here because Court invited Plaintiff to seek leave to amend and there are no factors present

concerning Plaintiff's prosecution of this action that differentiate this case from the many cited above holding that leave to amend should be readily granted.

Defendants will also be unable to demonstrate that an amendment would be futile. Where "the alleged futility of the proposed amendments is really an argument that the amendments would not permit the complaint to survive a motion to dismiss, such argument would better be taken up on a motion to dismiss unless the amendments' futility is readily apparent." *In re Initial Pub. Offering Securities Litig.*, 214 F.R.D. 117, 125 (S.D.N.Y. 2002). Plaintiff's proposed amendment provides substantial additional factual support for why his transactions in iAnthus securities satisfy *Morrison*. These allegations directly address the reasons that the Court found the Amended Complaint insufficient. If Defendants continue to contest the adequacy of these allegations, Plaintiff should have the opportunity for them to be fully heard in the context of a motion to dismiss.

**B.     The Proposed Second Amended Complaint is Not Futile**

Plaintiff's Proposed Second Amended Complaint easily satisfies *Morrison* because it provides abundant detail confirming that Plaintiff engaged in "domestic transactions" under *Morrison*. A transaction is "domestic" if *either* the purchaser *or* the seller incurs irrevocable liability in the United States. *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 68 (2d Cir. 2012). Plaintiff has far surpassed his burden at this stage, under *Absolute Activist*'s *disjunctive* test, of "alleg[ing] facts suggesting that irrevocable liability was incurred" in the U.S. *Atlantica Holds. v. Sovereign Wealth Fund Samruk-Kazyna JSC*, 2 F. Supp. 3d 550, 560 (S.D.N.Y 2014), *aff'd in part,* 813 F.3d 98 (2d Cir. 2016).

First, all aspects of Plaintiff's trades in iAnthus stock, including his placement of his orders through his online TD Ameritrade account and his incurring irrevocable liability, took place while

4

he was in Louisiana, where he resides. ¶ 23.

Second, TD Ameritrade is a U.S. broker that does not have any international offices. ¶ 21. The funds in Plaintiff's TD Ameritrade account that were used to purchase his iAnthus stock were also located in the U.S. ¶ 24.

Third, TD Ameritrade confirmed for Plaintiff that his transactions in iAnthus securities took place in the United States. For example, TD Ameritrade told Plaintiff that his purchase of 5,000 shares of ITHUF stock on December 20, 2019, and his purchase of 100 shares of ITHUF stock on February 25, 2020 were both routed through Susquehanna and E*TRADE served as the contra broker and clearing firm that fulfilled these orders. ¶¶ 25-28. All of these firms are based in the United States. E*TRADE also "only processes domestic orders on domestic exchanges" and does not offer "international trading" or access to international markets. ¶¶ 30-31.

TD Ameritrade also explained to Plaintiff that all of the steps associated with his transactions in iAnthus stock took place in the United States. ¶ 29. Moreover, TD Ameritrade confirmed that it only routes trades through entities that are based in the United States and that fulfill orders domestically. ¶ 32. TD Ameritrade also stated that it does not have the ability to send orders outside the U.S. or to trade on international exchanges. *Id.* When TD Ameritrade conducts transactions for securities of foreign companies that are listed in the U.S. OTC market that have a 5-digit ticker ending in "F" (such as ITHUF), it therefore routes these transactions through the U.S. and not a foreign exchange. *Id.*

Fourth, the nature of iAnthus's stock being listed on the OTCQB and OTCQX markets shows even further that Plaintiff's trades took place in the United States. Plaintiff's TD Ameritrade account shows that all of his transactions in iAnthus stock were under the ticker symbol "ITHUF". ¶ 22. That is the ticker for iAnthus's stock on the OTCQB and OTCQX markets during the Class

5

Period. ¶ 33. In addition, iAnthus affirmatively obtained eligibility with the Depository Trust Company ("DTC") for its common shares listed on the OTCQB and OTCQX markets. ¶¶ 39-40. iAnthus also promoted to investors that its shares were listed on the OTC market, that the Company was "named to the 2019 OTCQX® Best 50," and that iAnthus met the strict requirements of the OTCQX market. ¶¶ 33, 45.

The OTC Markets Group explains that trades in "F" shares of foreign companies are "settled, cleared and custodized" in the United States when they are "Canadian or DTC eligible F Shares." ¶ 41. iAnthus's ITHUF shares meet both criteria, each of which is an independent basis for those shares being "settled, cleared and custodized" in the United States. These trades were also executed in U.S. dollars by U.S. broker-dealers. *Id.*

Furthermore, Bloomberg confirms that iAnthus's ITHUF shares traded on the U.S. OTC market separately from its IAN shares that traded on the Canadian Securities Exchange ("CSE"). In fact, Bloomberg reports that for the last year of the Class Period (July 10, 2019 to July 10, 2020), iAnthus had a higher volume of trading on the U.S. OTC market as compared to the CSE, with 40.72% of total volume (approximately 150 million shares) taking place on the U.S. OTC market and only 36.09% of trading (or approximately 133 million shares) taking place on the CSE. ¶ 42.

