**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE iANTHUS CAPITAL HOLDINGS, INC. SECURITIES LITIGATION | No.: 1:20-cv-03135-LAK |
| THIS DOCUMENT RELATES TO: <br><br> SECURITIES CLASS ACTION (CASE Nos: 1:20-cv-03135 AND 1:20-cv-03513) | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**GOTHAM GREEN PARTNERS, LLC AND JASON ADLER'S MOTION TO**
**DISMISS THE CONSOLIDATED SECOND AMENDED CLASS ACTION COMPLAINT**

**REED SMITH LLP**
599 Lexington Ave.
New York, New York 10022
(212) 521-5400

*Attorneys for Gotham Green Partners, LLC and Jason Adler*

# TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ..................................................................................1

II. ARGUMENT ...........................................................................................................2

    A.     Plaintiff's Claims Should be Resolved by a Canadian Court. ............................. 2

    B.     Plaintiff Fails to State a Claim under Section 10(b) and Rule 10b-5.................... 4

            1.     The Gotham Defendants Did Not Have an Affirmative Duty to Disclose................................................................................................ 4

            2.     Plaintiff Has Not Alleged Any Actionable Misrepresentation or Omission ................................................................................................ 6

            i.     GGP's RDEII Responses Were Consistent with Canadian Securities Law................................................................................ 6

            ii.     Plaintiff's Claims Rely on Impermissible Fraud by Hindsight.................. 7

            iii.     Plaintiff Has Not Identified Any Materially False or Misleading Statements. ............................................................................ 8

            3.     Plaintiff Does Not Allege Scienter With Sufficient Specificity ................ 9

III. CONCLUSION........................................................................................................10

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abramson v. NewLink Genetics Corp.*,
   965 F.3d 165 (2d Cir. 2020)........................................................................................7

*Abu Dhabi Commer. Bank v. Morgan Stanley & Co.*,
   651 F. Supp. 2d 155 (S.D.N.Y. 2009)..................................................................9, 10

*Caiola v. Citibank, N.A.*,
   295 F.3d 312 (2d Cir. 2002)...................................................................................5, 6

*Capital Mgmt. Select Fund v. Bennett*,
   680 F.3d 214 (2d Cir. 2012)........................................................................................7

*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336, 125 S. Ct. 1627 (2005).......................................................................4

*Gavin/Solmonese LLC v. D'Arnaud-Taylor*,
   68 F. Supp. 3d 530 (S.D.N.Y. 2014), *aff'd*, 639 F. App'x 664 (2d Cir. 2016) ........7

*Giunta v. Dingman*,
   893 F.3d 73 (2d Cir. 2018)..........................................................................................3

*Gurary v. Winehouse*,
   235 F.3d 792 (2d Cir. 2000)........................................................................................7

*Hoffman v. UBS-AG*,
   591 F. Supp. 2d 522 (S.D.N.Y. 2008)......................................................................6

*In re Fannie Mae 2008 Sec. Litig.*,
   891 F. Supp. 2d 458 (S.D.N.Y. 2012)......................................................................8

*In re London Silver Fixing, Ltd., Antitrust Litig.*,
   332 F. Supp. 3d 885 (S.D.N.Y. 2018)...................................................................3, 4

*In re MCI Worldcom, Inc. Sec. Litig.*,
   93 F. Supp. 2d 276 (E.D.N.Y. 2000) ......................................................................10

*In re Nokia Oyj Sec. Litig.*,
   423 F. Supp. 2d 364 (S.D.N.Y. 2006)...................................................................2, 5

*In re Poseidon Concepts Sec. Litig.*,
   No. 13-cv-1213 (DLC), 2016 WL 3017395 (S.D.N.Y. May 24, 2016) ...................3

*In re Vivendi, S.A. Sec. Litig.*,
   838 F.3d 223 (2d Cir. 2016).................................................................................2

*Meyer v. JinkoSolar Holdings Co.*,
   761 F.3d 245 (2d Cir. 2014).............................................................................6, 8

*Novak v. Kasaks*,
   216 F.3d 300 (2d Cir. 2000).................................................................................8

