# EXHIBIT 2



24 January 2023



# Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review

Federal Filings Declined for the Fourth Consecutive Year

Average and Median Settlement Values Increased by More than 50% Compared to 2021

By Janeen McIntosh, Svetlana Starykh, and Edward Flores

Insight in Economics™

# Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review

## Federal Filings Declined for the Fourth Consecutive Year

## Average and Median Settlement Values Increased by More than 50% Compared to 2021

By Janeen McIntosh, Svetlana Starykh, and Edward Flores[1]

24 January 2023

### Foreword

I am excited to share NERA's Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review with you. This year's edition builds on work carried out over more than three decades by many members of NERA's Securities and Finance Practice. This year's report continues our analyses of trends in filings and settlements and presents new analyses related to current topics such as event-driven litigation. Although space does not permit us to present all the analyses the authors have undertaken while working on this year's edition or to provide details on the statistical analysis of settlement amounts, we hope you will contact us if you want to learn more about our research or our work related to securities litigations. On behalf of NERA's Securities and Finance Practice, I thank you for taking the time to review our work and hope you find it informative.

**Dr. David Tabak**, Managing Director

### Introduction

Filings of new securities class actions declined each year from 2019 through 2022. In 2022, there were 205 new federal securities class action suits filed. This significant decline from the 431 cases filed in 2018 was largely due to the lower number of merger-objection and Rule 10b-5 cases filed in 2022. Similarly, there were fewer cases resolved in 2022 than in 2021. The decline in resolutions, since 2021, was driven by the decrease in dismissed non-merger-objection and non–crypto unregistered securities cases, a category that declined by more than 30%.[2] The aggregate settlement amount for cases settled in 2022 was $4 billion, which is approximately $2 billion higher than the inflation-adjusted amount for 2021. With more cases settling for higher values in 2022 compared to 2021, the average settlement value increased by over 70% to $38 million and the median settlement value increased by over 50% to $13 million.

## Trends in Filings

For the fourth consecutive year, there was a decline in the number of new federal securities class action suits filed (see Figure 1).[3] In 2022, there were 205 new cases filed, a decline from the 210 new cases filed in 2021. This decline is a continuation of the downward trend observed since 2018, when more than 400 cases were recorded. This decline has been driven by the lower levels of merger-objection cases and cases with only Rule 10b-5 claims filed in each year (see Figure 2). Of the cases filed in 2022, suits against defendants in the health technology and services sector and the electronic technology and services sector were the most common, each accounting for 27% of total cases (see Figure 3). Although there was a decline in the aggregate number of cases filed in the Second, Third, and Ninth Circuits to the lowest level within the 2018–2022 period, the majority of new filings continue to be concentrated in these jurisdictions (see Figure 4). Of the cases filed in 2022, 33% included an allegation related to misled future performance, the most common allegation for the year. The proportion of cases with an allegation related to a regulatory issue increased from 19% in 2021 to 26% in 2022 (see Figure 5).[4]

Figure 1. **Federal Filings and Number of Companies Listed in the United States**
January 1996–December 2022



Note: Listed companies include those listed on the NYSE and Nasdaq. Listings data obtained from World Federation of Exchanges (WFE). The 2022 listings data is as of November 2022.

Figure 2. **Federal Filings by Type**
January 2013–December 2022



For the fourth consecutive year, there was a decline in the number of new federal securities class action suits filed.

Figure 3. **Percentage of Federal Filings by Sector and Year**
Excludes Merger Objections and Crypto Unregistered Securities
January 2018–December 2022



Note: This analysis is based on the FactSet Research Systems, Inc. economic sector classification. Some of the FactSet economic sectors are combined for presentation.

