**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE iANTHUS CAPITAL HOLDINGS, INC. SECURITIES LITIGATION | No. 20-cv-03135-LAK<br>No. 20-cv-03513-LAK |
| THIS DOCUMENT RELATES TO:<br>Nos. 20-cv-03135 (Securities Class Action), 20-cv-03513 (Cedeno) | |

**LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED**
**MOTION FOR APPROVAL OF NOTICE OF CLASS ACTION SETTLEMENT**

**TABLE OF CONTENTS**

**Page**

I.    PRELIMINARY STATEMENT ................................................................................. 1

II.   NATURE OF THE ACTION ................................................................................. 3

    A.    Procedural History of the Litigation ............................................................... 3

        1.    The Initial Complaint and the Lead Plaintiff Appointment Process ........... 3

        2.    Lead Counsel's Investigation and the Amended Complaint ...................... 3

        3.    Defendants' Motions to Dismiss the Amended Complaint ....................... 4

        4.    Lead Plaintiff's Motion for Leave to File the SAC ................................. 5

        5.    The SAC and Motions to Dismiss the SAC .......................................... 5

        6.    Mediation ...................................................................................... 6

    B.    Summary of Key Terms of the Proposed Settlement ........................................ 6

        1.    Relief to Settlement Class Members and Release of Claims ..................... 6

        2.    Class Notice and Settlement Administration .......................................... 7

            a)    Notice ....................................................................................... 7

            b)    Settlement Administration ............................................................ 8

        3.    Papers in Support of the Settlement, Award of Attorneys' Fees and Expenses, and Lead Plaintiff's Compensatory Award ............................. 8

        4.    Objections ..................................................................................... 9

        5.    Opt-Outs ....................................................................................... 9

        6.    Termination of the Settlement .......................................................... 9

        7.    No Admission of Liability .............................................................. 10

III.  ARGUMENT .................................................................................................... 10

    A.    Standard for Approval of Notice Under Rule 23(e) ....................................... 10

    B.    The Settlement Is Likely To Be Approved ................................................... 11

        1.    Lead Plaintiff and Lead Counsel Adequately Represented the Class ....... 11

2.    The Settlement Is the Result of Arm's Length Negotiations ................... 12

3.    The Settlement Is an Excellent Result for the Class ............................... 13

     a)    Complexity, Expense and Duration of Litigation ........................ 13

     b)    Establishing Liability and Damages ............................................ 14

     c)    Risks of Maintaining Class Action Status ................................... 16

     d)    Range of Reasonableness in Light of the Best Possible
         Recovery and Attendant Risks of Litigation................................ 16

4.    Rule 23(e)(2)(C)(ii)-(iv) ............................................................................ 17

5.    The Settlement Treats All Settlement Class Members Equitably
     Relative to Each Other ............................................................................... 19

6.    The Remaining *Grinnell* Factors Support Approving Notice to the
     Class .......................................................................................................... 19

C.    The Court is Likely to Certify the Settlement Class for Settlement Purposes ...... 20

1.    The Settlement Class Satisfies the Requirements of Rule 23(a) ............... 21

     a)    Numerosity .................................................................................. 21

     b)    Commonality ............................................................................... 22

     c)    Typicality .................................................................................... 22

     d)    Adequacy .................................................................................... 22

2.    The Settlement Class Satisfies the Requirements of Rule 23(b)(3) .......... 30

3.    The Court is Likely to Appoint Lead Counsel as Counsel for the
     Settlement Class ........................................................................................ 31

4.    The Court Should Approve the Proposed Form and Method of Notice ... 32

IV.    PROPOSED SCHEDULE OF EVENTS ....................................................................... 34

V.    CONCLUSION ............................................................................................................. 35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Absolute Activist Value Master Fund Ltd. v. Ficeto*,
677 F.3d 60 (2d Cir. 2012)..............................................................................23, 25, 26, 27

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)...........................................................................................................21, 30

*Butler v. U.S.*,
992 F. Supp. 2d 165 (E.D.N.Y. 2014) .................................................................................27

*Cent. States SE & SW Areas Health and Welf. Fund v. Merck-Medco Mngd. Care*,
504 F.3d 229 (2d Cir. 2007)................................................................................................22

*CFTC v. WorldWide Markets, Ltd.*,
No. CV2120715, 2022 WL 4115708 (D.N.J. Sept. 9, 2022)...............................................26

*Chatelain v. Prudential-Bache Sec., Inc.*,
805 F. Supp. 209 (S.D.N.Y. 1992) ......................................................................................16

*Christine Asia Co., Ltd. v. Yun Ma*,
2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ......................................................................19

*City of Detroit v. Grinnell Corp.*
495 F.2d 448, 463 (2d Cir. 1974)..........................................................................11, 19, 20

*Consol. Edison, Inc. v. Ne. Utilities*,
332 F. Supp. 2d 639 (S.D.N.Y. 2004)..................................................................................32

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001)...................................................................................................13

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006)................................................................................20, 22, 28

*Fishoff v. Coty Inc.*,
2010 WL 305358 (S.D.N.Y. Jan. 25, 2010), *aff'd*, 634 F.3d 647 (2d Cir. 2011)....................15

*Giunta v. Dingman*,
893 F.3d 73 (2d Cir. 2018)...................................................................................................26

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
298 F.R.D. 171 (S.D.N.Y. 2014) .....................................................................................32, 34

*In re "Agent Orange" Prods. Liab. Litig.*,
597 F. Supp. 740 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987)..................................17

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
689 F.3d 229 (2d Cir. 2012)...............................................................................................30, 31

*In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012).......................................................................................20

*In re Citigroup, Inc. Sec. Litig.*,
965 F. Supp. 2d 369 (S.D.N.Y. 2013).......................................................................................19

*In re EVCI Career Colls.*,
2007 WL 2230177 (S.D.N.Y. July 27, 2007) ...........................................................................12

*In re Facebook, Inc.*,
822 F. App'x 40 (2d Cir. 2020) ...............................................................................................13

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
343 F. Supp. 3d 394 (S.D.N.Y. 2018).......................................................................................13

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
574 F.3d 29 (2d Cir. 2009)..................................................................................................22, 28

*In re GSE Bonds Antitrust Litig.*,
414 F. Supp. 3d 686 (S.D.N.Y. 2019).................................................................10, 13, 14, 16

*In re Marsh ERISA Litig.*,
265 F.R.D. 128 (S.D.N.Y. 2010) .............................................................................................19

*In re Metlife Demutualization Litig.*,
689 F. Supp. 2d 297 (E.D.N.Y. 2010) .....................................................................................20

*In re MF Glob. Holdings Ltd. Inv. Litig.*,
310 F.R.D. 230 (S.D.N.Y. 2015) ........................................................................................22, 31

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
187 F.R.D. 465 (S.D.N.Y. 1998) .............................................................................................12

*In re Patriot Nat'l, Inc. Sec. Litig.*,
828 Fed. Appx. 760 (2d Cir. Oct. 2, 2020) .......................................................................12, 23

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
330 F.R.D. 11 (E.D.N.Y. 2019) .........................................................................................11, 29

*In re Petrobras Sec.*,
862 F.3d 250 (2d Cir. 2017)......................................................................................................16

iv

*In re Petrobras Sec. Litig.*,
   317 F. Supp. 3d 858 (S.D.N.Y. 2018)................................................................27, 28, 29, 30

*In re Petrobras Sec. Litig.*,
   No. 14-CV-9662 (JSR), 2018 WL 4521211 (S.D.N.Y. Sept. 21, 2018), *aff'd*,
   778 F. App'x 46 (2d Cir. 2019) ....................................................................................9, 29

*In re Pfizer Inc. Sec. Litig.*,
   282 F.R.D. 38 (S.D.N.Y. 2012) ..........................................................................................22

*In re Poseidon Concepts Sec. Litig.*,
   No. 13CV1213 (DLC), 2016 WL 3017395 (S.D.N.Y. May 24, 2016) ..................................26

*In re Sadia, S.A. Sec. Litig.*,
   269 F.R.D. 298 (S.D.N.Y. 2010) ........................................................................................21

*In re Twinlab Corp. Sec. Litig.*,
   187 F. Supp. 2d 80 (E.D.N.Y. 2002) ..................................................................................22

*In re Vivendi Universal, S.A.*,
   242 F.R.D. 76  (S.D.N.Y. 2007), *aff'd*, 838 F.3d 223 (2d Cir. 2016)....................................30

*Kalnit v. Eichler*,
   99 F. Supp. 2d 327 (S.D.N.Y. 2000), *aff'd*, 264 F.3d 131 (2d Cir. 2001) ...............................15

*Lea v. Tal Educ. Grp.*,
   2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021).......................................................................18

*Maley v. Del Global Tech. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002)..................................................................................18

*Moloney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
   2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) .......................................................................18

*Morrison v. National Australia Bank Ltd.*,
   561 U.S. 247 (2010)............................................................................................... *passim*

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
   339 U.S. 306 (1950)...........................................................................................................34