Other aspects of the U.S. OTC market also confirm that Plaintiff's trades in iAnthus stock took place in the United States. The OTC Markets Group operates the OTCQX and OTCQB markets on which iAnthus's ITHUF shares traded during the Class Period. These markets, including their OTC Link trading system that brokers use to trade securities on these markets, are based in New York. ¶¶ 35-37. In addition, OTS Link is a FINRA member broker-dealer and is governed by FINRA and SEC regulations. ¶ 36. Moreover, all broker-dealers that trade on the OTC Markets Group's markets must be FINRA members, they must register with the SEC, and

they are subject to state securities regulations. ¶ 38. FINRA also only regulates broker-dealers in the United States. *Id.*

These detailed allegations in the Proposed Second Amended Complaint address all of the issues that the Court raised in its Memorandum Opinion. The Court instructed Plaintiff to "include specific allegations concerning the location of the transactions themselves and the structure of the over-the-counter transactions," including details sufficient to determine "the situs of the over-the-counter transactions." (ECF No. 81 at 12 (internal quotation marks omitted)). The Proposed Second Amended Complaint addresses these issues by specifying the location of events from Plaintiff's perspective, where the brokers involved in his transactions were located, and the structure of the OTC market for iAnthus's ITHUF shares.

The Court also stated that Plaintiff did "not address whether TD Ameritrade fulfilled his orders in the United States over-the-counter market, as opposed to trading on the CSE or referring trades to Canadian brokerages." (ECF No. 81 at 13 n.45). The Proposed Second Amended Complaint makes clear that TD Ameritrade fulfilled Plaintiff's transactions through U.S. brokerages in the U.S. OTC market, not on the CSE.

In addition, the Court stated that Plaintiff's declaration that he submitted in connection with his opposition to Defendants' Motion to Dismiss the Amended Complaint "fails to address the formation of contracts, or when trades otherwise become binding, when placed through an online TD Ameritrade account." (ECF No. 81 at 13 n.45). The Proposed Second Amended Complaint explains specifically when Plaintiff incurred irrevocable liability for his transactions and that he, the brokers involved, and the OTC markets at issue were all located in the United States.

The many details that Plaintiff alleges in the Proposed Second Amended Complaint also

adequately plead that his transactions took place in the U.S. under many other authorities. For example, the Second Circuit held in *Myun-Uk Choi v. Tower Rsch. Cap. LLC*, 890 F.3d 60 (2d Cir. 2018), that trades were considered domestic under *Morrison* because they were binding and could not be revoked when they "matched with a counterparty by an electronic trading platform ('CME Globex') located in Aurora, Illinois," even though they did not clear and settle until the following day in Korea. *Id.* at 63, 67. Plaintiff's transactions here were similarly binding, and could not be revoked, when they were matched and fulfilled on the OTC market in the U.S. by brokers that were located in the U.S., while Plaintiff was in the U.S., and funds were deducted from his TD Ameritrade account in the U.S.

Many other courts have similarly found domestic transactions sufficiently pled where plaintiffs alleged, as here, the actions of either party to the transaction in the U.S., U.S. accounts used for the transaction, or brokers or agents acting in the U.S. *See, e.g.*, *United States v. Vilar*, 729 F.3d 62, 77-78 n.11 (2d Cir. 2013) (holding that "territoriality under *Morrison* concerns where, physically, the purchaser or seller committed him or herself"); *Giunta v. Dingman*, 893 F.3d 73, 76-82 (2d Cir. 2018) (holding a complaint sufficiently pleaded domesticity where one of the parties to the transaction was located in the U.S. and money (in U.S. dollars) was wired using a bank account located in New York); *United States v. Georgiou*, 777 F.3d 125, 135 (3d Cir. 2015) (holding that a foreign entity's purchase of securities, not listed on a U.S. exchange, through American market makers acting as intermediaries for the foreign entities was considered a "domestic transaction" under Section 10(b)); *In re Poseidon Concepts Sec. Litig.*, No. 13CV1213 (DLC), 2016 WL 3017395, at *14 (S.D.N.Y. May 24, 2016) (holding that a Florida resident who bought Poseidon stock on the OTC market "in Florida through a local office of his broker, Charles Schwab" and alleged that they could not revoke acceptance, adequately alleged domestic

transactions); *Butler v. United States*, 992 F. Supp. 2d 165, 178 (E.D.N.Y. 2014) (holding *Morrison* satisfied where "[c]ontracts were not executed with both parties present in a single location" but "Butler bought and sold securities from the Credit Suisse office in New York"); *Wu v. Stomber*, 883 F. Supp. 2d 233, 252-53 (D.D.C. 2012) (holding domestic transaction adequately alleged where U.S. broker-dealers were involved), *aff'd,* 750 F.3d 944 (D.C. Cir. 2014).

In addition to all of these strong allegations showing that Plaintiff's trades constitute "domestic transactions," as an independent basis for satisfying *Morrison*, the Proposed Second Amended Complaint also provides further support for why the OTCQB and OTCQX markets are a domestic exchange—an issue that the Second Circuit has expressly declined to address. *See Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 66 (2d Cir. 2012).

Lastly, the question here is only whether Plaintiff should be granted leave to amend, which is freely given. *See supra* 2-4. Questions about the merits of Plaintiff's proposed substantial amendments "would better be taken up on a motion to dismiss." *In re Initial Pub. Offering Securities Litig.*, 214 F.R.D. at 125. Plaintiff should therefore be permitted to file the Proposed Second Amended Complaint.

## II.   CONCLUSION

For all of these reasons, the Court should grant Plaintiff's motion for leave to file the Proposed Second Consolidated Amended Class Action Complaint.

Dated: September 30, 2021

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Michael Grunfeld_____*
Jeremy A. Lieberman
Michael Grunfeld
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665

9

Email: jalieberman@pomlaw.com
Email: mgrunfeld@pomlaw.com

*Lead Counsel for Lead Plaintiff*

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-8209
Facsimile: (212) 697-7296
Email: peretz@bgandg.com

*Additional Counsel for Lead Plaintiff*

10