*Panther v. Jianpu Tech., Inc.*,
   No. 18 Civ. 9848 (PGG), 2020 WL 5757628 (S.D.N.Y. Sept. 27, 2020) ...............8

*Prime Int'l Trading, Ltd. v. BP PLC*,
   937 F.3d 94 (2d Cir. 2019)...................................................................................3

*Stoyas v. Toshiba Corp.*,
   896 F.3d 933 (9th Cir. 2018) ...............................................................................3

**Other Authorities**

*National Instrument 62-103: The Early Warning Sys. and Related Take-Over Bid
   and Insider Reporting Issues*, ONTARIO SECURITIES COMM'N, available at
   https://www.osc.ca/sites/default/files/pdfs/irps/ni_20170401_62-103_early-
   warning-system-take-over-bids.pdf .....................................................................3

The Gotham Defendants submit this Reply Memorandum of Law in support of their Motion to Dismiss. *See* Dkts. 93-94, 96. The Gotham Defendants also join in Sections I, II, III.C, and IV of the Reply Memorandum of the iAnthus Defendants (the "iAnthus Reply").[1]

## I.    PRELIMINARY STATEMENT

That Plaintiff is disappointed with the outcome of his investment in a highly leveraged foreign issuer doing business in the cannabis industry does not give rise to a U.S. securities fraud claim against GGP, one of the issuer's lenders. Plaintiff's concerted effort in his Opposition[2] to commingle his claims against the Gotham Defendants with the allegations he has asserted against other defendants fails to satisfy his obligation to make particularized allegations regarding each defendant separately. When the alleged misstatements attributed to the Gotham Defendants are separated from Plaintiff's multiple vague references to "Defendants," it is clear that Plaintiff's claims against the Gotham Defendants should be dismissed with prejudice.

First, Plaintiff's claims against the Gotham Defendants belong in Canada. To establish his claim, Plaintiff must show that GGP's statements in Canadian securities forms were false and misleading in light of the circumstances under which those statements were made – *i.e.*, under Canadian securities law. Because he cannot do so, Plaintiff improperly asks this Court to ignore the "technical requirements" of Canadian securities law in reviewing his claims, Opp., p. 34, but that would interfere with Canadian law and underscores why this case belongs in Canada.

Relatedly, Plaintiff cannot maintain Exchange Act claims by ignoring the disclosure requirements under Canadian law. Plaintiff alleges that GGP should have described the Exit Fee and Adler's loan to Ford in the RDEIIs, but that argument ignores two important threshold

---

[1] Unless otherwise stated, all defined terms in the Gotham Defendants' Memorandum of Law in Support of Their Motion to Dismiss the Consolidated Amended Class Action Complaint ("Motion" or "Mtn." at Dkts. 93-94, 96) shall carry the same meaning in this reply brief.

[2] *See* Dkt. 102, hereinafter, "Opposition" or "Opp.".

deficiencies: (1) the Gotham Defendants had no duty to disclose under U.S. law; and (2) Plaintiff cannot pursue a Section 10(b) claim with allegations that subsequent events made prior disclosures "false and misleading" because such allegations are impermissible fraud by hindsight. *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 239–40 (2d Cir. 2016).[3]

## II.    ARGUMENT

### A.    Plaintiff's Claims Should be Resolved by a Canadian Court.

Plaintiff's claims against the Gotham Defendants principally allege that GGP incorrectly completed *Canadian* forms (*i.e.*, the RDEIIs) filed in *Canada* pursuant to *Canadian* securities law. Opp., pp. 17, 34, 54-56. Because Plaintiff has no basis to argue that GGP's RDEIIs are false and misleading in the context of Canadian law, *see* Mtn., § IV.B.2.i.(a), he claims that the "technical requirements of Canadian law" are irrelevant to his claims against the Gotham Defendants and asks the Court to accept his argument that the "plain English" of GGP's responses to pre-populated questions on these forms was a violation of Section 10(b). Opp., pp. 17, 34, 54-56. Yet Plaintiff cannot divorce his claims against GGP from Canadian law.