*Filings against defendants in the health technology and services sector and the electronic technology and services sector were the most common in 2022, each accounting for 27% of total cases.*

Figure 4. **Federal Filings by Circuit and Year**
Excludes Merger Objections and Crypto Unregistered Securities
January 2018–December 2022



*Although there was a decline in the aggregate number of cases filed in the Second, Third, and Ninth Circuits to the lowest level within the 2018–2022 period, the majority of new filings continue to be concentrated in these jurisdictions.*

Figure 5. **Allegations**
Shareholder Class Actions with Alleged Violations of Rule 10b-5, Section 11, and/or Section 12
January 2018–December 2022



## Event-Driven and Special Cases

Here we summarize activity and trends in filings over the 2019–2022 period in potential development areas we have identified for securities class actions (see Figures 6 and 7).[5]

### ESG Cases

Environmental, social, and governance (ESG) disclosures and companies' commitments to meet disclosure guidelines have been a developing area of interest to investors and government agencies such as the Securities and Exchange Commission over the recent decade.[6] Along with that interest have come waves of lawsuits filed by plaintiffs alleging fraud related to ESG disclosures. For example, in a securities class action suit filed against CBS Corporation in 2018, plaintiffs alleged the defendant made false and misleading statements and/or failed to disclose that CBS executives engaged in widespread workplace sexual harassment and that the defendant's purported policies were inadequate to prevent the conduct. This suit was settled in 2022 for $14,750,000. Similarly, in the ongoing securities suit filed against Activision Blizzard, Inc., in 2021, plaintiffs allege the defendant made false and misleading statements and/or failed to disclose that there was discrimination against women and minority employees and the existence of numerous complaints about unlawful harassment, discrimination, and retaliation made to human resources that were not addressed. As focus and interest in this area continues, this may lead to a higher number of ESG-related cases being filed.

### Crypto Cases

The first securities class action related to cryptocurrency was filed against GAW Miners, LLC, in June 2016. Since 2017, there have been year-to-year fluctuations in the number of new crypto federal filings each year. In 2022, there were 25 crypto federal class actions suits filed. This is more than double the number of similar suits filed in 2021. This uptick was driven by the increase in the number of crypto unregistered securities cases.

Figure 6. **Number of Crypto Federal Filings**
January 2016–December 2022



### Bribery/Kickbacks

Over the 2019–2020 period, there were 14 cases filed related to allegations of bribery or kickbacks. In 2021, there was a reduction in the number of these cases filed, with only one bribery/kickback-related case filed in that year. In 2022, four such cases were filed.

### Cannabis

In 2019 and 2020, there were seven and six securities class action cases filed against defendants in the cannabis industry, respectively. Since then, there has only been one suit filed against these defendants each year.

### Cybersecurity Breach

Since 2019, there have been at least three securities class action suits filed each year related to a cybersecurity breach. More specifically, between 2019 and 2020, there were a total of six such cases filed, and an additional five suits brought in 2021. In 2022, the number of new federal suits declined slightly to three filings.

### COVID-19

Since the emergence of the COVID-19 pandemic in March 2020, 77 securities class action suits have been filed with claims related to the pandemic. Between March 2020 and December 2020, 33 cases were filed with COVID-19-related claims. In 2021, the number of suits filed declined to 20, but then increased slightly to 24 in 2022.

### Environment

Over the 2019–2022 period, 12 environment-related securities class action suits have been filed. Of these, only three were filed in 2021–2022.

### Money Laundering

In 2019 and 2020, there were three cases filed each year with claims related to money laundering. Between 2021 and 2022, only one such suit has been filed.