*Myun-Uk Choi v. Tower Rsch. Cap. LLC*,
   890 F.3d 60 (2d Cir. 2018)..................................................................................................25

*Phillips Petrol. Co. v. Shutts*,
   472 U.S. 797 (1985).............................................................................................................31

*Roach v. T.L. Cannon Corp.*,
   778 F.3d 401 (2d Cir. 2015)................................................................................................30

*Rubenstein v. Cosmos Holdings, Inc.*,
    2020 WL 3893347 (S.D.N.Y. July 10, 2020) ........................................................................25

*SEC v. Ripple Labs, Inc.*,
    No. 20CIV10832ATSN, 2022 WL 762966 (S.D.N.Y. Mar. 11, 2022)...................................26

*Shapiro v. JPMorgan Chase & Co.*,
    2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) .........................................................................32

*Strougo v. Barclays PLC*,
    312 F.R.D. 307 (S.D.N.Y. 2016) .............................................................................................32

*Sullivan v. DB Invs., Inc.*,
    667 F.3d 273 (3d Cir. 2011)....................................................................................................30

*U.S. v. Georgiou*,
    777 F.3d 125 (3d Cir. 2015)....................................................................................................25

*U.S. v. Isaacson*,
    752 F.3d 1291 (11th Cir. 2014) ..............................................................................................25

*U.S. v. Vilar*,
    729 F.3d 62 (2d Cir. 2013)......................................................................................................26

*United States v. Cornelson*,
    No. 15 CR. 516 (JGK), 2022 WL 2334054 (S.D.N.Y. June 27, 2022) .............................26, 28

*Vargas v. Capital One Fin. Advisors*,
    559 F. App'x 22 (2d Cir. 2014) ..............................................................................................32

*Victoria Perez v. Allstate Ins. Co.*,
    2019 WL 1568398 (E.D.N.Y. Mar. 29, 2019).........................................................................29

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)......................................................................................................13

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982)......................................................................................................20

**Statutes**

15 U.S.C §77l(a) ...........................................................................................................................4

15 U.S.C. §78j(b) ..........................................................................................................................4

15 U.S.C. § 78u-4(a) ....................................................................................................19, 32, 33, 34

28 U.S.C. § 1715............................................................................................................................8

**Rules**

Fed. R. Civ. P. 23 ............................................................................................................. *passim*

Lead Plaintiff Jose Antonio Silva ("Lead Plaintiff"), individually and on behalf of all Settlement Class Members, respectfully submits this memorandum in support of his unopposed motion seeking direction of notice and approval of the form and manner of giving notice of the proposed Settlement to the Settlement Class Members, a date for a Settlement Fairness Hearing (the "Settlement Hearing"), and deadlines for the mailing and publication of notice to the Settlement Class, for Settlement Class Member objections and opt-out notices, for the filing of Lead Plaintiff's motion for Final Approval, and for the filing of Lead Counsel's application for an award of attorneys' fees and reimbursement of expenses and a compensatory award to Lead Plaintiff.[1]

## I.    PRELIMINARY STATEMENT

Lead Plaintiff requests that the Court authorize providing notice of the proposed Settlement to the Settlement Class under Rule 23(e)(1) of the Federal Rules of Civil Procedure. Notice is proper under Rule 23(e)(1)(B) because the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."

The proposed Settlement is an excellent resolution of this litigation. It will resolve claims against Defendants[2] in exchange for a sizable cash payment of $2,900,000 (the "Settlement Amount") for the benefit of the Settlement Class. This recovery represents approximately 16.6% of the likely recoverable damages in this case, which is well above the median recovery of 1.8%

---

[1] Unless otherwise defined, all capitalized terms herein have the same meanings as set forth in the Stipulation, attached as Exhibit 1 to the Declaration of Michael Grunfeld ("Grunfeld Decl."), which is filed concurrently herewith.

[2] Defendants are iAnthus Capital Holdings, Inc. ("iAnthus"), Hadley C. Ford, Julius John Kalcevich, Gotham Green Partners, LLC ("GGP"), and Jason Adler (collectively, "Defendants").  Defendants consent to the relief sought, but do not adopt Lead Plaintiff's statements herein.

of estimated damages for all securities class actions settled in 2022. This is powerful evidence that the Settlement is substantively fair to investors.

The Settlement is also procedurally fair. By the time the Settlement was reached, Lead Plaintiff and his counsel were well-informed about the strengths and weaknesses of the claims and defenses. Before reaching the Settlement, Lead Counsel: (i) conducted a comprehensive investigation into Defendants' allegedly wrongful acts; (ii) drafted and filed an 88-page Amended Complaint based on their extensive investigation (ECF No. 48); (iii) opposed Defendants' motions to dismiss the Amended Complaint (ECF Nos. 73-74); (iv) conducted an intensive investigation, pursuant to the Court's order dismissing the Amended Complaint, to show that Lead Plaintiff engaged in domestic transactions under *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010); (v) successfully moved for leave to amend (ECF Nos. 82-84, 90); (vi) drafted and filed a 95-page Second Amended Complaint addressing the issues that the Court raised concerning *Morrison* (ECF No. 91); (vii) successfully opposed, in part, Defendants' motions to dismiss the Second Amended Complaint (ECF Nos. 93-103, 108-109, 112); (vii) served and pursued third-party discovery requests; (viii) drafted and exchanged mediation statements; (ix) participated in a full-day, in-person mediation session before Jed D. Melnick, Esq., an experienced JAMS mediator; and (x) negotiated the proposed Settlement. The Settlement is, therefore, the result of arm's-length negotiations conducted by informed and experienced counsel, together with a well-respected mediator.

On May 25, 2023, the Court denied Lead Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement "without prejudice to a new motion based on a settlement stipulation and proposed class notices that neither state nor imply that the Court has [granted 'preliminary approval' to the settlement] and making any other changes that are appropriate in

light of the Court's stated practice." ECF No. 128. The Parties have reached the revised proposed Settlement to address the Court's Order.

For these reasons, and those discussed further below, the proposed Settlement meets the standard under Rule 23(e)(1)(B) for approving of providing notice of a class action settlement.

## II.    NATURE OF THE ACTION

This is a securities class action brought by investors alleging that Defendants made materially false and misleading statements and omissions concerning iAnthus's financing arrangements, from May 2018 through the planned restructuring that it announced in July 2020. Lead Plaintiff further alleged that the price of iAnthus's common stock was artificially inflated as a result of Defendants' false and misleading statements, and declined when the truth emerged.

### A.    Procedural History of the Litigation

#### 1.    The Initial Complaint and the Lead Plaintiff Appointment Process

On April 20, 2020, Donald W. Finch commenced this Action against Defendants styled *Donald W. Finch v. iAnthus Capital Holdings, Inc., et al.*, Case No. 1:20-cv-03135-LAK (S.D.N.Y.). On July 9, 2020, the Court consolidated that action and another putative class action styled *Peter L. Cedeno v. iAnthus Capital Holdings Inc., et al.*, that was filed on May 5, 2020, under the caption *In re iAnthus Capital Holdings, Inc. Securities Litigation*, Case No.: 1:20-cv-03135-LAK. ECF No. 41.[3] The Court appointed Jose Antonio Silva as Lead Plaintiff in the Action and Pomerantz LLP ("Pomerantz") as Lead Counsel for the putative class. *Id.*

#### 2.    Lead Counsel's Investigation and the Amended Complaint

Following Lead Counsel's appointment, counsel conducted a comprehensive investigation

---

[3] Hi-Med LLC filed a separate action against Defendants and others (the Hi-Med Action, Case No. 20-cv-03898), which was coordinated with this securities class action for purposes of motion to dismiss briefing and discovery, to the extent the actions address overlapping issues, but the two actions remained separate and were not consolidated for all purposes. ECF No. 114.

into Defendants' allegedly wrongful acts, which included, among other things: (1) reviewing and analyzing (a) iAnthus's regulatory filings, (b) public reports and announcements, research reports prepared by analysts, and news articles concerning Defendants, and (c) other publicly available material related to Defendants; and (2) conducting an extensive investigation (with the aid of a private investigator) that involved, *inter alia*, numerous interviews of former iAnthus employees. Lead Counsel also consulted with damages and loss causation experts.

On September 4, 2020, Lead Plaintiff filed an Amended Complaint. ECF No. 48. The Amended Complaint asserted claims against Defendants under Section 10(b) of the Securities Exchange of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, and against the Individual Defendants, Ford, Kalcevich, and Adler under Section 20(a) of the Exchange Act. The Amended Complaint alleged, among other things, that during the Settlement Class Period (from May 14, 2018 to July 10, 2020), Defendants made false and misleading statements concerning iAnthus's financing arrangements. The specific categories of misrepresentations alleged include, *inter alia*, statements related to (i) conflicts of interests; (ii) the terms of iAnthus's transactions with GGP in light of an allegedly secret "Exit Fee"; (iii) iAnthus's ability to obtain further financing; and (iv) iAnthus's compliance with a provision in its September 30, 2019 agreement with GGP that required iAnthus to post $5.27 million in an escrow account so that those funds would be available to repay GGP. The Amended Complaint also alleged that iAnthus's stock price was artificially inflated as a result of these allegedly false and misleading statements and that it declined when the truth was revealed.