A statement is only actionable under Section 10(b) and Rule 10b-5 if it, among other things, is false and misleading "in light of the circumstances under which [it is made]." *See In re Nokia Oyj Sec. Litig.*, 423 F. Supp. 2d 364, 392 (S.D.N.Y. 2006). Here, evaluating "the circumstances under which [GGP's statements in the RDEIIs] were made" necessarily requires consideration of the purpose, instructions and "technical requirements" of the RDEIIs under Canadian law (which Plaintiff's claim fails to do). *See id.*; Mtn., § II.C.4. Importantly, Canadian securities law contains a number of different nuanced instructions and defined terms for the RDEIIs that preclude Canadian filers like GGP – and shareholders like Plaintiff who choose to

---

[3] Plaintiff also asks the Court to ignore the exhibits to the Gotham Defendants' Motion because they represent "extraneous factual assertions." Opp. pp. 22-23. The Court already rejected that argument. *See* Dkt. 81, pp. 5-6.

invest in a Canadian issuer and claim to rely on such Canadian filings – from simply using the "plain English" in the forms. *See, e.g.*, *National Instrument 62-103: The Early Warning Sys. and Related Take-Over Bid and Insider Reporting Issues*, ONTARIO SECURITIES COMM'N, available at https://www.osc.ca/sites/default/files/pdfs/irps/ni_20170401_62-103_early-warning-system-take-over-bids.pdf.[4] Because the RDEIIs require knowledge and application of these technical requirements, a Canadian court should decide whether GGP's allegedly incorrect statements in the Canadian forms are false and misleading under Canadian securities law, which is "the circumstance[] under which those statements were made." *See Prime Int'l Trading, Ltd. v. BP PLC*, 937 F.3d 94, 106 (2d Cir. 2019) ("Foreign conduct is generally the domain of foreign law."); *In re London Silver Fixing, Ltd., Antitrust Litig.*, 332 F. Supp. 3d 885, 918 (S.D.N.Y. 2018) ("[T]he motivating concern in Morrison was that application of U.S. securities laws to foreign conduct where it was not intended by Congress is likely to run the risk of incompatibility with foreign law and unduly intrude upon the sovereignty of foreign nations.").[5]

Plaintiff's request that this Court interpret whether GGP's RDEIIs are false and misleading under U.S. securities laws by ignoring the "technical requirements" of the Canadian securities laws that govern those Canadian forms unduly interferes with Canadian law, intrudes upon the sovereignty of Canadian courts and securities commissions, and highlights why his

---

[4] Notably, Plaintiff discusses the term "economic exposure" using its plain English meaning, but that is a specific and defined term under Canadian securities law that Plaintiff makes no attempt to address. *Compare id. with* Opp., p. 55.

[5] Plaintiff's arguments to escape *Parkcentral* are unavailing. *See* Opp., pp. 24-29. Contrary to Plaintiff's arguments, none of the cases he cites supports his claims against the Gotham Defendants. **(1)** In *Giunta v. Dingman*, 893 F.3d 73, 76, 77 (2d Cir. 2018), the defendant was a party to the agreement in which the at-issue misrepresentations were made and that "agreement was a contract obligating the seller to deliver and the purchaser to pay for a security." **(2)** In *In re Poseidon Concepts Sec. Litig.*, No. 13-cv-1213 (DLC), 2016 WL 3017395 (S.D.N.Y. May 24, 2016), the issuer's *auditor* was alleged to have made misrepresentations in its financial audit and the claims against the auditor arose "solely from two statements" therein. The claims were ultimately dismissed. **(3)** *Stoyas v. Toshiba Corp.*, 896 F.3d 933, 950 (9th Cir. 2018) explained – just as here – that among other things, *Parkcentral* involved claims related entirely to bilateral agreements (here GGP's loans to iAnthus) and the security was traded on a foreign exchange.