### SPAC

In 2019, only one case related to special purpose acquisition companies (SPACs) was filed. Since then, new federal cases related to these claims have increased substantially, with six filings in 2020 and 33 cases filed in 2021. During 2022, there were 24 securities class action suits filed related to SPACs, a 27% decline from 2021.[7]

Figure 7. **Event-Driven and Other Special Cases by Filing Year**
January 2019–December 2022



Number of Filings

## Trends in Resolutions

The number of resolved cases—dismissed and settled cases—declined in 2022 to 214 from 248 in 2021 (see Figure 8).[8] Although 2022 was a record-setting year for the number of settled non-merger-objection, non–crypto unregistered securities cases during the 2013–2022 period, there was a larger decrease in the number of dismissed non-merger-objection, non–crypto unregistered securities cases, which led to a decline in overall resolutions. In addition, in 2022, the number of merger-objection cases resolved declined to 14, a substantial decrease from the 2017–2020 period, when more than 130 such cases were resolved each year. Of the cases filed since 2015, as of 31 December 2022, a larger portion has been dismissed than have settled (see Figure 9). This is consistent with historical trends, which indicate that settlements occur later in the litigation cycle and dismissals tend to occur in the earlier stages. Taking the time between first complaint and resolution to represent the length of time taken to resolve a suit, more than half the cases resolve between one and three years, and 17% of cases resolve more than four years after the first complaint was filed (see Figure 10).

Figure 8. **Number of Resolved Cases: Dismissed or Settled**
January 2013–December 2022



Figure 9. **Status of Cases as Percentage of Federal Filings by Filing Year**
Excludes Merger Objections, Crypto Unregistered Securities, and Verdicts
January 2013–December 2022



Note: Dismissals may include dismissals without prejudice and dismissals under appeal. Component values may not add to 100% due to rounding.

Figure 10. **Time from First Complaint Filing to Resolution**
Excluding Merger Objections and Crypto Unregistered Securities
Cases Filed January 2003–December 2018 and Resolved January 2003–December 2022



# Analysis of Motions

NERA's federal securities class action database tracks filing and resolution activity as well as decisions on motions to dismiss, motions for class certification, and the status of any motion as of the resolution date. For this analysis, we include securities class actions that were filed and resolved over the 2013–2022 period in which purchasers of common stock are part of the class and in which a violation of Rule 10b-5, Section 11, and/or Section 12 is alleged.

## Motion to Dismiss

A motion to dismiss was filed in 96% of the securities class action suits filed and resolved. A decision was reached in 73% of these cases, while 18% were voluntarily dismissed by plaintiffs, 8% settled before a court decision was reached, and 1% of the motions were withdrawn by defendants. Among the cases where a decision was reached, 61% were granted (with or without prejudice) and only 20% were denied (see Figure 11).

Figure 11. **Filing and Resolutions of Motions to Dismiss**
Cases Filed and Resolved January 2013–December 2022



## Motion for Class Certification

A motion for class certification was filed in only 17% of the securities class action suits filed and resolved, as most cases are either dismissed or settled before the class certification stage is reached. A decision was reached in 60% of the cases where a motion for class certification was filed. Almost all of the other 40% of cases were resolved with a settlement. Among the cases where a decision was reached, the motion for class certification was granted (with or without prejudice) in 86% of cases (see Figure 12). Approximately 65% of decisions on motions for class certification occur within three years of the filing of the first complaint, with nearly all decisions occurring within five years (see Figure 13). The median time was about 2.7 years.

Figure 12. **Filing and Resolutions of Motions for Class Certification**
Cases Filed and Resolved January 2013–December 2022



Figure 13. **Time from First Complaint Filing to Class Certification Decision**
Cases Filed and Resolved January 2013–December 2022



## Trends in Settlement Values

Aggregate settlements for 2022 totaled $4 billion, which is more than double the inflation-adjusted total for 2021 of $1.9 billion.[9] In 2022, the average settlement value was $38 million, an increase of more than 70% compared to the 2021 inflation-adjusted average settlement value (see Figures 14 and 15). The distribution of 2022 settlement values differed from the settlements in 2021, with more cases settling for higher values, and more consistent with the distribution of settlement values observed in 2020 (see Figure 16). This shift is also evident in the median settlement values. The median settlement value for 2022 is $13 million, which is approximately $5 million higher than the 2021 inflation-adjusted median value of $8 million (see Figure 17).[10]