### 3.    Defendants' Motions to Dismiss the Amended Complaint

Defendants filed motions to dismiss the Amended Complaint on November 20, 2020. ECF Nos. 61-69. Lead Plaintiff filed its opposition to Defendants' motions to dismiss on January 8, 2021. ECF Nos. 73-74. Defendants filed their reply briefs in further support of their motions to

4

dismiss on February 22, 2021. ECF Nos. 77-80. In an Order dated August 30, 2021, the Court dismissed the Amended Complaint solely on the ground that Lead Plaintiff did not adequately plead "'transactions in securities listed on domestic exchanges' or a 'domestic transaction in other securities,'" as required by *Morrison*. ECF No. 81 at 13. The Court, however, granted Lead Plaintiff permission to move for leave to file a proposed second amended complaint. *Id.* at 19.

### 4.    Lead Plaintiff's Motion for Leave to File the SAC

On October 1, 2021, Lead Plaintiff filed a Motion for Leave to File the Second Consolidated Amended Class Action Complaint on the basis that the amendments adequately alleged domestic transactions under *Morrison* by providing abundant detail on the mechanics of Lead Plaintiff's transactions. ECF Nos. 82-84. After reviewing the motion to amend, Defendants took no position on the motion, which was granted on November 3, 2021. ECF No. 90.

### 5.    The SAC and Motions to Dismiss the SAC

Pursuant to the Court's November 3, 2021 Order, Lead Plaintiff filed the Second Consolidated Amended Class Action Complaint ("SAC") that day. ECF No. 91. On December 20, 2021, Defendants filed motions to dismiss the SAC. ECF Nos. 93-101. Lead Plaintiff filed its briefing in opposition to Defendants' motions on February 3, 2022. ECF Nos. 102-103. Defendants filed their reply briefs in further support of their motions on March 21, 2022. ECF Nos. 108-109.

In an Order dated September 28, 2022, the Court granted in part and denied in part Defendants' motions to dismiss the SAC. ECF No. 112 ("Motion to Dismiss Decision"). In denying in part Defendants' motions, the Court held that Lead Plaintiff adequately alleged (1) "domestic transactions" under *Morrison*, (2) that Defendants made materially false and misleading statements concerning iAnthus's relationship with GGP, (3) those statements were made "in connection with" Lead Plaintiff's transactions in iAnthus stock, (4) a strong inference of scienter against all Defendants, (5) loss causation, and (6) reliance. *Id.* The Court also rejected Defendants'

arguments that Lead Plaintiff's claims are "predominantly foreign" and that they are barred by the doctrine of *forum non conveniens*. *Id.* The Court, however, dismissed Lead Plaintiff's claims arising out of statements related to Defendants' alleged conflicts of interest and self-dealing. *Id.*

### 6.    Mediation

On January 17, 2023, the Parties participated in a private mediation with Jed D. Melnick, Esq., an experienced mediator at JAMS. In advance of the mediation, the Parties submitted and exchanged detailed mediation statements and exhibits, which addressed, among other things, issues related to liability, class certification, loss causation, and damages. The Parties participated in a full day, in-person mediation session at the offices of JAMS in New York City. The Parties were not able to reach agreement at the mediation, but continued discussions. Following the mediation, the Parties reached an agreement in principle to settle the Action for a payment of $2.9 million for the benefit of the Settlement Class, subject to the execution of a settlement stipulation and related papers. On January 31, 2023, the parties notified the Court that they had reached a settlement in principle to resolve the Action. ECF No. 121.

### B.    Summary of Key Terms of the Proposed Settlement

#### 1.    Relief to Settlement Class Members and Release of Claims

Defendants have agreed to settle the Action for $2.9 million. The funds will be deposited in an escrow account and will be held in instruments or accounts backed by the Full Faith & Credit of the U.S. Government. If the Settlement is approved, none of the funds will revert to Defendants or their insurance carriers. If the Settlement is not approved, or otherwise does not become effective, the funds other than notice and administrative expenses already incurred will revert.

The Settlement Class is limited to investors that purchased or otherwise acquired iAnthus securities between May 14, 2018 and July 10, 2020, both dates inclusive, pursuant to domestic

transactions, and were allegedly damaged thereby.[4] Stipulation ¶ 1(oo). The Notice and Claim Form explain that potential Settlement Class Members may show that they engaged in domestic transactions in iAnthus securities by demonstrating that they (1) transacted in iAnthus shares that traded under the ticker symbol "ITHUF"; (2) made their purchases while located in the United States; (3) made their purchases from a brokerage account located in the United States; and (4) made their purchases in United States dollars. *See* Grunfeld Decl., Ex. A-1 to Ex. 1, ¶¶ 18, 53 and Grunfeld Decl., Ex. A-2 to Ex 1. The claims released by the Settlement parallel the claims included in the Settlement Class and release only claims arising out of domestic transactions. Stipulation ¶ 1(jj).

### 2. Class Notice and Settlement Administration

#### a) Notice

Within 21 days of approval of providing notice, a Postcard Notice substantially in the form set forth in Exhibit A-4 to the Stipulation will be mailed to each Settlement Class Member identified by records maintained by iAnthus's transfer agent, as well as institutional investors, and a list of banks and brokerage firms that usually maintain custodial accounts. Stipulation ¶ 22. The Postcard Notice will direct Settlement Class Members to the website maintained by the Claims Administrator, A.B. Data, where they can find the Stipulation and its exhibits, the Order Approving Notice, and the Notice and Proof of Claim and Release form containing directions on how to complete and submit Proof of Claim forms electronically, as well as directions on how to request that a Proof of Claim and other documents, including the Long Form Notice ("Notice"), are mailed to them. Grunfeld Decl., Ex. A-4 to Ex. 1. In addition, a Summary Notice will be published through

---

[4] Defendants, certain individuals and entities related to Defendants, and investors that properly exclude themselves are excluded from the Settlement Class. Stipulation ¶ 1(oo).

the internet, since that medium is most frequently accessed by investors and is cost-effective. Grunfeld Decl., Ex. A to Ex. 1, ¶ 7(d).

The Postcard Notice also describes key terms of the Settlement in plain English (including the Settlement Amount, the release of claims, and the maximum attorneys' fees award and expense reimbursement) and provides the date of the Settlement Hearing, as well as the deadline for filing claims and objecting to, or opting out of, the Settlement.[5]

### b)      Settlement Administration

After a competitive bidding process, Lead Counsel selected A.B. Data as the Claims Administrator, to administer the notice program and process claims for the Settlement. A.B. Data is well known and experienced in the administration of securities fraud class action settlements.

### 3.      Papers in Support of the Settlement, Award of Attorneys' Fees and Expenses, and Lead Plaintiff's Compensatory Award

No later than 35 days before the Settlement Hearing, Lead Counsel will submit papers in support of the Settlement and Plan of Allocation, as well as the request for the awards of attorneys' fees, expenses, and Lead Plaintiff's compensatory award. Grunfeld Decl., Ex. A to Ex. 1, ¶ 27. Those papers will explain why the Settlement should be approved and Lead Counsel's efforts on behalf of the Class (including the time and rates of each attorney and paralegal who contributed to the outcome).

No less than 7 days before the Settlement Hearing, Lead Counsel may submit reply papers in support of the motion for final approval of the Settlement, Plan of Allocation, request for an award of attorneys' fees and expenses, and request for a compensatory award to Lead Plaintiff.

---

[5] It is respectfully requested that the Settlement Hearing be held no earlier than 100 days after entry of the Order Approving Notice. This will allow mailing of the Postcard Notice to be commenced within 21 days; Settlement Class Members to have ample time to consider their options and, if they choose, to file objections or opt out of the Settlement Class; time for the parties to respond to such objections; and service of notices under the Class Action Fairness Act, 28 U.S.C. § 1715.

### 4.    Objections

Any Settlement Class Member who objects to the Settlement or related matters must do so by 21 days before the Settlement Hearing and must send copies of such objections to the Court as well as designated counsel for the Settlement Class and Defendants. Grunfeld Decl., Ex. A to Ex. 1, ¶ 16. Any Settlement Class Member who does not file a timely written objection to the Settlement shall be foreclosed from seeking any adjudication or review of the Settlement by appeal or otherwise.

To ensure the legitimacy of any such objections, the Settlement Class Member must file documents evidencing domestic transactions in iAnthus securities, as well as submit to this Court's jurisdiction for a possible deposition. *See In re Petrobras Sec. Litig.*, No. 14-CV-9662 (JSR), 2018 WL 4521211, at *4 (S.D.N.Y. Sept. 21, 2018), *aff'd*, 778 F. App'x 46 (2d Cir. 2019).