- 3 -

claims against the Gotham Defendants should be dismissed. *See id.*; Mtn., § IV.A.[6]

**B.      Plaintiff Fails to State a Claim under Section 10(b) and Rule 10b-5.**

Independently, Plaintiff fails to state a claim. Importantly, Plaintiff cannot survive a motion to dismiss with indiscriminate arguments about all "defendants" or references to statements that were not made by the Gotham Defendants. The allegations specific to the Gotham Defendants are that (i) GGP should have disclosed the Exit Fee and the Adler loan in the RDEIIs, and (ii) statements of opinion attributed to Adler were quoted in press releases iAnthus issued. SAC, ¶¶ 5, 58, 63, 80, 111, 149, 154, 156, 174, 181, 272-80, 323; *see* Mtn., § IV.B.2. Plaintiff's arguments about other defendants' statements cannot satisfy the PLSRA or Rule 9(b).

**1.      The Gotham Defendants Did Not Have an Affirmative Duty to Disclose**

Plaintiff fails to meaningfully address the threshold deficiency in his claim against the Gotham Defendants that there was no duty to disclose. *See* Mtn., § IV.B.1. Instead, he claims in a footnote that because GGP's responses in the RDEIIs were "affirmatively false and misleading," the Court "need not [] address" whether the Gotham Defendants had a duty to disclose. Opp., p. 56, n.27. That position is inconsistent with the omission theory pled in the SAC. *See* SAC ¶¶ 5, 58, 63, 80, 111, 149, 154, 156, 174, 181, 272-80, 323. Plaintiff cannot pursue his claims based on the allegations that the nondisclosure of the Exit Fee, the Adler loan, and GGP's supposed plan to takeover iAnthus rendered GGP's responses in the RDEIIs misleadingly incomplete without plausibly alleging a duty to disclose. *Id.*; *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342, 125 S. Ct. 1627, 1630 (2005) (first element of securities fraud claim is showing "a material misrepresentation or omission in the face of a duty to disclose.").

---

[6] After filing the Motion, the Gotham Defendants learned that they were no longer defendants in certain lawsuits pending in Canada. Regardless of whether that decision was tactical or an acknowledgment that the claims against the Gotham Defendants lack merit, those lawsuits involve the same issues and facts underscoring the claims here.

As noted in the Motion, no court has held that a foreign statute or foreign securities regulation creates a duty to disclose under Section 10(b). *See* Mtn., § IV.B.1. Plaintiff misleadingly claims that "statutes or regulations that obligate[s] a party to speak" create a duty to disclose, *see* Opp., p. 56, n.27 (citing *Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 102 (2d Cir. 2015)). But there, unlike here, the defendant *had a statutory duty pursuant to US law to disclose*. *Id.* ("Item 303 [of Regulation S-K]'s affirmative duty to disclose in Form 10-Qs can serve as the basis for a [] claim under [§] 10(b).").

Similarly, and as noted above, Plaintiff does not even address that a duty to disclose absent a legal requirement can *only* exist where a statement is false and misleading "in light of the circumstances under which [it is] made." *In re Nokia Oyj Sec. Litig.*, 423 F. Supp. 2d at 392; Mtn., § IV.B.2; *supra*, pp. 2-4. Plaintiff quite simply cannot allege that GGP's responses in the RDEIIs were false and misleading and simultaneously ignore the purpose, requirements and instructions of those *Canadian* forms which necessarily dictate and control the "circumstances under which [the responses therein] were made." *See* Mtn., § IV.B.1.

Ignoring his obligation to plead particularized facts, Plaintiff argues that "[o]nce defendants choose to speak about a topic, they have 'a duty to tell the whole truth,' including 'to be both accurate and complete.'" Opp., p. 42 (citing *Meyer v. JinkoSolar Holdings Co.*, 761 F.3d 245, 250 (2d Cir. 2014)); *see also* Opp., p. 54, n.24, (incorrectly stating that *Caiola v. Citibank, N.A.*, 295 F.3d 312, 331 (2d Cir. 2002) supports the same). Neither case supports Plaintiff's assertion that the alleged incorrect completion of Canadian forms imposes a duty to disclose here or that Plaintiff can ignore Canadian securities law requirements for Canadian forms. In *Jinkosolar*, the **issuer** publicized to investors "a prospectus describing prophylactic measures taken to comply with Chinese environmental regulations," but failed to disclose "ongoing,