Figure 14. **Average Settlement Value**
Excludes Merger Objections, Crypto Unregistered Securities, and Settlements for $0 to the Class
January 2013–December 2022



Figure 15. **Average Settlement Value**
Excludes Settlements over $1 Billion, Merger Objections, Crypto Unregistered Securities, and Settlements for $0 to the Class
January 2013–December 2022



Figure 16. **Distribution of Settlement Values**
Excludes Merger Objections, Crypto Unregistered Securities, and Settlements for $0 to the Class
January 2018–December 2022



Figure 17. **Median Settlement Value**
Excludes Settlements over $1 Billion, Merger Objections, Crypto Unregistered Securities, and Settlements for $0 to the Class
January 2013–December 2022



## Top Settlements

The top 10 settlements in 2022 ranged from $98 million to $809.5 million and totaled $2.2 billion. The highest settlement reached was against Twitter, Inc., for a case filed in California in 2016 (see Table 1).

Table 1. **Top 10 2022 Securities Class Action Settlements**

| Ranking | Defendant | Filing Date | Settlement Date | Total Settlement Value ($Million) | Plaintiffs' Attorneys' Fees and Expenses Value ($Million) | Circuit | Economic Sector |
|---|---|---|---|---|---|---|---|
| 1 | Twitter, Inc. | 16 Sept 16 | 11 Nov 22 | $809 5 | $185.7 | 9th | Technology Services |
| 2 | Teva Pharmaceutical Industries Ltd. | 6 Nov 16 | 2 Jun 22 | $420.0 | $109.3 | 2nd | Health Technology |
| 3 | Luckin Coffee Inc. | 13 Feb 20 | 22 Jul 22 | $175.0 | $31.3 | 2nd | Consumer Non-Durables |
| 4 | BlackBerry Ltd. | 4 Oct 13 | 29 Sept 22 | $165.0 | $59 5 | 2nd | Technology Services |
| 5 | Granite Construction Inc. | 13 Aug 19 | 24 Feb 22 | $129.0 | $21.7 | 9th | Industrial Services |
| 6 | Endo International plc. | 14 Nov 17 | 23 Feb 22 | $113.4 | $20.9 | 3rd | Health Technology |
| 7 | Walgreen Co. | 10 April 15 | 7 Oct 22 | $105.0 | $31.1 | 7th | Retail Trade |
| 8 | Novo Nordisk A/S | 11 Jan 17 | 27 Jun 22 | $100.0 | $31.7 | 3rd | Health Technology |
| 9 | Stamps.com, Inc. | 13 Mar 19 | 24 Jan 22 | $100.0 | $17.3 | 9th | Commercial Services |
| 10 | Mattel, Inc. | 24 Dec 19 | 2 May 22 | $98.0 | $14.8 | 9th | Consumer Durables |
| | **Total** | | | **$2,214.9** | **$523.4** | | |

The top 10 federal securities class action settlements, as of 31 December 2022, consists of settlements ranging from $1.14 billion to $7.24 billion. From 2018 to 2021, this list remained unchanged because there were no settlements reached in excess of $1.1 billion during this time. In 2022, this list was updated to incorporate the $1.21 billion partial settlement in the ongoing suit against Valeant Pharmaceuticals International, Inc. (see Table 2).

Table 2. **Top 10 Federal Securities Class Action Settlements** (As of 31 December 2022)