### 5.    Opt-Outs

Any Settlement Class Member who wishes to be excluded from the Settlement must do so by written request including documentation of their domestic transactions, postmarked no later than 21 days before the Settlement Hearing. Grunfeld Decl., Ex. A to Ex. 1, ¶ 13. The opt-out request must be sent to Lead Counsel, Defendants' Counsel, and the Claims Administrator (but not the Court).

### 6.    Termination of the Settlement

Defendants have the right to withdraw from the Settlement if Settlement Class Members owning a previously negotiated amount of iAnthus securities elect to opt out. The threshold amount is set forth in a separate agreement that will not be filed with the Court unless Defendants choose to exercise their right of withdrawal or as otherwise directed by the Court. In the event the Settlement is not approved, or does not become final due to appeals or Defendants' withdrawal, the parties will return to their positions before the Settlement and the litigation will proceed apace.

**7.      No Admission of Liability**

By entering into the Stipulation, the Defendants do not admit liability and continue to deny that they engaged in any misconduct or violated the law.

### III.      ARGUMENT

**A.      Standard for Approval of Notice Under Rule 23(e)**

Under Rule 23(e)(1) of the Federal Rules of Civil Procedure, the first stage of a class settlement is for the court to direct notice of the proposed settlement to the class if the court determines that it "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(l)(B); *see also In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 691 (S.D.N.Y. 2019). If the court orders dissemination of the notice, the next step is "final approval," where "class members and settling parties are provided the opportunity to be heard on the question of final court approval." *Id.* at 691–92.

In determining whether to grant final approval to a settlement, the court considers whether it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).[6] Rule 23(e)(2)—which governs final approval—requires courts to consider the following questions in determining whether a proposed settlement is fair, reasonable, and adequate:

(A)      have the class representatives and class counsel adequately represented the class;

(B)      was the proposal negotiated at arm's length;

(C)      is the relief provided for the class adequate, taking into account:

    i.      the costs, risks, and delay of trial and appeal;

    ii.      the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

---

[6] Unless otherwise indicated, all emphases are added and citations and quotations omitted.

> iii.     the terms of any proposed award of attorneys' fees, including timing of payment; and
>
> iv.     any agreement required to be identified under Rule 23(e)(3); and

(D)     does the proposal treat class members equitably relative to each other.

These Rule 23(e)(2) factors "add to, rather than displace, the *Grinnell* factors." *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019). The following traditional factors that the Second Circuit set out in *City of Detroit v. Grinnell Corp.*, that are utilized to evaluate the propriety of a class action settlement (certain of which overlap with Rule 23(e)(2)) are still relevant:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement;[7] (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d 448, 463 (2d Cir. 1974). As set forth below, the Court should authorize dissemination of the Notice because Settlement is likely to be approved as it satisfies the Rule 23(e)(2) criteria and the *Grinnell* factors.

## B.     The Settlement Is Likely To Be Approved

### 1.     Lead Plaintiff and Lead Counsel Adequately Represented the Class

Rule 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class." In assessing adequacy, "the primary factors are whether the representatives have any 'interests antagonistic to the interests of other class members'

---

[7] The Court does not yet have the benefit of the Settlement Class's reaction because notice of the proposed Settlement has not yet been sent. Lead Counsel and Lead Plaintiff will update the Court as to the Settlement Class's reaction in connection with their motion for final approval of the Settlement.

and whether the representatives 'have an interest in vigorously pursuing the claims of the class.'" *In re Patriot Nat'l, Inc. Sec. Litig.*, 828 Fed. Appx. 760, 764 (2d Cir. Oct. 2, 2020) (citing cases).

Lead Plaintiff and Lead Counsel satisfy these criteria. *First*, Lead Plaintiff suffered substantial losses as a result of Defendants' allegedly wrongful conduct, and his interest in obtaining the largest possible recovery is aligned with the other Settlement Class Members. *See Patriot*, 828 Fed. Appx. at 764 (finding adequacy where plaintiffs were "motivated to recover as much as possible for each class member."). Lead Plaintiff also diligently oversaw the litigation, assisted in the investigation of the claims, and communicated with Lead Counsel to discuss case developments, including settlement. *See In re EVCI Career Colls.*, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007) (holding "a settlement reached under the supervision of appropriately selected Plaintiffs is entitled to an even greater presumption of reasonableness").

*Second*, Lead Plaintiff's claims are typical of and coextensive with the claims of the Settlement Class, and they have no antagonistic interests, as explained in the discussion below regarding certification of the Settlement Class. (*See infra* pp. 21-22).

*Third*, Lead Plaintiff retained counsel that are highly experienced in securities litigation and who have a long and successful track record of representing investors in such cases. *See* Grunfeld Decl., Ex. 3; *infra* pp. 30-31. Lead Counsel vigorously prosecuted the Settlement Class's claims and were acutely aware of the strengths and weaknesses of the case before settling the action. *See supra* pp. 1-6 and *infra* pp. 12-16; *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (explaining courts consistently give "great weight" to counsel's recommendation).

### 2.    The Settlement Is the Result of Arm's Length Negotiations

Rule 23(e)(2)(B) requires procedural fairness: that "the proposal was negotiated at arm's length." "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement

reached in arm's-length negotiations between experienced, capable counsel." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *see also In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 409 (S.D.N.Y. 2018), *aff'd*, 822 F. App'x 40 (2d Cir. 2020) (involvement of a third-party mediator makes the settlement procedurally fair).  Here, as explained above, the parties engaged in mediation with Jed D. Melnick, Esq. (*Supra* pp. 5-6). The arm's-length nature of the negotiations, and the involvement of a mediator with substantial experience in complex securities class actions, support finding the Settlement fair and free of collusion.  *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).

### 3.    The Settlement Is an Excellent Result for the Class

Under Rule 23(e)(2)(C), the Court must also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors.  Fed. R. Civ. P. 23(e)(2)(C).  Each factor supports authorizing dissemination of the Notice.

### a)    Complexity, Expense and Duration of Litigation

This case involves alleged violations of the federal securities laws, and Lead Plaintiff and Lead Counsel believe that the claims asserted against Defendants have merit.  They acknowledge, however, the expense and length of continued proceedings necessary to pursue their claims through trial and appeals, as well as the very substantial risks they would face in establishing liability, loss causation, and damages. Assuming Lead Plaintiff's claims were certified to proceed as a class action under Rule 23 (and not successfully reversed on a Rule 23(f) interlocutory appeal), and survived summary judgment, litigating the action through trial and post-trial appeals would have undoubtedly been a long and expensive endeavor.  Were the litigation to continue, a potential recovery—if any—would occur years from now, substantially delaying payment to the Settlement Class.  *See In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 693 (S.D.N.Y. 2019) (explaining

13

that "[c]ourts favor settlement when litigation is likely to be complex, expensive, or drawn out").

By contrast, the Settlement provides an immediate and substantial recovery for the Settlement

Class, without exposing the Settlement Class to the risk, expense, and delay of continued litigation.

### b)    Establishing Liability and Damages

In considering these factors, "a court 'should balance the benefits afforded the Class,

including immediacy and certainty of recovery, against the continuing risks of litigation.'" *Id.* at

694.  While Lead Counsel believes Lead Plaintiff's claims have merit, they also recognize that

they faced substantial obstacles to proving liability, loss causation, and damages.  When compared

to the certainty of the significant benefit conferred by the Settlement, these risks militate against

further litigation and support a determination that the Settlement is fair, reasonable and adequate.

**Establishing Liability:** The fact that Lead Plaintiff overcame Defendants' motions to

dismiss, in part, is not a guarantee of ultimate success. Indeed, while the Court sustained certain

of Lead Plaintiff's claims, it granted Defendants' motion as to the claims related to alleged

conflicts of interest. ECF No. 112 at 42. Defendants would inevitably raise this in an effort to limit

the scope of the case going forward.

Lead Plaintiff also faces ongoing risks associated with Defendants' forthcoming summary

judgment motions, motions *in limine*, trial, and likely appeals, which would extend the litigation

for years and might lead to a smaller recovery or no recovery at all. For example, while Lead

Plaintiff believes he effectively demonstrated that Defendants made materially false and

misleading statements in violation of the federal securities laws, Defendants will contest at

summary judgment and trial whether their statements and omissions are inactionable because they

are not significant to a reasonable investor, and whether Defendants publicly warned of the risks

at issue or the truth was on the market.

In addition, Defendants would contest whether any alleged false and misleading statements

were made with the requisite state of mind (*i.e.*, scienter) to support the securities fraud claims alleged. While Lead Plaintiff strongly disagrees with this assertion, had the litigation continued there is simply no guarantee that the finder of fact would ultimately adopt Lead Plaintiff's view of the case. Indeed, scienter is commonly regarded to be the most difficult element to prove in a securities fraud claim. *See, e.g.*, *Fishoff v. Coty Inc.*, 2010 WL 305358, at *2 (S.D.N.Y. Jan. 25, 2010) ("[T]he element of scienter is often the most difficult and controversial aspect of a securities fraud claim"), *aff'd*, 634 F.3d 647 (2d Cir. 2011); *Kalnit v. Eichler*, 99 F. Supp. 2d 327, 345 (S.D.N.Y. 2000) (same), *aff'd*, 264 F.3d 131 (2d Cir. 2001).