serious pollution problems" or that the prophylactic measures detailed in the prospectus "were then failing." 761 F.3d at 247, 251. Similarly, in *Caiola*, the plaintiff purchased securities through an agreement with his bank in reliance on specific "false assurances" that the bank chose to provide. 295 F.3d at 315-21. Unlike the cases Plaintiff cites, which gave rise to an affirmative duty to disclose given the context of specific, voluntarily disclosed statements by the issuer that materially omitted directly contradictory information, GGP followed the instructions in the RDEII and responded to the questions as required by *Canadian law*. *See* Mtn., § IV.B.2.i.(a).

The Gotham Defendants had no affirmative duty to disclose, and the claims against them should be dismissed with prejudice. *Hoffman v. UBS-AG*, 591 F. Supp. 2d 522, 532-37 (S.D.N.Y. 2008) (dismissing Section 10(b) claims where the defendant had no duty to disclose).

### 2. Plaintiff Has Not Alleged Any Actionable Misrepresentation or Omission

#### i. GGP's RDEII Responses Were Consistent with Canadian Securities Law

Plaintiff's assertion that the Court should accept his unsupported position that the RDEIIs required disclosures that were not made, *see* Opp., pp. 54-56, is inconsistent with Canadian securities law. *See* Mtn., § IV.B.2.i.(a). Plaintiff has no support for his self-serving characterization of the RDEIIs and what each question therein required. Opp., pp. 54-56; *see supra*, n.4. As noted, the assertion that GGP's responses in the RDEIIs were false and misleading because they did not include the Exit Fee or Adler's loan to Ford, *see* Opp., pp. 54-56, cannot be divorced from Canadian law, which establishes GGP's disclosure obligations in the RDEIIs.

In an effort to bolster his deficient allegations, which necessarily depend on the consideration and application of Canadian law, Plaintiff claims the complaint "separately alleges" that GGP and Adler made "misstatements" in the press release *iAnthus* released and by virtue of entering into loan agreements with iAnthus that Adler signed. Opp., pp. 17, 47-48. But the Gotham Defendants did not issue the press releases and cannot be liable for any alleged

misstatements therein. *See* Motion, pp. 26-27; *Gavin/Solmonese LLC v. D'Arnaud-Taylor*, 68 F. Supp. 3d 530, 539 (S.D.N.Y. 2014), *aff'd*, 639 F. App'x 664, 669 (2d Cir. 2016).

Similarly, a loan agreement between iAnthus and GGP cannot give rise to a securities law claim. *See Gurary v. Winehouse*, 235 F.3d 792, 801 (2d Cir. 2000) ("It is well-settled that '[t]he failure to carry out a promise made in connection with a securities transaction is normally a breach of contract' and does not justify a Rule 10b–5 action.") (citation omitted); *accord Capital Mgmt. Select Fund v. Bennett*, 680 F.3d 214, 225 (2d Cir. 2012).

Plaintiff also fails to explain (i) how the general statements of opinion attributed to Adler in press releases support a claim for securities fraud, and (ii) what material omission could plausibly render Adler's statements of optimism false or misleading. *See Abramson v. NewLink Genetics Corp.*, 965 F.3d 165, 173 (2d Cir. 2020); Motion, pp. 23-25.

ii.   Plaintiff's Claims Rely on Impermissible Fraud by Hindsight

Plaintiff also fails to address that the alleged misleading omissions made by the Gotham Defendants in the RDEIIs illustrate an impermissible attempt to plead fraud by hindsight. *See* Mtn., § IV.B.2.i.(b).[7] Plaintiff cannot dispute that the Exit Fee was not triggered until March 2020, after iAnthus defaulted, and Adler made a personal loan to Ford on December 21, 2019.[8] SAC, ¶¶ 94, 96-97; Appx., Exs. 17, 18. Plaintiff similarly cannot dispute that the RDEIIs filed on SEDAR on June 7, 2018, October 10, 2019, and January 10, 2020, related to and described the transactions that closed on May 14, 2018, September 30, 2019, and December 20, 2019. Appx., Exs. 4, 12, 16. Regardless of how Plaintiff attempts to characterize his claims, *see* Opp., pp. 43-

---

[7] Plaintiff *only* refers in passing to all "Defendants" in arguing that his claims do not implicate any fraud by hindsight prohibitions, but those arguments are included in sections about *iAnthus'* statements "about the availability of financing" and does not mention or address the alleged misstatements in the RDEIIs. *See* Opp., pp. 48-49.