| | | | | Codefendent Settlements | | | | |
| | | | Total | Financial | Accounting | Plaintiffs' Attorneys' | | |
| | | | Settlement | Institutions | Firms | Fees and | | |
| | Filing | Settlement | Value | Value | Value | Expenses Value | | Economic |
| Ranking | Defendant | Date | Year(s) | ($Million) | ($Million) | ($Million) | ($Million) | Circuit | Sector |
|---|---|---|---|---|---|---|---|---|---|
| 1 | ENRON Corp. | 22 Oct 01 | 2003–2010 | $7,242 | $6,903 | $73 | $798 | 5th | Industrial Services |
| 2 | WorldCom, Inc. | 30 Apr 02 | 2004–2005 | $6,196 | $6,004 | $103 | $530 | 2nd | Communications |
| 3 | Cendant Corp. | 16 Apr 98 | 2000 | $3,692 | $342 | $467 | $324 | 3rd | Finance |
| 4 | Tyco International, Ltd. | 23 Aug 02 | 2007 | $3,200 | No codefendant | $225 | $493 | 1st | Producer Manufacturing |
| 5 | Petroleo Brasileiro S.A.- Petrobras | 8 Dec 14 | 2018 | $3,000 | $0 | $50 | $205 | 2nd | Energy Minerals |
| 6 | AOL Time Warner Inc. | 18 Jul 02 | 2006 | $2,650 | No codefendant | $100 | $151 | 2nd | Consumer Services |
| 7 | Bank of America Corp. | 21 Jan 09 | 2013 | $2,425 | No codefendant | No codefendant | $177 | 2nd | Finance |
| 8 | Household International, Inc. | 19 Aug 02 | 2006–2016 | $1,577 | Dismissed | Dismissed | $427 | 7th | Finance |
| 9 | Valeant Pharmaceuticals International, Inc.* | 22 Oct 15 | 2020 | $1,210 | $0 | $0 | $160 | 3rd | Health Technology |
| 10 | Nortel Networks | 2 Mar 01 | 2006 | $1,143 | No codefendant | $0 | $94 | 2nd | Electronic Technology |
| | **Total** | | | **$32,334** | **$13,249** | **$1,017** | **$3,358** | | |

*Denotes a partial settlement, which is included here due to its sizable amount. Note that this case is not included in any of our resolution or settlement statistics.

## NERA-Defined Investor Losses

To estimate the potential aggregate loss to investors as a result of investing in the defendant's stock during the alleged class period, NERA has developed a proprietary variable, NERA-Defined Investor Losses, using publicly available data. The NERA-Defined Investor Loss measure is constructed assuming investors had invested in stocks during the class period whose performance was comparable to that of the S&P 500 Index. Over the years, NERA has reviewed and examined more than 2,000 settlements and found, of the variables analyzed, this proprietary variable to be the most powerful predictor of settlement amount.[11]

A statistical review reveals that settlement values and NERA-Defined Investor Losses are highly correlated, although the relationship is not linear. The ratio is higher for cases with lower NERA-Defined Investor Losses than for cases with higher Investor Losses (see Figure 18). Since 2013, annual median Investor Losses have ranged from a high of $972 million to a low of $358 million. For cases settled in 2022, the median Investor Losses were $972 million, which is 33% higher than the 2021 value and the highest recorded value during the 2013–2022 period. Between 2020 and 2022, the median ratio of settlement amount to Investor Losses has been stable at 1.8% (see Figure 19).

Figure 18. **Median Settlement Value as a Percentage of NERA-Defined Investor Losses**
By Investor Losses
Cases Filed and Settled December 2011–December 2022



Figure 19. **Median NERA-Defined Investor Losses and Median Ratio of Settlement to Investor Losses by Settlement Year**
January 2013–December 2022



NERA has identified the following key factors as driving settlement amounts:

- NERA-Defined Investor Losses;
- The market capitalization of the issuer immediately after the end of the class period;
- The types of securities (in addition to common stock) alleged to have been affected by the fraud;
- Variables that serve as a proxy for the merit of plaintiffs' allegations (e.g., whether the company has already been sanctioned by a government or regulatory agency or paid a fine in connection with the allegations);
- The stage of litigation at the time of settlement; and
- Whether an institution or public pension fund is named lead plaintiff (see Figure 20).