**Loss Causation and Damages:** Lead Plaintiff would have also faced the significant risk that Defendants could argue that Lead Plaintiff's losses were not causally connected to the alleged false and misleading statements. Lead Plaintiff alleges that the truth about iAnthus's financing arrangements were revealed to the market through a series of corrective disclosures. Certain of the alleged corrective disclosures, however, are subject to defenses that they were arguably not statistically significant. Accordingly, Defendants will likely assert that the declines in iAnthus's share price on those alleged corrective disclosures dates were not caused by those disclosures.

Defendants would also likely argue that the corrective disclosure dates were not causally connected to the subject of the alleged false and misleading statements. For example, Defendants would likely argue that because the Court granted their motions to dismiss concerning allegations related to conflicts of interest and self-dealing (ECF No. 112 at 42), certain of the alleged corrective disclosures did not relate to the remaining statements concerning iAnthus's financing from GGP that the Court held were adequately alleged to be false and misleading.

If Defendants prevailed on these arguments, the amount of recoverable damages could be greatly diminished. Even if Lead Plaintiff prevailed at trial, that victory would not guarantee the

15

Class a larger recovery than the Settlement Amount.

### c) Risks of Maintaining Class Action Status

While Lead Plaintiff and Lead Counsel are confident that the Settlement Class meets the requirements for class certification, the class has not yet been certified, and Lead Plaintiff is aware there is a risk the Court could disagree. Then, even if the Court certified the class, there is always a risk that the certified class could be decertified at a later stage in the proceedings. *See Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992). Thus, the risks and uncertainty surrounding class certification support approval of the Settlement, as Defendants will certainly oppose class certification given the arguments they asserted in their respective motions to dismiss. *See GSE*, 414 F. Supp. 3d at 694 ("this factor weighs in favor of settlement where it is likely that defendants would oppose class certification if the case were to be litigated").

For example, the Settlement Class would face the risk, in the litigation context, that Defendants would argue the criteria for satisfying *Morrison* that the Court described in its Motion to Dismiss Decision would pose manageability issues that would preclude a finding of predominance under Rule 23(b)(3). ECF No. 112 at 19-21.[8] Lead Plaintiff is confident this would not pose a hurdle to class certification for the independent reasons that (1) there are clear class-wide criteria for establishing domesticity and (2) "any variation across plaintiffs is, on balance, insufficient to defeat predominance" in the context of the claims as whole. *In re Petrobras Sec.*, 862 F.3d 250, 274 n.27 (2d Cir. 2017). Defendants, however, would likely argue otherwise.

### d) Range of Reasonableness in Light of the Best Possible Recovery and Attendant Risks of Litigation

The adequacy of the amount offered in settlement must be judged "not in comparison with

---

[8] These issues do not pose any hurdle to class certification for settlement purposes, for the reasons explained below. (*See infra* pp. 22-28).

16

the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prods. Liab. Litig*., 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987). The proposed Settlement provides an all cash payment of $2,900,000 for the benefit of the Settlement Class. This is an excellent result in light of the risks of continued litigation. Lead Plaintiff's damages expert estimates that if Lead Plaintiff prevailed at summary judgment and trial, and the Court and jury accepted Lead Plaintiff's damages theory, the most reasonable estimate of potential damages would be approximately $17.5 million.[9] Thus, the $2.9 million Settlement represents a recovery of approximately 16.6%, well above the median recovery of 1.8% of estimated damages in securities class actions settled in 2022. *See* Grunfeld Decl., Ex. 2 (Janeen McIntosh, Svetlana Starykh and Edward Flores, *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review* (NERA Jan. 24, 2023 at 18 (Fig. 19)).

> ### 4.    Rule 23(e)(2)(C)(ii)-(iv)

Under Rule 23(e)(2)(C), courts also must consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims"; "the terms of any proposed award of attorney's fees, including timing of payment"; and "any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv).  Each of these factors either supports approval of the Settlement or is neutral and does not suggest any basis for insufficiency of the Settlement.

**Rule 23 (e)(2)(C)(ii):** The method for processing Settlement Class Members' claims includes well-established and effective procedures. A.B. Data, the Claims Administrator selected

---

[9] This damages estimate is based on the statistically significant corrective disclosure dates in the proposed Plan of Allocation that was created with the assistance of Lead Plaintiff's damages expert. *See* Grunfeld Decl., Ex. A-1 to Ex. 1, ¶¶ 44-51. It includes dates that are consistent with Lead Plaintiff's theory of damages after accounting for the claims that the Court dismissed in the Motion to Dismiss Decision.

by Lead Counsel (subject to Court approval), will process claims under the guidance of Lead Counsel, allow claimants an opportunity to cure any claim deficiencies or request the Court to review their claim denial, and mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), after Court approval. Claims processing, like the method proposed here, is standard in securities class action settlements. It has been long found to be effective, as well as necessary, insofar as neither Lead Plaintiff nor Defendants possess the individual investor trading data required for a claims-free process.[10]

**Rule 23(e)(2)(C)(iii):** As disclosed in the Notice, Lead Counsel will be applying for a percentage of the common fund fee award in an amount not to exceed 33.3% to compensate them for the services they have rendered on behalf of the Settlement Class.[11] A proposed attorneys' fee of up to 33.3% of the Settlement Fund (which includes interest earned on the Settlement Amount) is reasonable in light of the work performed and the results obtained. It is also consistent with awards in similar complex class action cases.[12] More importantly, approval of the attorneys' fees that will be requested is separate from approval of the Settlement, which may not be terminated based on a ruling with respect to attorneys' fees. *See* Stipulation ¶19. Lead Plaintiff will also seek an award of no more than $15,000 to reimburse Lead Plaintiff for his time and expense in

---

[10] This is not a claims-made settlement. If the Settlement is approved, Defendants will not have any right to the return of a portion of the Settlement based on the number or value of the claims submitted. *See* Stipulation ¶16.

[11] As required by Local Civil Rule 23.1, the Notice also includes a description of certain fee-sharing agreements between Lead Plaintiff's Counsel in the Action. *See* Grunfeld Decl., Ex. A-1 to Ex. 1, ¶ 66, n.6.

[12] *See Lea v. Tal Educ. Grp.*, 2021 WL 5578665, at *12 (S.D.N.Y. Nov. 30, 2021) ("The percentage of the fund requests – one-third – is a percent that has been approved as reasonable in this Circuit.") (citing cases); *Moloney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) (Counsel's "request for 33% of the Settlement Fund is typical in class action settlements in the Second Circuit."); *Maley v. Del Global Tech. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002) ("request [for 33.33%] falls comfortably within the range of fees typically awarded in securities class actions").

18

representing the Settlement Class, as provided in 15 U.S.C. § 78u-4(a)(4).

**Rule 23(e)(2)(C)(iv):** The parties have entered into a confidential agreement that establishes certain conditions under which Defendants may terminate the Settlement if Settlement Class Members who collectively purchased more than a specific number of shares of the Company's common stock eligible to participate in the Settlement request exclusion (or "opt out") from the Settlement. "This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement." *Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019). The parties will produce this supplemental agreement for the Court's review, if requested.

### 5.    The Settlement Treats All Settlement Class Members Equitably Relative to Each Other

Rule 23(e)(2)(D) requires courts to evaluate whether the Settlement treats class members equitably relative to one another.  The Settlement easily satisfies this standard.  Under the proposed Plan of Allocation, detailed on pages 13-16 of the proposed Notice (Ex. A-1 to Ex. 1 of the Grunfeld Decl.), each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund. As explained above, the Plan of Allocation includes the statistically significant corrective disclosure dates in the SAC, after accounting for the Court's Motion to Dismiss Decision. (*See supra* p. 16 fn.9). An Authorized Claimant's *pro rata* share shall be the Authorized Claimant's recognized claim divided by the total of recognized claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. Courts have repeatedly approved similar plans. *See In re Citigroup, Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 386-87 (S.D.N.Y. 2013); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145-46 (S.D.N.Y. 2010).

### 6.    The Remaining *Grinnell* Factors Support Approving Notice to the Class

*Grinnell* also outlined several factors that are not co-extensive with Rule 23(e)(2).  These

factors further support authorizing dissemination of the Notice.

**The Stage of the Proceedings and the Amount of Discovery Completed:** This factor examines "whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement." *In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*, 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012). Lead Plaintiff and Lead Counsel conducted an extensive investigation into the allegations here; the parties submitted substantial briefing relating to the motions to dismiss the Amended Complaint, motion for leave to amend, and motions to dismiss the SAC, totaling hundreds of pages; and they exchanged detailed mediation briefs. *See supra* pp. 3-6.