[8] Plaintiff also refers to "payments" from Adler to Ford, Opp., p. 17, but no allegation in the SAC asserts that Adler loaned Ford any money prior to the closing of the GGP and iAnthus transactions, and there is no allegation that Adler gave Ford multiple loans. SAC, ¶¶ 96-97.

47, neither payment under the Exit Fee nor Adler's loan to Ford could possibly have been part of the transactions described in the RDEIIs because neither had happened. *See In re Fannie Mae 2008 Sec. Litig.*, 891 F. Supp. 2d 458, 488 (S.D.N.Y. 2012) ("The fact that a financial item is accounted for differently, or in a later period, does not support an inference that a previously filed financial statement was fraudulent. This is an allegation of fraud by hindsight, which is insufficient to withstand a motion to dismiss."); *see also* Mtn., § IV.B.2.i.(b).

Relying on inapposite cases that relate to *issuers*,[9] Plaintiff argues that "because of the qualitative way that [the Exit Fee] altered the fundamental nature of iAnthus's relationship with GGP," it was material. *See* Opp., p. 45. However, any alleged "qualitative" change to iAnthus's relationship with GGP could not, by definition, occur until the Exit Fee was triggered in March 2020. *See* Mtn., § II.C. Plaintiff's argument about materiality misunderstands that to survive a motion to dismiss, he must first identify a statement that was false and misleading statement *at the time that it was made. Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000) ("[W]e have refused to allow plaintiffs to proceed with allegations of 'fraud by hindsight . . . [A]llegations that defendants should have anticipated future events and made certain disclosures earlier than they actually did do not suffice to make out a claim of securities fraud.")

iii.   <u>Plaintiff Has Not Identified Any Materially False or Misleading Statements.</u>

Plaintiff's claim that the nondisclosure of the Exit Fee because investors would "want to know that GGP's interests were not aligned with theirs" strains credulity. *See* Opp., pp. 45-46. At all times, Plaintiff and other investors knew that GGP was a secured creditor with a significant lending investment in iAnthus. *See* Mtn., § II.C-D, IV.B.2.iii. At the time of GGP's $10 million

---

[9] *See* Opp., pp. 46: **(1)** In *JinkoSolar*, the **issuer** failed to disclose "**ongoing** and substantial pollution problems" in a prospectus about compliance with environmental regulations. 761 F.3d at 252 (emphasis added); **(2)** In *Panther v. Jianpu Tech., Inc.*, the **issuer** failed to disclose a "risk that has already materialized in the marketplace" in its Registration Statement. No. 18 Civ. 9848 (PGG), 2020 WL 5757628, at *12 (S.D.N.Y. Sept. 27, 2020).

equity investment, investors knew that GGP had lent $40 million under the DPA, which is four times greater than its equity investment. *See Id.* Altogether, investors knew that GGP lent iAnthus $97.5 million plus accrued interest, more than ten times its equity investment. *See Id.* Disclosure of the Exit Fee was immaterial given the totality of company activity and that investors always knew of GGP's position as a significant secured lender to iAnthus. *See Id.*

### 3. Plaintiff Does Not Allege Scienter With Sufficient Specificity

Plaintiff claims that the SAC adequately pleads a strong inference of scienter as to the Gotham Defendants because the Exit Fee evidences an intent to defraud investors for financial gain, and GGP was motivated to take over iAnthus for less than its true value. *See* Opp., pp. 58-59. Plaintiff's argument hinges on his illogical speculation that GGP loaned iAnthus nearly $100 million, over the course of years, hoping that iAnthus would default on its loans (and the loans of several other lenders) rather than recoup its investment. *Id.* Similarly, Plaintiff's inflammatory rhetoric that Adler "brib[ed] Ford" – by giving him a loan on December 21, 2019, years and months after iAnthus and GGP negotiated, closed, and publicized the DPA and ADPA on SEDAR – to obtain a "large secured interest in iAnthus's assets" is nonsense. *See* Mtn., § II.C.