Figure 20. **Predicted vs. Actual Settlements**
Investor Losses Using S&P 500 Index
Cases Settled December 2011–December 2022



*Among cases settled between December 2011 and December 2022, factors in NERA's statistical model account for a substantial fraction of the variation observed in actual settlements.*

## Trends in Plaintiffs' Attorneys' Fees and Expenses

In 2022, aggregate plaintiffs' attorneys' fees and expenses amounted to $1 billion (see Figure 21). This marks the first year since 2018 that aggregate plaintiffs' attorneys' fees and expenses exceeded $1 billion. The 2022 aggregate fees and expenses is double the amount observed in 2021, driven by an increase in the aggregate fees and expenses associated with settlements between $10 million and $499.9 million and by the $186 million in fees and expenses associated with settlements between $500 million and $999.9 million. Although there are year-to-year fluctuations in the aggregate fees and expenses, the trend in the median of plaintiffs' attorneys' fees and expenses as a percentage of settlement amount has remained stable (see Figure 22). The data reveal that fees and expenses represent an increasing percentage of settlement value as settlement value decreases—a pattern that is consistent in cases settled since 2013 as well as in cases settled between 1996 and 2012. For cases settled in the recent period with a settlement value of $1 billion or higher, fees and expenses accounted for 8.8% of the settlement value. This percentage increases to more than 30% for cases with a settlement value under $10 million.

Figure 21. **Aggregate Plaintiffs' Attorneys' Fees and Expenses by Settlement Size**
January 2013–December 2022



Figure 22. **Median of Plaintiffs' Attorneys' Fees and Expenses by Size of Settlement**
Excludes Merger Objections, Crypto Unregistered Securities, and Settlements for $0 to the Class



Note: Component values may not add to total value due to rounding.

## Conclusion

In 2022, new filings of federal securities class actions declined for the fourth consecutive year as a result of fewer merger-objection and Rule 10b-5 cases filed. Of the 205 cases filed in 2022, more than 20% were SPAC or crypto-related filings. Total resolutions declined by 14% from 248 in 2021 to 214 in 2022 due to the continued reduction in non-merger-objection and non-crypto unregistered cases. The average settlement value and median settlement value for cases settled in 2022 were $38 million and $13 million, respectively, an increase over the 2021 values.

## Notes

1  This edition of NERA's report on "Recent Trends in Securities Class Action Litigation" expands on previous work by our colleagues Lucy P. Allen, Dr. Vinita Juneja, Dr. Denise Neumann Martin, Dr. Jordan Milev, Robert Patton, Dr. Stephanie Plancich, and others. The authors thank Dr. David Tabak and Benjamin Seggerson for helpful comments on this edition. We thank Vlad Lee and other researchers in NERA's Securities and Finance Practice for their valuable assistance. These individuals receive credit for improving this report; any errors and omissions are those of the authors. NERA's proprietary securities class action database and all analyses reflected in this report are limited to federal case filings and resolutions.

2  In this study we introduced a new category of "special" cases, crypto cases, which consist of two mutually exclusive subgroups: (1) crypto shareholder class actions, which include a class of investors in common stock, American depositary receipts/American depositary shares (ADR/ADS), and/or other registered securities, along with crypto- or digital-currency-related allegations; and (2) crypto unregistered securities class actions, which do not have class investors in any registered securities that are traded on major exchanges (New York Stock Exchange, Nasdaq). We include crypto shareholder class actions in all our analyses that include standard cases. Crypto unregistered securities class actions are excluded from some analyses, which is noted in the titles of our figures.

3  NERA tracks securities class actions that have been filed in federal courts. Most of these cases allege violations of federal securities laws; others allege violations of common law, including breach of fiduciary duty, as with some merger-objection cases; still others are filed in federal court under foreign or state law. If multiple actions are filed against the same defendant, are related to the same allegations, and are in the same circuit, we treat them as a single filing. The first two actions filed in different circuits are treated as separate filings. If cases filed in different circuits are consolidated, we revise our count to reflect the consolidation. Therefore, case counts for a particular year may change over time. Different assumptions for consolidating filings would probably lead to counts that are similar but may, in certain circumstances, lead observers to draw a different conclusion about short-term trends in filings. Data for this report were collected from multiple sources, including Institutional Shareholder Services, Dow Jones Factiva, Bloomberg Finance, FactSet Research Systems, Nasdaq, Intercontinental Exchange, US Securities and Exchange Commission (SEC) filings, complaints, case dockets, and public press reports.