**The Ability of Defendants to Withstand a Greater Judgment:**  iAnthus no longer exists as it did when this action was filed, because it went through the restructuring described in the SAC. ECF No. 100 at 8-9. Even in its reconstituted form, which Defendants might argue is not liable for the claims in this action, iAnthus's shares are trading at just $0.016 cents per share. Grunfeld Decl. Ex. 4. This factor thus supports the Settlement. Moreover, even if Defendants could withstand a greater judgment, "the defendant's ability to pay is much less important than other factors, especially where the other *Grinnell* factors weigh heavily in favor of settlement approval."  *In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 339 (E.D.N.Y. 2010).

C.      **The Court is Likely to Certify the Settlement Class for Settlement Purposes**

The Court should also approve of providing notice because it is likely to "certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(ii). The Second Circuit has long acknowledged the propriety of certifying a class solely for purposes of settlement. *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982). A settlement class, like other certified classes, must satisfy the requirements of Fed. R. Civ. P. 23(a) and (b).  *See Denney v. Deutsche*

*Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006). The manageability concerns of Rule 23(b)(3), however, are not at issue for a settlement class. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997) ("Whether trial would present intractable management problems . . . is not a consideration when settlement-only certification is requested.").

Here, the Parties have stipulated to the certification of the Settlement Class for settlement purposes only. Stipulation ¶ 2. Lead Plaintiff requests that the Court certify the Settlement Class defined in the Stipulation for settlement purposes. The Settlement Class comprises "all persons and entities who purchased or otherwise acquired iAnthus securities between May 14, 2018 and July 10, 2020, both dates inclusive, pursuant to domestic transactions, and were allegedly damaged thereby," subject to certain exceptions for persons or entities related to Defendants and those that exclude themselves from the Settlement. *Id.* ¶ 1(oo). As set forth below, the proposed Settlement Class satisfies all of the applicable requirements of Rule 23(a) and 23(b)(3).

### 1. The Settlement Class Satisfies the Requirements of Rule 23(a)

#### a) Numerosity

The first element of the class certification standard requires that "the class [be] so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). In securities fraud class actions relating to publicly traded corporations, numerosity "may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period." *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 304 (S.D.N.Y. 2010). Here, the Settlement Class is comprised of purchasers of iAnthus securities in domestic transactions. Millions of iAnthus securities traded during the Settlement Class Period and the United States over-the-counter ("OTC") marketplace was the largest market for those securities. SAC ¶¶ 42, 341. The number of Settlement Class Members is therefore likely to be at least in the thousands. The Settlement Class is thus sufficiently numerous.

21

### b)    Commonality

Securities fraud cases easily meet the commonality requirement, which is satisfied where "putative class members have been injured by similar material misrepresentations and omissions." *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 44 (S.D.N.Y. 2012).  Here, questions of law and fact regarding Lead Plaintiff's claims are common to the Settlement Class, including whether Defendants' representations were materially misleading and made with scienter.  These questions are susceptible to common answers because their resolution does not differ based on the plaintiff's or class member's identity. Commonality is therefore met.  *In re MF Glob. Holdings Ltd. Inv. Litig.*, 310 F.R.D. 230, 236 (S.D.N.Y. 2015).

### c)    Typicality

Typicality is established where "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Cent. States SE & SW Areas Health and Welf. Fund v. Merck-Medco Mngd. Care*, 504 F.3d 229, 245 (2d Cir. 2007). Lead Plaintiff's claims are typical of the Settlement Class because they are based on the same set of alleged misrepresentations and omissions that apply to the Settlement Class as a whole. *See In re Twinlab Corp. Sec. Litig.*, 187 F. Supp. 2d 80, 83 (E.D.N.Y. 2002).

### d)    Adequacy

The adequacy of a class representative "is twofold: the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members." *Denney*, 443 F.3d at 268. "In order to defeat a motion for certification, however, the conflict must be fundamental." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009). In addition, adequacy assesses whether "plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Id.*

Plaintiff has an "interest in vigorously pursuing the claims" here to recover as much as

possible in damages for the Settlement Class in light of his significant losses. *Patriot*, 828 Fed. Appx. at 764. (*See supra* p. 11). The Settlement Class is also adequately represented by Lead Plaintiff's choice of Lead Counsel. (*See supra* p. 11 and *infra* pp. 30-31).

In addition, there are no intra-class conflicts because all Settlement Class Members are similarly situated. They all suffered losses as a result of Defendants' alleged misstatements and omissions and they all engaged in domestic transactions in iAnthus securities. Stipulation ¶ 1(oo).

**All Settlement Class Members Satisfy *Morrison*.** The Notice and Claim Form explain that Settlement Class Members must show that they have engaged in domestic transactions in iAnthus securities, and that they may show domestic transactions by demonstrating that they (1) transacted in iAnthus shares that traded under the ticker symbol "ITHUF," which was the symbol used for iAnthus stock traded on the market run by the OTC Markets Group (SAC ¶¶ 22, 33, 42)[13]; (2) made their purchases while located in the United States; (3) made their purchases from a brokerage account located in the United States; and (4) made their purchases in U.S. dollars. *See* Grunfeld Decl., Ex. A-1 to Ex. 1, ¶ 53 and Grunfeld Decl., Ex. A-2 to Ex 1.

These criteria satisfy *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010). A transaction is domestic under *Morrison* where facts show that "irrevocable liability was incurred or that title was transferred within the United States." *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 62 (2d Cir. 2012). This test is met if *either* the purchaser *or* the seller incurs irrevocable liability in the United States. *Id.* at 68. Relevant factors for determining where irrevocable liability is incurred include "facts concerning the formation of the contracts, the placement of purchase orders, the passing of title, or the exchange of money." *Id.* at 70.

The Court noted several factors when holding in the Motion to Dismiss Decision that the

---

[13] iAnthus's shares on the Canadian Securities Exchange traded under the symbol "IAN". SAC ¶¶ 33, 42.

SAC adequately alleged domestic transactions. These include that Lead Plaintiff "paid for the trades with funds in his TD Ameritrade account which were held by TD Ameritrade in the United States"; "[i]n at least two trades, TD Ameritrade routed the purchase through Susquehanna International Group," which were then fulfilled by E*Trade; and Lead Plaintiff's "payments for his ITHUF shares were deducted from his TD Ameritrade account." ECF No. 112 at 20-21. These allegations were "sufficient to show a domestic purchase under *Morrison*'s second prong because the trades allegedly became binding when E*TRADE fulfilled the orders, which it did domestically" and "a representative from TD Ameritrade allegedly explained to Silva that when it conducts transactions for securities of foreign companies that are listed on the U.S. OTC market that have a 5-digit tracker ending in 'F' (such as ITHUF), it therefore routes th[ose] transactions through the U.S. and not a foreign exchange." *Id.* at 21.

In addition to the facts alleged in the SAC, the factors used in the Settlement to establish domesticity further satisfy *Morrison* based on information that Lead Plaintiff has obtained from the OTC Markets Group in response to a third-party subpoena. The OTC Market Group explained that trades on its platform primarily follow a process in which (1) brokers post quotes for offers to buy and sell stocks; (2) they then message each other through the OTC Markets Group's platform to negotiate and reach agreement on transaction terms; and (3) the OTC Markets Group then sends a confirmation of these transaction terms to the brokers. Grunfeld Decl., Ex. 5 ¶ 5.[14] The OTC Markets Group further explained that its data servers—on which all of these steps take place—are located in New Jersey and Pennsylvania. *Id.* ¶¶ 8-9. And the brokers that transact on its platform are all "FINRA member broker-dealers subject to FINRA Rules, including Rule 5220 (Offers At

---

[14] Other trades on the OTC Market Group's platform take place through an anonymous matching engine in which the OTC Markets Group "act[s] as the executing party." Grunfeld Decl., Ex. 5 ¶ 7. These transactions also take place at the OTC Market Group's data centers in the United States. *Id.* ¶¶ 8-9.

Stated Prices)" (FINRA's Firm Quote rule), under which they are required to adhere to the prices that they offer. *Id.* ¶ 6.[15] Moreover, the OTC Markets Group is headquartered in New York and is specifically dedicated to investors in the United States. SAC ¶¶ 33-35, 39-41, 44-45.

This process for trading on the OTC market shows that "the formation of the contracts," and therefore irrevocable liability, for all transactions in iAnthus stock on that market took place in the United States. *Absolute Activist*, 677 F.3d at 70. By limiting the Settlement Class to domestic transactions in iAnthus securities, and by providing a clear framework under which Class Members may establish domestic transactions through their OTC trades in iAnthus common stock, the Settlement Class satisfies *Morrison*. *See Myun-Uk Choi v. Tower Rsch. Cap. LLC*, 890 F.3d 60, 63 and 67 (2d Cir. 2018) (finding trades could be domestic under *Morrison* because they were binding and could not be revoked when they "matched with a counterparty by an electronic trading platform ('CME Globex') located in Aurora Illinois," even though they did not clear and settle until the following day in Korea); *see also U.S. v. Georgiou*, 777 F.3d 125, 135 (3d Cir. 2015) (holding a foreign entity's purchase of securities, not listed on a U.S. exchange, through American market makers acting as intermediaries for the foreign entities was considered a "domestic transaction"); *U.S. v. Isaacson*, 752 F.3d 1291, 1299 (11th Cir. 2014) (discussing an expert report detailing how over-the-counter "exchanges [were] 'similar to' the NYSE and the NASDAQ"); *Rubenstein v. Cosmos Holdings, Inc.*, 2020 WL 3893347, at *11 (S.D.N.Y. July 10, 2020) (holding *Morrison* satisfied where stock was listed and traded on an OTC market through domestic market makers and facilities).