In addition, Plaintiff's argument that he has pled a strong inference of scienter because GGP should have (1) completed its *optional* provision of an additional "$100 million financing" despite having no legal or contractual obligation to do so and (2) refrained from enforcing iAnthus's default on the $97.5 million *already owed* after iAnthus was in default with multiple lenders and chose to sue one such lender is illogical. *Compare* Opp., p. 59 *with* Mtn., § II.D. Accepting Plaintiff's implausible conjecture that a lender exercising contractual rights in a bilateral loan agreement is "bribing" the issuer would transform every lending agreement into basis to bring a Section 10(b) claims against the lender. Opp., p. 58; *see* Mtn., § IV.B.3. What is more, Plaintiff's assertion that *Abu Dhabi Commer. Bank v. Morgan Stanley & Co., 65*1 F. Supp.

2d 155, 179 (S.D.N.Y. 2009) and *In re MCI Worldcom, Inc. Sec. Litig.*, 93 F. Supp. 2d 276, 284 (E.D.N.Y. 2000) stand for the proposition that a lender's choice to not provide additional money in the face of a default on a large debt is "precisely the type of motive that supports a strong inference of scienter" is a complete misrepresentation. Neither case involved a lender or a default on a loan. *Abu Dhabi Commer. Bank* related to defendants who refused to pay rating agencies unless the desired ratings were provided. 651 F. Supp. 2d at 179-80. *In re MCI Worldcom* stemmed from conduct to "deflate the price of [the] stock in order to help ensure that the acquisition price would not have to be increased." 93 F. Supp. 2d at 283.

Finally, Plaintiff's effort to downplay that Canadian courts have already considered and rejected arguments that GGP's relationship with iAnthus, its enforcement of contract rights or the RSA evidence a nefarious plot to take over, rings hollow. Opp., pp. 28, 59. In those proceedings, the courts not only evaluated the proposed RSA, but the events that led to the RSA, and they concluded that any characterization of the RSA as favoring GGP was wrong, instead finding that it "offers substantial benefits to shareholders and was approved by a significant majority of shareholders." Appx., Ex. 27, ¶ 44; *see also* Appx., Ex. 26, ¶¶ 43, 48; Ex. 32; Ex. 33, ¶¶ 9-12; *see also* Mtn., § II.E.[10]

### III.   CONCLUSION[11]

For the reasons discussed herein and in the Motion, the Court should grant the Motion, dismiss the claims against Gotham Defendants with prejudice, award costs and grant such other further relief as the Court deems just, fair and equitable.

---

[10] Plaintiff's effort to establish scienter based on "core operations" arguments, *see* Opp., p. 62, and "corporate scienter", *id.*, pp. 62-63, are unavailing. *See* Mtn., § IV.B.3.

[11] Plaintiff's argument that the SAC is sufficient to satisfy the "in connection with" requirement (Opp., pp. 64-65), the reliance requirement (*id.*, pp. 65-66), and loss causation (Opp., pp. 67-69) largely repeats the deficient allegations in the SAC and cites inapplicable case law. As stated in the Motion, § IV.B.4-6, Plaintiff has not satisfied these elements.

Dated:  March 21, 2021
       New York, New York

**REED SMITH LLP**

By: *  /s/ Ian M. Turetsky*
_____

Ian M. Turetsky
James L. Sanders (*pro hac vice*)
Jason T. Mayer (*pro hac vice*)
Carla M. Wirtschafter (*pro hac vice*)
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 521-5400
Facsimile: (212) 521-5450
*Attorneys for Gotham Green Partners, LLC and Jason Adler*