4  Most securities class action complaints include multiple allegations. For this analysis, all allegations from the complaint are included and thus the total number of allegations exceeds the total number of filings.

5  It is important to note that due to the small number of cases in some of these categories, the findings summarized here may be driven by one or two cases.

6  ESG securities class action cases filed in federal courts are included in NERA's database and the analyses in this report. For this update, no analyses have been prepared on this development area specifically.

7  Report updated on 7 February 2023. Analyses for the "SPACs" group were updated to incorporate "blank check" company-related cases and cases that were not originally classified as SPACs prior to publishing.

8  Here "dismissed" is used as shorthand for all class actions resolved without settlement; it includes cases in which a motion to dismiss was granted (and not appealed or appealed unsuccessfully), voluntary dismissals, cases terminated by a successful motion for summary judgment, or an ultimately unsuccessful motion for class certification.

9  While annual average settlement values can be a helpful statistic, these values may be affected by one or a few very high settlement amounts. Unlike averages, the median settlement value is unaffected by these very high outlier settlement amounts. To understand what more typical cases look like, we analyze the average and median settlement values for cases with a settlement amount under $1 billion, thus excluding these outlier settlement amounts. For the analysis of settlement values, we limit our data to non-merger-objection and non–crypto unregistered securities cases with settlements of more than $0 to the class.

10 For our analysis, NERA includes settlements that have had the first settlement-approval hearing. This means we do not include partial settlements or tentative settlements that have been announced by plaintiffs and/or defendants. As a result, although we include the Valeant partial settlement in Table 2 due to its sizable amount, this case is not included in any of our resolution or settlement statistics.

11 NERA-Defined Investor Losses is only calculable for cases involving allegations of damages to common stock based on one or more corrective disclosures moving the stock price to its alleged true value. As a result, we have not calculated this metric for cases such as merger objections.

## About NERA

NERA Economic Consulting (**www.nera.com**) is a global firm of experts dedicated to applying economic, finance, and quantitative principles to complex business and legal challenges. For more than six decades, we have been creating strategies, studies, reports, expert testimony, and policy recommendations for government authorities and the world's leading law firms and corporations. We bring academic rigor, objectivity, and real-world industry experience to issues arising from competition, regulation, public policy, strategy, finance, and litigation.

NERA's clients value our ability to apply and communicate state-of-the-art approaches clearly and convincingly, our commitment to deliver unbiased findings, and our reputation for quality and independence. Our clients rely on the integrity and skills of our unparalleled team of economists and other experts backed by the resources and reliability of one of the world's largest economic consultancies. Continuing our legacy as the first international economic consultancy, NERA serves clients from major cities across North America, Europe, and Asia Pacific.

## Contacts

For further information, please contact:



### Janeen McIntosh
Senior Consultant
New York City: +1 212 345 1375
janeen.mcintosh@nera.com



### Svetlana Starykh
Senior Consultant
White Plains, NY: +1 914 448 4123
svetlana.starykh@nera.com



### Edward Flores
Senior Consultant
New York City: +1 212 345 2955
edward.flores@nera.com

*The opinions expressed herein do not necessarily represent the views of NERA Economic Consulting or any other NERA consultant.*

 To receive publications, news, and insights from NERA, please visit **www.nera.com/subscribe**.





Visit **www.nera.com** to learn more about our practice areas and global offices.

© Copyright 2023
National Economic Research Associates, Inc.

All rights reserved.
Printed in the USA.