Multiple courts have held recently that when transactions take place on trading platforms

---

[15] Moreover, all transactions in iAnthus stock on the OTC market are "settled, cleared and custodized" in the United States. SAC ¶ 41. This shows that the subsequent steps for completing transactions in ITHUF stock also take place in the United States.

based in the United States, "it is common sense to infer" that those transactions qualify as "domestic transactions" under *Morrison*. *See United States v. Cornelson*, No. 15 CR. 516 (JGK), 2022 WL 2334054, at *4 (S.D.N.Y. June 27, 2022) (holding allegation of purchase of options on exchange located in New York "necessarily means that the contracts for those options were formed, the title to those options passed, and the purchasers of those options incurred irrevocable liability, all in the United States"); *SEC v. Ripple Labs, Inc.*, No. 20CIV10832ATSN, 2022 WL 762966, at *13 (S.D.N.Y. Mar. 11, 2022) (holding sales on digital asset trading platforms that are incorporated and based in the U.S., on which defendants executed offers and sales, and that allocated assets to investors accounts, qualified as domestic transactions). These cases cite precisely the types of domestic activity that took place on the OTC market here, including that "customers were allegedly required to send electronic orders to WWM's server in New Jersey" and defendant "(1) received orders, (2) executed trades, and (3) sent electronic trade confirmations to customers from WWM's New Jersey office." *CFTC v. WorldWide Markets, Ltd.*, No. CV2120715, 2022 WL 4115708, at *2 (D.N.J. Sept. 9, 2022).

The additional criteria that claimants may use to establish domesticity—including that Class Members conducted transactions from the U.S., through brokerage accounts located in the U.S., and in U.S. dollars—further satisfy *Morrison*. *See Absolute Activist*, 677 F.3d at 68, 70 (discussing the "placement of purchase orders, the passing of title, or the exchange of money"); *Giunta v. Dingman*, 893 F.3d 73, 76-82 (2d Cir. 2018) (holding a complaint sufficiently pled domesticity where one of the parties to the transaction was located in the U.S. and money was wired in U.S. dollars using a bank account located in New York); *U.S. v. Vilar*, 729 F.3d 62, 77-78 n.11 (2d Cir. 2013) (holding "territoriality under *Morrison* concerns where, physically, the purchaser or seller committed him or herself"); *In re Poseidon Concepts Sec. Litig.*, No. 13CV1213

26

(DLC), 2016 WL 3017395, at *12 (S.D.N.Y. May 24, 2016) (holding a Florida resident who bought Poseidon stock on the OTC market "in Florida through a local office of his broker, Charles Schwab" adequately alleged domestic transactions); *Butler v. U.S.*, 992 F. Supp. 2d 165, 178 (E.D.N.Y. 2014) (holding *Morrison* satisfied where "[c]ontracts were not executed with both parties present in a single location" but "Butler bought and sold securities from the Credit Suisse office in New York"). These Settlement criteria are sufficient because transactions are domestic if *either* the purchaser *or* the seller incurs irrevocable liability in the United States. *Absolute Activist*, 677 F.3d at 68.

The Settlement thus limits the Settlement Class to Class Members who have engaged in domestic transactions, and provides clear criteria under which Class Members may show domestic transactions consistent with this Court's precedent.  The criteria of purchasers being located in the United States and engaging in transactions through U.S. brokerage accounts and in U.S. dollars coincides with investors that purchased their iAnthus securities on the market run by the OTC Markets Group under the symbol ITHUF, because that market specifically serves U.S. customers. SAC ¶¶33, 39-41, 44-45. These additional criteria therefore provide further support that the Settlement Class satisfies *Morrison*.

In sum, there is no intra-class conflict because the entire Settlement Class is similarly situated in that all members satisfy *Morrison*.

**There is No Intra-Class Conflict That Precludes Certification for Settlement Purposes.** There is also no intra-class conflict for the independent reason that regardless of whether the Settlement criteria definitively constitute domestic transactions (which they do for the reasons described above), it is well established that "[i]n the Second Circuit, plaintiffs are entitled to settle even entirely non-meritorious claims." *In re Petrobras Sec. Litig.*, 317 F. Supp. 3d 858,

866 (S.D.N.Y. 2018) (citing *In re Am. Int'l Grp., Inc. Sec. Litig.*, ("AIG"), 689 F.3d 229, 243 (2d Cir. 2012) and *Denney*, 443 F.3d at 264-65), *aff'd*, 784 F. App'x 10 (2d Cir. 2019). The existence of foreign transactions in the Settlement Class therefore would not preclude certification for settlement purposes. The only question is whether that possibility raises an intra-class conflict so severe as to be "the type of 'fundamental' conflict that renders the class uncertifiable." *In re Flag Telecom*, 574 F.3d at 35.

There is no "fundamental" conflict here because all Settlement Class Members are in the same position with respect to their transactions. All Settlement Class Members who traded iAnthus stock under the symbol ITHUF, for shares that trade on the OTC market, are situated the same as each other, and as Lead Plaintiff, in that the identity of the third-party brokers that ended up fulfilling their trade requests is out of the control of Settlement Class Members.

Furthermore, although it would be possible for Settlement Class Members to ascertain where brokers conducted each of their transactions in iAnthus stock (as Lead Plaintiff did for a small set of his transactions), it would be very administratively burdensome for every Settlement Class Member to do so for every single purchase of ITHUF stock during the Settlement Class Period. Given how the OTC Markets Group operates (*see supra* pp. 23-24) and that iAnthus used its market to make its stock available to United States investors (SAC ¶¶ 33-35, 39-41, 44-45), "it is common sense to infer" that transactions in ITHUF shares by individuals located in the U.S., from U.S. brokerage accounts, and in U.S. dollars all took place in the U.S. through similar mechanisms as Lead Plaintiff's transactions described in the SAC. *Cornelson*, 2022 WL 2334054, at *5. The "substantial administrative costs of" further "differentiating between" domestic and foreign transactions supports certifying the Settlement Class. *In re Petrobras*, 317 F. Supp. 3d at 869.

The rationale for certifying the Settlement Class is especially strong because all Settlement Class Members are similarly situated. The assessment in *Petrobras* was between (1) transactions whose connection to the U.S. was solely the fact that they cleared or settled through the Depository Trust Company ("DTC") and (2) those that took place on a domestic exchange. *Id.* at 866. Here, in contrast, Settlement Class Members trading iAnthus common stock are situated the same to the extent that their trades took place on the OTC market by brokers beyond their control. If this Settlement does not warrant approval, then it would be impossible to bring a federal securities class action under *Morrison*'s second prong, for "domestic transactions in other securities," related to shares that trade in the OTC market.

**The Court Should Authorize Providing Notice to the Settlement Class.** The Court should also direct dissemination of the Notice so that it can assess the reaction of the Settlement Class. This step "requires only an 'initial evaluation' of the fairness of the proposed settlement" that supports "submit[ting] the [settlement] proposal to class members and hold[ing] a full-scale hearing as to its fairness." *Victoria Perez v. Allstate Ins. Co.*, 2019 WL 1568398 at *1 (E.D.N.Y. Mar. 29, 2019). The court does not "exhaustively consider the factors applicable to final approval" since "[c]ritical information as to whether a proposed settlement is fair, reasonable, and adequate, will be obtained through the notice and opt-out process, and the final fairness hearing." *In re Payment Card Interchange*, 330 F.R.D. at 30 n.24.

The Settlement's release parallels the definition of the Settlement Class and is specifically limited to claims arising out of domestic transactions. Stipulation ¶ 1(jj). Investors who did not engage in domestic transactions are therefore not bound by the Settlement. Investors who engaged in domestic transactions, and are therefore part of the Settlement Class, should have the chance to provide their feedback regarding its fairness.

29

### 2.      The Settlement Class Satisfies the Requirements of Rule 23(b)(3)

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  The Settlement Class satisfies these requirements.

**Common Questions Predominate:** Predominance exists where questions capable of common proof are "more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015). The Supreme Court has explained that predominance is a "test readily met in certain cases alleging . . . securities fraud." *Amchem*, 521 U.S. at 625.  Here, there are common questions of law and fact involving violations of the securities laws based on a common course of conduct directed at the entire Settlement Class. These questions predominate over any individualized questions that may exist.  *See In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 90 (S.D.N.Y. 2007), *aff'd*, 838 F.3d 223 (2d Cir. 2016).

Furthermore, "manageability concerns" relevant to the predominance inquiry "do not stand in the way of certifying a settlement class." *In re AIG*, 689 F.3d at 242. That is because "the predominance requirement differs between trial and settlement" in that "with a settlement class, the manageability concerns posed by numerous individual questions [] disappear." *In re Petrobras*, 317 F. Supp. 3d at 870 (citing *In re AIG*, 689 F.3d at 241); *see also Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 335 (3d Cir. 2011) (holding "the settlement class presents no management problems because the case will not be tried"). The predominance requirement has therefore been satisfied for the Settlement Class.

**A Class Action Is Superior:** Rule 23(b)(3) sets forth non-exhaustive factors to be considered in determining whether class certification is the superior method of litigation: "(A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the

30

extent and nature of any litigation concerning the controversy already begun by . . . class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *See* Fed. R. Civ. P. 23(b)(3). Securities class actions easily satisfy the superiority requirement, because "the alternatives are either no recourse for thousands of stockholders" or "a multiplicity and scattering of suits with the inefficient administration of litigation which follows in its wake." *MF Glob.*, 310 F.R.D. at 239.

Investors who have been defrauded by securities law violations, but whose losses do not run into several millions of dollars, "would have no realistic day in court if a class action were not available." *Phillips Petrol. Co. v. Shutts*, 472 U.S. 797, 809 (1985). It is also desirable to concentrate claims in this Court as it is already familiar with the issues in the case. Finally, because this request is for class certification for settlement purposes only, the Court need not inquire as to whether the case, if tried, would present management problems. *In re AIG*, 689 F.3d at 242.

In sum, the Court should approve of providing notice to the Settlement Class because the Court is likely to certify the Settlement Class for settlement purposes.

### 3.    The Court is Likely to Appoint Lead Counsel as Counsel for the Settlement Class

A court that certifies a class must also appoint class counsel. *See* Fed. R. Civ. P. 23(g). The Rule directs the Court to consider: "(1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). Pomerantz was appointed to serve Lead Counsel in July 2020 and has vigorously prosecuted the action on behalf of Lead Plaintiff and the Settlement Class. ECF No. 41. Indeed, Lead Counsel has devoted substantial time, effort, and resources to identifying, investigating,

31

litigating and settling the claims in this matter. (*See supra* pp. 3-6, 11). Moreover, Lead Counsel

is highly experienced and successful at handling securities class action litigation. *See* Grunfeld

Decl., Ex. 3; *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 181 (S.D.N.Y. 2014)

("Pomerantz LLP has extensive experience and a stellar reputation in the field of class action and

securities litigation."); *Strougo v. Barclays PLC*, 312 F.R.D. 307, 328 (S.D.N.Y. 2016). For these

reasons, among others, the Court is likely to appoint Lead Counsel to serve as Class Counsel, and

should therefore authorize providing notice to the Settlement Class.

**4.      The Court Should Approve the Proposed Form and Method of Notice**

Class notice of a settlement must meet the requirements of Rules 23(c)(2) and 23(e), the

PSLRA, and due process. Under Rule 23(c)(2), the Court "must direct to class members the best

notice that is practicable under the circumstances." *Vargas v. Capital One Fin. Advisors*, 559 F.

App'x 22, 26 (2d Cir. 2014). In addition to how it is delivered, the notice "must fairly apprise the

prospective members of the class of the terms of the proposed settlement and of the options that

are open to them in connection with the proceedings," including the opportunity to opt out of or

object to the settlement. *Id.* at 27; *see also Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666,

at \*17 (S.D.N.Y. Mar. 24, 2014). The PSLRA and the Due Process Clause of the United States

Constitution impose similar requirements. *See* 15 U.S.C. § 78u-4(a)(7); *Consol. Edison, Inc. v. Ne.*

*Utilities*, 332 F. Supp. 2d 639, 652 (S.D.N.Y. 2004).

Here, the proposed Notice provides detailed information concerning: (1) the proposed

Settlement; (2) the rights of Settlement Class Members, including the manner in which objections

can be lodged; (3) the nature, history, and progress of the litigation; (4) how to file a Claim Form;

(5) a description of the Plan of Allocation; (6) the fees and litigation expenses to be sought by Lead

Counsel; and (7) the necessary information to examine Court records. Stipulation, Ex. A-1 to Ex.

1.

The proposed Notice also informs Settlement Class Members how to request exclusion from the Settlement and clearly states that all those who do not exclude themselves will be bound by the Settlement and Final Judgment. *Id.* Furthermore, the PSLRA-mandated disclosures are satisfied as the Notice: (1) states the amount of the Settlement on both an aggregate and average per share basis; (2) provides a brief statement explaining the reasons why the parties are proposing the Settlement; (3) states the amount of attorneys' fees and maximum amount of litigation expenses (both on an aggregate and average per share basis) that counsel will seek; and (4) provides the contact information for the Claims Administrator and Lead Counsel to answer questions from Settlement Class Members.[16] *Id.*; 15 U.S.C. § 78u-4(a)(7).

The proposed Order Approving Notice, Exhibit A to the Stipulation, mandates that Lead Counsel provide Settlement Class Members notice of the Settlement by mailing the Postcard Notice by first-class mail to Settlement Class Members who can be identified with reasonable effort. Grunfeld Decl., Ex. A to Ex. 1, ¶7(b). The Postcard Notice describes key information about the Settlement and directs Settlement Class Members to the website maintained by the Claims Administrator, where they can find the full Notice, the Stipulation and its exhibits, the Order Approving Notice, and the Proof of Claim and Release form, as well as a description of other ways that Settlement Class Members can obtain Settlement documents. Grunfeld Decl., Ex. A-4 to Ex. 1; *see also supra* p. 7. Additionally, the Summary Notice will be disseminated electronically once on *PRNewswire* and once in *Investor's Business Daily*. Grunfeld Decl., Ex. A to Ex. 1, ¶ 7(d).

This proposed program for dissemination of notice to potential Settlement Class Members

---

[16] Lead Plaintiff requests that A.B. Data be appointed the Claims Administrator. Lead Counsel sought proposals from multiple claims administration companies for administration of the Settlement. After reviewing responses, Lead Counsel decided to retain A.B. Data due to its substantial experience and its proposal's costs.

is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). The specific steps employed here, including "[t]he use of a combination of a mailed post card directing class members to a more detailed online notice[,] has been approved by courts." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171 at 182 n.3. The form and manner of providing notice to Settlement Class Members are therefore the best practicable under the circumstances and satisfy due process, Rule 23, and the PSLRA.

## IV.    PROPOSED SCHEDULE OF EVENTS

Lead Plaintiff proposes the following schedule of events in connection with the Settlement Hearing, as set forth in the proposed Order Approving Notice filed herewith:

| Event | Deadline for Compliance |
|---|---|
| Date for Settlement Hearing | No earlier than one hundred (100) days after the Court approves of providing the Notice. (Order Approving Notice ¶ 2) |
| Mailing of Postcard Notice | No later than 21 calendar days after the entry of Order Approving Notice. (Order Approving Notice ¶ 7(b)) (the "Notice Date") |
| Publication of Summary Notice | No later than 21 calendar days after the Notice Date (Order Approving Notice ¶ 7(d)) |
| Date for Lead Plaintiff to file and serve papers in support of the Settlement, the Plan of Allocation and for application for attorneys' fees and reimbursement of expenses | No later than 35 calendar days before the Settlement Hearing. (Order Approving Notice ¶ 27) |
| Filing deadline for requests for exclusion | No later than 21 calendar days before the Settlement Hearing. (Order Approving Notice ¶ 13) |
| Filing deadline for objections | No later than 21 calendar days before the Settlement Hearing. (Order Approving Notice ¶ 16) |
| Date for Lead Plaintiff to file reply papers in support of the Settlement, the Plan of Allocation and for application for attorneys' fees and reimbursement of expenses | Seven (7) calendar days before the Settlement Hearing. (Order Approving Notice ¶ 27) |
| Date for Claims to be Filed | Postmarked no later than 7 calendar days after the Settlement Hearing. (Order Approving Notice ¶ 10) |

## V.    CONCLUSION

For the forgoing reasons, Lead Plaintiff respectfully requests that the Court approve of providing notice of the Settlement.

Dated: June 16, 2023

**POMERANTZ LLP**

By: */s/ Michael Grunfeld* ____
Jeremy A. Lieberman
Michael Grunfeld
Brandon M. Cordovi
600 Third Avenue, 20th Floor
New York, NY 10016
P: (212) 661-1100
jalieberman@pomlaw.com
mgrunfeld@pomlaw.com
bcordovi@pomlaw.com

*Lead Counsel for Lead Plaintiff and the
Settlement Class*

**BRONSTEIN, GEWIRTZ & GROSSMAN,
LLC**

Peretz Bronstein
Eitan Kimelman
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-8209
Facsimile: (212) 697-7296
Email: peretz@bgandg.com
Email: eitank@bgandg.com

*Additional Counsel for Lead Plaintiff*