**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE iANTHUS CAPITAL HOLDINGS, INC. SECURITIES LITIGATION | No. 20-cv-03135-LAK<br>No. 20-cv-03513-LAK |
| THIS DOCUMENT RELATES TO:<br>Nos. 20-cv-03135 (Securities Class Action), 20-cv-03513 (Cedeno) | |

**LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT <u>AND PLAN OF ALLOCATION</u>**

**TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................................ 1

II.   ARGUMENT.................................................................................................... 4

    A.    The Standards For Final Approval Under Rule 23(e) and *Grinnell* ...................... 4

    B.    The Settlement Is Fair, Reasonable, and Adequate ............................................... 5

        1.    Plaintiff and Lead Counsel Adequately Represented the Class.................. 5

        2.    The Settlement Is Entitled to a Presumption of Fairness Because It Arose From Arm's-Length Negotiations Among Experienced Counsel .............. 7

        3.    The Settlement is a Very Favorable Result for the Settlement Class in Light of the Benefits of the Settlement and the Risks of Continued Litigation.................................................................................................. 9

            a.    Complexity, Expense And Likely Duration Of The Litigation ...... 9

            b.    The Risks Of Establishing Liability And Damages...................... 11

                i.    Liability............................................................................. 11

                ii.    Loss Causation and Damages ........................................... 12

            c.    Risks of Maintaining Class Action Status ................................... 14

            d.    Range of Reasonableness In Light of the Best Possible Recovery and Attendant Risks of Litigation................................ 15

        4.    The Remaining Rule 23(e)(2)(C) Factors Support Final Approval.......... 16

        5.    The Settlement Treats All Settlement Class Members Equitably Relative to Each Other ............................................................................ 18

        6.    The Remaining *Grinnell* Factors Weigh In Favor of Final Approval ...... 18

            a.    The Settlement Class's Reaction to the Settlement Supports Final Approval ............................................................................ 18

            b.    The Stage of the Proceedings and the Amount of Discovery ....... 19

            c.    The Ability of Defendants to Withstand a Greater Judgment....... 19

    C.    The Plan of Allocation Is Fair and Reasonable and Should Be Approved........... 20

    D.    The Notice Program Satisfies Rule 23, the PSLRA, and Due Process................. 23

    E.    The Court Should Certify the Class for Settlement Purposes and Appoint Lead Counsel as Class Counsel for the Settlement Class............................................. 25

        1.    The Rule 23(a) Requirements Are Satisfied ........................................... 26

        2.    The Rule 23(b)(3) Requirements Are Satisfied ...................................... 28

        3.    The Court Should Appoint Lead Counsel as Counsel for the Settlement Class....................................................................................................... 28

III.  CONCLUSION.............................................................................................. 29

i

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)..............................................................................................................14

*Arbuthnot v. Pierson*,
    607 F. App'x. 73 (2d Cir. 2015) ..........................................................................................10

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
    222 F.3d 52 (2d Cir. 2000)......................................................................................................6

*Beach v. JPMorgan Chase Bank, N.A.*,
    2020 WL 6114545 (S.D.N.Y. Oct. 7, 2020) ...........................................................................5

*Bleton v. GE Cap. Consumer Lending, Inc.*,
    2022 WL 407404 (S.D.N.Y. Feb. 10, 2022)............................................................................8

*Chatelain v. Prudential-Bache Sec., Inc.*,
    805 F. Supp. 209 (S.D.N.Y. 1992) .......................................................................................14

*Christine Asia Co., Ltd. v. Yun Ma*,
    2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019).............................................................18, 20, 22

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974).............................................................................................. *passim*

*City of Providence v. Aeropostale*,
    2014 WL 1883494 (S.D.N.Y. May 9, 2014) ...........................................................................9

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001)......................................................................................................7

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006)..................................................................................................27

*Dura Pharms., Inc., v. Broudo*,
    544 U.S. 336 (2005)..............................................................................................................13

*Fishoff v. Coty Inc.*,
    2010 WL 305358 (S.D.N.Y. Jan. 25, 2010), *aff'd*, 634 F.3d 647 (2d Cir. 2011)....................12

*Fleisher v. Phoenix Life Ins. Co.*,
    2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015)......................................................................20

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000)..........................................................................................5

*Hayes v. Harmony Gold Mining Co.*,
  509 F. App'x 21 (2d Cir. 2013) ...................................................................................9

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
  298 F.R.D. 171 (S.D.N.Y. 2014) .........................................................................25, 29

*In re Alloy, Inc. Sec. Litig.*,
  2004 WL 2750089 (S.D.N.Y. Dec. 2, 2004) ...........................................................10

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
  2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)..........................................................10, 11

*In re Bear Stearns Sec., Derivative, and ERISA Litig.*,
  909 F. Supp. 2d 259 (S.D.N.Y. 2012).......................................................14, 15, 19

*In re Blech Sec. Litig.*,
  2000 WL 661680 (S.D.N.Y. May 19, 2000) ...........................................................16

*In re Citigroup Inc. Bond Litig.*,
  296 F.R.D. 147 (S.D.N.Y. 2013) .............................................................................7

*In re Citigroup Inc. Sec. Litig.*,
  965 F. Supp. 2d 369 (S.D.N.Y. 2013).................................................................9, 18

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
  2007 WL 2230177 (S.D.N.Y. July 27, 2007) ............................................6, 26, 28

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
  2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015)..........................................................7, 13

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010).........................................................15

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  574 F.3d 29 (2d Cir. 2009).............................................................................12, 27

*In re Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ...........................................................................11

*In re GSE Bonds Antitrust Litig.*,
  414 F. Supp. 3d 686 (S.D.N.Y. 2019)..........................................................9, 10, 15

*In re Heritage Bond Litig.*,
  2005 WL 1594403 (C.D. Cal. June 10, 2005) .........................................................22

*In re IMAX Sec. Litig.*,
　283 F.R.D. 178 (S.D.N.Y. 2012) ...............................................................................................9, 20

*In re Marsh & McLennan Co., Inc. Sec. Litig.*,
　2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ...................................................................14, 20

*In re Marsh ERISA Litig.*,
　265 F.R.D. 128 (S.D.N.Y. 2010) ..................................................................................................18

*In re Merrill Lynch & Co., Inc. Rsch. Rep. Sec. Litig.*,
　246 F.R.D. 156 (S.D.N.Y. 2007) ..................................................................................................23

*In re Metlife Demutualization Litig.*,
　689 F. Supp. 2d 297 (E.D.N.Y. 2010) ..........................................................................................20

*In re MF Glob. Holdings Ltd. Inv. Litig.*,
　310 F.R.D. 230 (S.D.N.Y. 2015) ..................................................................................................28

*In re PaineWebber Ltd. P'ships Litig.*,
　171 F.R.D. 104 (S.D.N.Y.), *aff'd*, 117 F.3d 721 (2d Cir. 1997).................................................5

*In re Patriot Nat'l, Inc. Sec. Litig.*,
　828 F. App'x 760 (2d Cir. Oct. 2, 2020)......................................................................................6

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
　330 F.R.D. 11 (E.D.N.Y. 2019)....................................................................................................4

*In re Petrobras Sec.*,
　862 F.3d 250 (2d Cir. 2017).........................................................................................................14

*In re Petrobras Sec. Litig.*,
　317 F. Supp. 3d 858 (S.D.N.Y. 2018), *aff'd*, 784 F. App'x 10 (2d Cir. 2019) ..................10, 11

*In re Sinus Buster Prods. Consumer Litig.*,
　2014 WL 5819921 (E.D.N.Y. Nov. 10, 2014).............................................................................20

*In re Veeco Instruments Inc. Sec. Litig.*,
　2007 WL 4115809 (S.D.N.Y. 2007).............................................................................................22

*In re WorldCom, Inc. Sec. Litig.*,
　388 F. Supp. 2d 319 (S.D.N.Y. 2005)...........................................................................................20

*Kalnit v. Eichler*,
　99 F. Supp. 2d 327 (S.D.N.Y. 2000), *aff'd*, 264 F.3d 131 (2d Cir. 2001) ...............................12

*Maley v. Del Global Techs. Corp.*,
　186 F. Supp. 2d 358 (S.D.N.Y. 2002)...........................................................................11, 16, 17, 19

iv

*Morrison v. National Australia Bank Ltd.*,
    561 U.S. 247 (2010)....................................................................................................2, 8, 14, 27

*Shapiro v. JPMorgan Chase & Co.*,
    2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) .........................................................................7

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
    258 F. Supp. 2d 254 (S.D.N.Y. 2003).....................................................................................10

*Strougo v. Barclays PLC*,
    312 F.R.D. 307 (S.D.N.Y. 2016) .............................................................................................29

*Too v. Rockwell Medical, Inc.*,
    2020 WL 1023435 (E.D.N.Y. Feb. 26, 2020)........................................................................22

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005).............................................................................. *passim*

*Yang v. Focus Media Holding Ltd.*,
    2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014)...........................................................................7

**Statutes**

15 U.S.C. §78j(b) .......................................................................................................................2

15 U.S.C. §78t(a) .......................................................................................................................2

15 U.S.C. §78u-4 .......................................................................................................................1

Private Securities Litigation Reform Act of 1995 ......................................................6, 23, 24, 25

**Rules**

Fed. R. Civ. P. 23............................................................................................................ *passim*

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiff Jose Antonio Silva ("Lead Plaintiff" or "Plaintiff"), individually and on behalf of all other members of the proposed Settlement Class, respectfully submits this memorandum of law in support of his unopposed motion seeking (i) final approval of the proposed Settlement of the above-captioned action (the "Action"), (ii) approval of the proposed plan of allocation for the Settlement proceeds (the "Plan of Allocation"), and (iii) final certification of the Settlement Class. Defendants do not oppose this motion.[1]

## I.    INTRODUCTION

After over three years of hard-fought litigation, Plaintiff, through his counsel, obtained a $2,900,000 (the "Settlement Amount") all cash, non-reversionary settlement for the benefit of the Settlement Class.  The terms of the Settlement presented in the Stipulation and Agreement of Settlement, which was executed on June 16, 2023 (ECF No. 131-1 (the "Stipulation")).[2] The Settlement Class is comprised of "all persons and entities who purchased or otherwise acquired iAnthus securities between May 14, 2018 and July 10, 2020, both dates inclusive, pursuant to domestic transactions, and were allegedly damaged thereby."  *See* Stipulation ¶1(oo).

As described below, and in the accompanying Grunfeld Declaration, the proposed Settlement is a very favorable result for the Settlement Class, providing a significant and certain

---

[1] Defendants are iAnthus Capital Holdings, Inc. ("iAnthus"), Hadley C. Ford, Julius John Kalcevich, Gotham Green Partners, LLC ("GGP"), and Jason Adler (collectively, "Defendants"). Defendants consent to the relief sought, but do not adopt Lead Plaintiff's statements herein.

[2] Unless otherwise noted, capitalized terms in this memorandum have the meanings ascribed to them in the Stipulation. Citations to "¶," unless otherwise noted, refer to paragraphs of the Declaration of Michael Grunfeld in Support of: (I) Co-Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (II) Co-Lead Counsel's Motion for an Award of Attorneys' Fees, Payment of Litigation Expenses, and Awards to Co-Lead Plaintiffs Pursuant to 15 U.S.C. §78u-4(a)(4) (the "Grunfeld Declaration" or "Grunfeld Decl."), filed herewith. All exhibits are annexed to the Grunfeld Declaration.

recovery in a case that presented numerous hurdles and risks. The Settlement is, therefore, substantively fair, reasonable and adequate. Moreover, the process by which the Settlement was obtained evidences a lack of collusion amongst the Parties and supports a finding of procedural fairness.

As described in detail in the Grunfeld Declaration, the decision to settle was well-informed by over three years of hard-fought litigation. Prior to reaching the Settlement, Lead Counsel, *inter alia*:

- drafted the initial complaint in the Action and moved for the appointment of Lead Plaintiff and Lead Counsel;

- conducted an extensive investigation of the claims asserted, which included, among other things: (a) reviewing and analyzing (i) iAnthus's filings with the Canadian Securities Exchange ("CSE"), (ii) research reports prepared by securities and financial analysts, and news and industry articles, concerning iAnthus, (iii) iAnthus's investor call transcripts, and (iv) other publicly available material related to iAnthus and Gotham Green Partners; (b) retaining and working with private investigators, who interviewed numerous former Company employees; and (c) working with a damages and loss causation expert to analyze iAnthus's stock price movements;

- utilized the foregoing comprehensive investigation and additional research to draft and file the comprehensive 88-page Amended Complaint (ECF No. 48), which asserted claims against all Defendants under Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and against the Individual Defendants under Section 20(a) of the Exchange Act;

- researched and drafted the opposition to Defendants' motions to dismiss the Amended Complaint (ECF Nos. 73-74);

- conducted an intensive investigation, pursuant to the Court's order dismissing the Amended Complaint, to show that Lead Plaintiff engaged in domestic transactions under *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010);

- successfully moved for leave to amend (ECF Nos. 82-84, 90);

- drafted and filed a 95-page Second Amended Complaint addressing the issues that the Court raised concerning *Morrison* (ECF No. 91);

- successfully opposed, in part, Defendants' motions to dismiss the Second Amended Complaint (ECF Nos. 93-103, 108-09, 112);

- pursued and obtained third-party discovery requests (*see* ECF No. 119; Grunfeld Declaration ¶21);

- began preparing to move for class certification and for the discovery process;

- engaged in a mediation process overseen by a highly experienced third-party mediator, Jed D. Melnick, Esq., which involved an exchange of written submissions concerning the facts of the case, liability and damages, a full-day formal mediation session, and extensive consultation with Plaintiff's expert on damages, loss causation, and class certification;

- negotiated a detailed confidential settlement term sheet with Defendants' counsel, which was executed on January 30, 2023;

- drafted and then negotiated the terms of the Stipulation (including the exhibits thereto) and Supplemental Agreement with Defendants' Counsel;

- worked with a damages expert to craft a plan of allocation that treats Plaintiff and all other members of the proposed Settlement Class fairly;

- drafted the Motion for Approval of Notice of Class Action Settlement and supporting papers (ECF Nos. 129-131);

- oversaw the implementation of the notice process; and

- drafted this Motion for Final Approval and supporting papers.

Grunfeld Decl. ¶¶14-27, 77

In view of the foregoing, and as discussed in greater detail below, it cannot be disputed that the Settlement was negotiated by well-informed Parties at arm's-length, and that the Settlement is a very favorable outcome for the Settlement Class. This is especially true when the recovery is juxtaposed against the many risks of continued litigation, including the very real risk of a substantially smaller recovery, or no recovery at all, many years in the future. *See* Grunfeld Decl. ¶¶28-48. Accordingly, Plaintiff respectfully requests that the Court grant final approval of the Settlement.

Plaintiff also moves for approval of the proposed Plan of Allocation of the Net Settlement Fund. The Plan of Allocation was developed in conjunction with Plaintiff's damages expert and is designed to distribute the proceeds of the Net Settlement Fund fairly and equitably to Settlement Class Members. ¶66. Plaintiff and his counsel believe that the Plan of Allocation is fair and reasonable and, as such, it too should be approved.

## II.    ARGUMENT

### A.    The Standards For Final Approval Under Rule 23(e) and *Grinnell*

Under Rule 23(e), the Court should grant final approval to a class action settlement if it is "fair, reasonable, and adequate."[3]  Fed. R. Civ. P. 23(e)(2).  Rule 23(e)(2)—which governs final approval—requires courts to consider the following questions in determining whether a proposed settlement is fair, reasonable, and adequate:

(A)    have the class representatives and counsel adequately represented the class;

(B)    was the proposal negotiated at arm's length;

(C)    is the relief provided for the class adequate, taking into account:

  (i)    the costs, risks, and delay of trial and appeal;

  (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

  (iii)    the terms of any proposed award of attorneys' fees, including timing of payment; and

  (iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)    does the proposal treat class members equitably relative to each other.

Factors (A) and (B) "identify matters . . . described as procedural concerns, looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement," while factors (C) and (D) "focus on . . . a substantive review of the terms of the proposed settlement" (*i.e.*, "[t]he relief that the settlement is expected to provide to class members").  *See* Advisory Committee Notes to 2018 Amendments, 324 F.R.D. 904, 919 (2018).

These Rule 23(e)(2) factors add to, rather than displace, the *Grinnell* factors previously adopted by the Second Circuit.  *See In re Payment Card Interchange Fee and Merchant Discount*

---

[3] Unless otherwise noted, all emphasis is added and internal citations and quotations omitted.

*Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019).   Thus, the Second Circuit's traditional *Grinnell* factors utilized to evaluate the propriety of a class action settlement (certain of which overlap with Rule 23(e)(2)) are still relevant:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 117 (2d Cir. 2005) (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000); *see also Beach v. JPMorgan Chase Bank, N.A.*, 2020 WL 6114545, at *2 (S.D.N.Y. Oct. 7, 2020) (evaluating settlement based on factors set forth in Fed. R. Civ. P. 23(e)(2) and *Grinnell*).

In application, although "[t]he decision to grant or deny such approval lies squarely within the discretion of the trial court . . . this discretion should be exercised in light of the general judicial policy favoring settlement." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 124 (S.D.N.Y.), *aff'd*, 117 F.3d 721 (2d Cir. 1997).  Accordingly, public policy considerations strongly favor settlement, particularly in class actions. *See Wal-Mart*, 396 F.3d at 116 ("We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context.").

As demonstrated below, the proposed Settlement satisfies the criteria for final approval under the four Rule 23(e)(2) factors, as well as the relevant *Grinnell* factors.

### B.    The Settlement Is Fair, Reasonable, and Adequate

#### 1.    Plaintiff and Lead Counsel Adequately Represented the Class

Rule 23(e)(2)(A) requires the Court to consider whether the "class representatives and class

counsel have adequately represented the class."  In assessing adequacy, "the primary factors are whether the class representatives have any 'interests antagonistic to the interests of other class members' and whether the representatives 'have an interest in vigorously pursuing the claims of the class.'"  *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000) ("Generally, adequacy of representation entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and; 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.").[4]

Here, Plaintiff's claims are typical of and coextensive with the claims of the Settlement Class, and they have no antagonistic interests.  Plaintiff, like all other Settlement Class Members, purchased iAnthus securities during the Settlement Class Period in domestic transactions and suffered substantial losses as a result of Defendants' allegedly wrongful conduct.  His interest in obtaining the largest possible recovery is therefore aligned with the other Settlement Class Members.  *See In re Patriot Nat'l, Inc. Sec. Litig.*, 828 F. App'x 760, 764 (2d Cir. Oct. 2, 2020) (finding adequacy where "Plaintiffs were sufficiently motivated to recover as much as possible for each class member").  In addition, Plaintiff oversaw the litigation and communicated with Lead Counsel to discuss case developments, including settlement.  *See In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007) ("[U]nder the PSLRA, a settlement reached under the supervision of appropriately selected Plaintiffs is entitled to an even greater presumption of reasonableness.").

Plaintiff also retained counsel that are highly experienced in securities litigation, and who have a long and successful track record of representing investors in such cases.  *See* Grunfeld Decl.

---

[4] *Accord Wal-Mart*, 396 F.3d at 106-07 ("Adequate representation of a particular claim is established mainly by showing an alignment of interests between class members, not by proving vigorous pursuit of that claim.").

Ex. 5 (Pomerantz firm resume), Ex. 6 (Firm resume of additional counsel Bronstein, Gewirtz & Grossman, LLC).  As noted above, Lead Counsel vigorously prosecuted the Settlement Class's claims, and was acutely aware of the strengths and weaknesses of the case prior to settling the Action.  Based on its expertise, experience, and work in this case, Lead Counsel recommend that final approval of the Settlement is in the best interests of the Settlement Class.  Grunfeld Decl. ¶11. The judgment of counsel "who have extensive experience in prosecuting complex class actions," is entitled to "great weight."  *Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *2 (S.D.N.Y. Mar. 24, 2014); *see also Yang v. Focus Media Holding Ltd.*, 2014 WL 4401280, at *5 (S.D.N.Y. Sept. 4, 2014) (holding "great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation").

### 2.    The Settlement Is Entitled to a Presumption of Fairness Because It Arose From Arm's-Length Negotiations Among Experienced Counsel

The Court must also consider whether the settlement was "negotiated at arm's-length" in weighing approval of a class action settlement.  Fed. R. Civ. P. 23(e)(2)(B).[5]  Courts may apply a presumption of fairness when a class settlement is the product of "arm's-length negotiations between experienced, capable counsel."  *In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 155 (S.D.N.Y. 2013) (quoting *Wal-Mart*, 396 F.3d at 116); *see also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (finding that a mediator's involvement in settlement negotiations "helps to ensure that the proceedings were free of collusion and undue pressure").

Here, the Parties' negotiations did not commence until after Lead Counsel engaged in an

---

[5] This "procedural" fairness determination also covers the third *Grinnell* factor, assessing "whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement." *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 2015 WL 6971424, at *4 (S.D.N.Y. Nov. 9, 2015); *see infra* Sec. II.B.6(b).

extensive investigation to understand the strengths and weaknesses of the case.  Specifically, Lead Counsel thoroughly reviewed publicly available information about iAnthus and Gotham Green Partners; interviewed former iAnthus employees; consulted a damages expert; prepared a detailed 88-page Amended Complaint; fully briefed the Defendants' motions to dismiss the Amended Complaint; conducted an extensive investigation to show that Lead Plaintiff engaged in domestic transactions under *Morrison*, 561 U.S. at 247, in support of the detailed 95-page Second Amended Complaint; successfully sought leave to file the Second Amended Complaint; fully briefed the Defendants' motions to dismiss the Second Amended Complaint, resulting in the Court's denial of Defendants' motions in substantial part; began preparing for the next steps in the litigation, including pursuing (and obtaining) third-party discovery, preparing to move for class certification, and drafting document requests to Defendants; and engaged in hard-fought mediation efforts. Grunfeld Decl. ¶¶9, 77.

As part of the mediation process facilitated by Jed M. Melnick, Esq., an experienced mediator at JAMS, the Parties exchanged written statements and exhibits concerning liability and damages. *Id.* ¶10. Lead Counsel also consulted with Plaintiff's expert on loss causation and damages in advance of the mediation. *Id.* ¶22. The Parties then engaged in a full day of mediation on January 17, 2023 and, following the mediation, reached an agreement in principle to settle the Action. *Id.* ¶¶22-23. The Parties thereafter memorialized the substantive terms of the settlement in a confidential Memorandum of Understanding to settle the Action on January 30, 2023. *Id.* ¶23.

The extensive and arm's-length nature of the settlement negotiations and the involvement of an experienced and respected mediator, Jed D. Melnick, Esq., support the conclusion that the Settlement is procedurally fair and was achieved free of collusion. *See Bleton v. GE Cap. Consumer Lending, Inc.*, 2022 WL 407404, at *3 (S.D.N.Y. Feb. 10, 2022) ("The participation of

a highly qualified mediator in settlement negotiations strongly supports a finding that negotiations were conducted at arm's length and without collusion.").

> ### 3.    The Settlement is a Very Favorable Result for the Settlement Class in Light of the Benefits of the Settlement and the Risks of Continued Litigation

Under Rule 23(e)(2)(C), the Court must also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors. Fed. R. Civ. P. 23(e)(2)(C).[6] In applying these factors, a court "must give comprehensive consideration to all relevant factors," *Hayes v. Harmony Gold Mining Co.*, 509 F. App'x 21, 23 (2d Cir. 2013), but "not every factor must weigh in favor of settlement, rather [a] court should consider the totality of these factors in light of the particular circumstances." *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 189 (S.D.N.Y. 2012). As demonstrated below, each of these factors supports final approval of the Settlement.

> ### a.    Complexity, Expense And Likely Duration Of The Litigation

In general, "the more complex, expensive, and time consuming the future litigation, the more beneficial settlement becomes as a matter of efficiency to the parties and to the Court." *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 381-82 (S.D.N.Y. 2013). This is particularly true here, as "securities class actions are by their very nature complicated and district courts in this Circuit have long recognized that securities class actions are notably difficult and notoriously uncertain to litigate." *City of Providence v. Aeropostale*, 2014 WL 1883494, at *5 (S.D.N.Y. May

---

[6] Rule 23(e)(2)(C)(i) essentially incorporates six of the traditional *Grinnell* factors: the complexity, expense, and likely duration of the litigation (first factor); the risks of establishing liability and damages (fourth and fifth factors); the risks of maintaining class action status through the trial (sixth factor); and the range of reasonableness of the settlement fund in light of the best possible recovery and the attendant risks of litigation (eighth and ninth factors). *See Grinnell*, 495 F.2d at 463; *see also In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 693 (S.D.N.Y. 2019) ("This inquiry overlaps significantly with a number of *Grinnell* factors, which help guide the Court's application of Rule 23(e)(2)(C)(i).").

9, 2014), *aff'd sub nom. Arbuthnot v. Pierson,* 607 F. App'x. 73 (2d Cir. 2015).

Further litigation would have been time consuming and expensive, involved complex issues of law and fact, and there was a significant risk of a lower recovery, or no recovery at all. *See In re Petrobras Sec. Litig.*, 317 F. Supp. 3d 858, 871 (S.D.N.Y. 2018) ("*Petrobras II*") (approving settlement where "any recovery in this case was far from a certainty, given the substantial defenses that were raised"), *aff'd*, 784 F. App'x 10 (2d Cir. 2019); *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2006 WL 903236, at *9 (S.D.N.Y. Apr. 6, 2006) ("In addition to the complex issues of fact involved in this case, the legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages."). At the time the Settlement was reached, class certification had not been granted by this Court. Without the Settlement, the Action would have required a motion for class certification and resolution of that motion, fact and expert discovery, a summary judgment motion, *Daubert* motions, and proving Plaintiff's claims through trial, post-trial motions and appeals.

Throughout each litigation phase, Plaintiff would have undoubtedly faced a robust defense from Defendants' experienced counsel. *See In re Alloy, Inc. Sec. Litig.*, 2004 WL 2750089, at *2 (S.D.N.Y. Dec. 2, 2004) (securities fraud issues are "likely to be litigated aggressively, at substantial expense to all parties"). As a result, were the litigation to continue, a potential recovery—if any—would occur years from now, substantially delaying payment to the Settlement Class. *GSE*, 414 F. Supp. 3d at 693 (explaining that "even if plaintiffs were to prevail at trial, post-trial motions and the potential for appeal could prevent the class members from obtaining any recovery for several years, if at all."); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("[E]ven if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation [.]. . . the passage of time

would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery."). By contrast, the Settlement provides an immediate and substantial recovery for the Settlement Class, without exposing the Settlement Class to the risk, expense, and delay of continued litigation.

### b. The Risks Of Establishing Liability And Damages

In assessing the fairness, reasonableness, and adequacy of a settlement, courts should consider the "risks of establishing liability [and] the risks of establishing damages." *Grinnell*, 495 F.2d at 463; *Wal-Mart*, 396 F.3d at 117. Analyzing these risks "does not require the Court to adjudicate the disputed issues or decide unsettled questions; rather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004); *AOL Time Warner*, 2006 WL 903236, at *11 (same). In other words, "the Court should balance the benefits afforded to members of the Class and the immediacy and certainty of a substantial recovery for them against the continuing risks of litigation." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 364 (S.D.N.Y. 2002). Courts thus should "approve settlements where plaintiffs would have faced significant legal and factual obstacles to proving their case." *Global Crossing*, 225 F.R.D. at 459; *see also Petrobras II*, 317 F. Supp. 3d at 871.

### i. Liability

When the Settlement was reached, Plaintiff had successfully opposed, in part, Defendants' motion to dismiss the Second Amended Complaint. The fact that Plaintiff partly overcame Defendants' motion to dismiss, however, is not a guarantee of ultimate success. Indeed, while the Court sustained certain of Plaintiff's claims, it granted Defendants' motion as to the claims related to Defendants' alleged conflicts of interest. ECF No. 112 ("Motion to Dismiss Decision") at 42. Defendants would inevitably raise this in an effort to limit the scope of the case going forward.

11

Plaintiff also faces ongoing risks associated with the summary judgment motions and motions *in limine* that Defendants would undoubtedly file, as well as trial and likely appeals, which would extend the litigation for years and might lead to a smaller recovery than the Settlement Amount or no recovery at all.  For example, while Plaintiff believes he effectively demonstrated that Defendants made materially false and misleading statements in violation of the federal securities laws, Defendants will contest at summary judgment and trial whether their statements and omissions are inactionable because they are not significant to a reasonable investor, and whether Defendants publicly warned of the risks at issue or the truth was on the market.

In addition, Defendants would contest whether any alleged false and misleading statements were made with the requisite state of mind (*i.e.*, scienter) to support the securities fraud claims alleged.  While Plaintiff strongly disagrees with this assertion, had the litigation continued there is simply no guarantee that the finder of fact would ultimately adopt Plaintiff's view of the case. Indeed, scienter is commonly regarded to be the most difficult element to prove in a securities fraud claim.  *See, e.g.*, *Fishoff v. Coty Inc.*, 2010 WL 305358, at \*2 (S.D.N.Y. Jan. 25, 2010) ("[T]he element of scienter is often the most difficult and controversial aspect of a securities fraud claim"), *aff'd*, 634 F.3d 647 (2d Cir. 2011); *Kalnit v. Eichler*, 99 F. Supp. 2d 327, 345 (S.D.N.Y. 2000) (same), *aff'd*, 264 F.3d 131 (2d Cir. 2001).

### ii.    Loss Causation and Damages

Even if Plaintiff established liability, he faced significant risks in proving loss causation and damages.  *See In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009). For example, Plaintiff alleges that the truth about iAnthus's financing arrangements were revealed to the market through a series of corrective disclosures.  Certain of the alleged corrective disclosures, however, are subject to defenses that they were arguably not statistically significant. Accordingly, Defendants will likely assert that the declines in iAnthus's share price on those

12

alleged corrective disclosures dates were not caused by those disclosures.  Defendants would also likely argue that the corrective disclosure dates were not causally connected to the subject of the alleged false and misleading statements.  For example, Defendants would likely argue that because the Court granted their motions to dismiss concerning allegations related to conflicts of interest and self-dealing (ECF No. 112 at 42), certain of the alleged corrective disclosures did not relate to the remaining statements concerning iAnthus's financing from GGP that the Court held were adequately alleged to be false and misleading.  The removal of corrective disclosures related to these allegations had the potential to remove stock drops of 16% and 62% from the damages calculation. *See* Second Amended Complaint ¶¶305-08.  While Plaintiff would argue that these corrective disclosures are related to the allegations that remain in the case, there was the substantial risk that they would be excluded, in whole or in part.

Even if Plaintiff overcame these arguments and prevailed at trial, that victory would not guarantee the Settlement Class a larger recovery.  Had Defendants prevailed on these arguments, Plaintiff may well have recovered less than the Settlement Amount, or even nothing, even if he had proven liability with respect to the alleged fraud.  *See Dura Pharms., Inc., v. Broudo*, 544 U.S. 336, 345-46 (2005) (holding plaintiffs bear "the burden of proving that the defendant's misrepresentations caused the loss for which the plaintiff seeks to recover").

Furthermore, in order to resolve all disputed issues regarding damages and loss causation, the Parties would have had to rely on expert testimony.  Grunfeld Decl. ¶¶35-36.  This creates further litigation risk because Plaintiff could not be certain whether a jury would accept the view of his experts or of the experts Defendants would no doubt present at trial.  *See Facebook*, 2015 WL 6971424, at *5 ("[D]amages would be subject to a battle of the experts, with the possibility that a jury could be swayed by experts for Defendants, who could minimize or eliminate the

amount of Plaintiffs' losses.  Under such circumstances, a settlement is generally favored over continued litigation."); *In re Marsh & McLennan Co., Inc. Sec. Litig.*, 2009 WL 5178546, at *6 (S.D.N.Y. Dec. 23, 2009) ("If there is anything in the world that is uncertain when [a securities class action] is taken to trial, it is what the jury will come up with as a number for damages.").

### c.    Risks of Maintaining Class Action Status

While Plaintiff and his counsel are confident that the Settlement Class meets the requirements for certification, the class has not yet been certified, and Plaintiff is aware there is a risk the Court could disagree.  If Defendants raise vigorous challenges to class certification, such a dispute would likely "devolve into yet another battle of the experts."  *In re Bear Stearns Sec., Derivative, and ERISA Litig.*, 909 F. Supp. 2d 259, 268 (S.D.N.Y. 2012).  For example, the Settlement Class would face the risk, in the litigation context, that Defendants would argue the criteria for satisfying *Morrison* that the Court described in its Motion to Dismiss Decision would pose manageability issues that would preclude a finding of predominance under Rule 23(b)(3). ECF No. 112 at 19-21.  Lead Plaintiff is confident this would not pose a hurdle to class certification for the independent reasons that (1) there are clear class-wide criteria for establishing domesticity and (2) "any variation across plaintiffs is, on balance, insufficient to defeat predominance" in the context of the claims as whole. *In re Petrobras Sec.*, 862 F.3d 250, 274 n.27 (2d Cir. 2017) ("*Petrobras I*").  Defendants, however, would likely argue otherwise. The Settlement avoids this risk because the types of manageability issues that these arguments raise "is not a consideration when settlement-only certification is requested." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997); *see also infra* at 28.

In addition, even if the Court were to certify the class, there is always a risk that the certified class could be decertified at a later stage in the proceedings.  *See Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992) ("Even if certified, the class would face the risk

14

of decertification.").  Thus, the risks and uncertainty surrounding class certification also support

approval of the Settlement.  *See GSE*, 414 F. Supp. 3d at 694.

### d.    Range of Reasonableness In Light of the Best Possible Recovery and Attendant Risks of Litigation

Courts typically analyze the last two *Grinnell* factors together.  *See Grinnell*, 495 F.2d at

463.  In so doing, courts "consider[] and weigh[] the nature of the claim, the possible defenses, the

situation of the parties, and the exercise of business judgment in determining whether the proposed

settlement is reasonable."  *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at

*20 (S.D.N.Y. Nov. 8, 2010).  A court's "determination of whether a given settlement amount is

reasonable in light of the best possibl[e] recovery does not involve the use of a mathematical

equation yielding a particularized sum."  *Bear Stearns*, 909 F. Supp. 2d at 269.  Instead, the Second

Circuit has held "[t]here is a range of reasonableness with respect to a settlement—a range which

recognizes the uncertainties of law and fact in any particular case and the concomitant risks and

costs necessarily inherent in taking any litigation to completion."  *Wal-Mart*, 396 F.3d at 119.

Here, the proposed Settlement provides an all-cash payment of $2,900,000 for the benefit

of the Settlement Class.  This is an excellent result in light of the significant risks of continued

litigation.  Plaintiff's damages expert estimates that if Plaintiff fully prevailed at summary

judgment and trial, and the Court and jury accepted Plaintiff's damages theory, the most reasonable

estimate of potential damages would be approximately $17.5 million.[7]  Grunfeld Decl. ¶45.  Thus,

---

[7] This damages estimate is based on the statistically significant corrective disclosure dates that Lead Plaintiff's expert on damages and loss causation concluded are applicable based on their standard methodology for calculating damages in securities class actions. It includes corrective disclosure dates from the Second Amended Complaint that are consistent with Lead Plaintiff's theory of damages and their expert's methodology, after accounting for the claims that the Court dismissed in the Motion to Dismiss Decision. These corrective disclosure dates, and the losses attributable to them, are included in the proposed Plan of Allocation. *See* ECF No. 131-1, Ex. A-1, ¶¶44-51.

the $2.9 million Settlement represents a recovery of approximately 16.6% of the likely recoverable damages, well above the median recovery of 1.8% of estimated damages in securities class actions settled in 2023. *See* Grunfeld Decl. ¶46 and Ex. 1 (Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2023 Full-Year Review* (NERA Jan. 23, 2024) at 26 (Fig. 22)). Moreover, this "recovery necessarily assumes Plaintiff's success on both liability and damages covering the full Class Period alleged in the Complaint," after accounting for the Motion to Dismiss Decision, "as well as the ability of Defendants to pay the judgment." *Maley*, 186 F. Supp. 2d at 365.

In addition, this case has been pending since 2020 and could be expected to last several more years had the Settlement not been reached. "While additional years of litigation might well have resulted in a higher settlement or verdict at trial, continued litigation could also have reduced the amount of insurance coverage available and not necessarily resulted in a greater recovery." *In re Blech Sec. Litig.*, 2000 WL 661680, at *5 (S.D.N.Y. May 19, 2000).

### 4.    The Remaining Rule 23(e)(2)(C) Factors Support Final Approval

Under Rule 23(e)(2)(C), courts also must consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;" "the terms of any proposed award of attorney's fees, including timing of payment;" and "any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). Each factor supports approving the Settlement.

**Rule 23 (e)(2)(C)(ii):** The Settlement's method for processing Settlement Class Members' claims and distributing relief to eligible claimants includes well-established, effective procedures for processing claims and efficiently distributing the Net Settlement Fund. The Claims Administrator will process claims under the guidance of Lead Counsel, allow claimants an opportunity to cure any claim deficiencies or request the Court to review their claim denial, and

16

mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), after Court approval.  Grunfeld Decl. ¶¶67-69.  Claims processing, like the method proposed here, is standard in securities class action settlements.  It has been long found to be effective, as well as necessary, insofar as neither Plaintiff nor Defendants possess the individual investor trading data required for a claims-free process to distribute the Net Settlement Fund.[8]

**Rule 23(e)(2)(C)(iii):**  As disclosed in the Notice, Lead Counsel seeks a percentage of the common fund fee award in an amount not to exceed 33.3% for services rendered on behalf of the Settlement Class.[9]  A proposed attorneys' fee of up to 33.3% of the Settlement Fund (which, by definition, includes interest earned on the Settlement Amount) is reasonable in light of the work performed and the results obtained.  It is also consistent with awards in similar complex class action cases.  *See Maley*, 186 F. Supp. 2d at 370 ("Petitioners' request [for one-third of the settlement fund] falls comfortably within the range of fees typically awarded in securities class actions,"); *see also* Fee and Expense Application, Section II(B).  Importantly, approval of the requested attorneys' fees is separate from approval of the Settlement, and the Settlement may not be terminated based on any ruling with respect to attorneys' fees.  *See* Stipulation ¶19.

**Rule 23(e)(2)(C)(iv):**  The Parties have entered into a confidential agreement that establishes certain conditions under which Defendants may terminate the Settlement if Settlement Class Members who collectively purchased more than a specific number of shares of the Company's common stock eligible to participate in the Settlement request exclusion (or "opt out")

---

[8] This is not a claims-made settlement.  If the Settlement is approved, Defendants will not have any right to the return of a portion of the Settlement based on the number or value of the claims submitted. *See* Stipulation ¶16.

[9] As required by Local Civil Rule 23.1, the Notice also includes a description of certain fee-sharing agreements between Plaintiff's Counsel in the Action.  *See* Declaration of Rochelle J. Teichmiller of A.B. Data ("Teichmiller Decl."), Ex. B (Long-Notice) ¶66 n.6.

from the Settlement.  "This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement."  *Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019).  The parties will produce this supplemental agreement for the Court's review, if requested.

### 5.    The Settlement Treats All Settlement Class Members Equitably Relative to Each Other

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another.  The Settlement easily satisfies this standard.  Under the proposed Plan of Allocation, detailed on pages 13-16 of the Long-Form Notice (Ex. B to the Teichmiller Decl. (which is Ex. 2 to the Grunfeld Decl.)) each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund.  An Authorized Claimant's *pro rata* share shall be the Authorized Claimant's recognized claim divided by the total of recognized claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.  Courts have repeatedly approved similar plans. Courts have repeatedly approved similar plans.  *See In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d at 386-87; *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145-46 (S.D.N.Y. 2010).

### 6.    The Remaining *Grinnell* Factors Weigh In Favor of Final Approval

*Grinnell* also outlined several factors that are not coextensive with Rule 23(e)(2)'s new factors.  These factors, viewed in light of the factors identified above, support final approval.

### a.    The Settlement Class's Reaction to the Settlement Supports Final Approval

The second *Grinnell* factor—the reaction of the class—overlaps with Rules 23(e)(4), on the opportunity for exclusion, and 23(e)(5), on the opportunity to object.  As required by Rule 23(e)(4) & (5), the Settlement affords Settlement Class Members the opportunity to request exclusion from, or object to, the Settlement.  Teichmiller Decl., Ex. B (Long-Form Notice) ¶¶67-

18

70, 73-79.  In total, as of March 5, 2024, 40,169 potential Settlement Class Members and their nominees were notified by mailed Postcard Notice.  Teichmiller Decl. ¶8.  To date, no requests for exclusion have been received, and no objections have been filed with the Court.  *Id.* ¶12; Grunfeld Decl., ¶¶63-64.[10]  The Settlement Class's universally positive reaction strongly supports final approval of the Settlement.  *See, e.g.*, *Maley*, 186 F. Supp. 2d at 362 ("It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy.").

### b.    The Stage of the Proceedings and the Amount of Discovery

The third *Grinnell* factor, which looks to the "stage of the proceedings and the amount of discovery completed," *Wal-mart*, 396 F.3d at 117, examines "whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement." *Bear Stearns*, 909 F. Supp. 2d at 267.  Here, among other things, Plaintiff conducted an extensive investigation into iAnthus, Gotham Green Partners, and the nature of transactions in iAnthus stock, briefed two rounds of Defendants' motions to dismiss, moved for leave to file the SAC, consulted with experts on loss causation, damages, and class certification, pursued third-party discovery, engaged in an extensive mediation with Defendants before a well-respected neutral mediator, and negotiated the terms of the Settlement. *See* Grunfeld Decl. ¶¶14-27, 77.

### c.    The Ability of Defendants to Withstand a Greater Judgment

iAnthus no longer exists as it did when this action was filed, because it went through the

---

[10] The deadline to request exclusion from the Settlement and/or to object to any aspect of the Settlement is March 20, 2024. If objections or exclusions are received after the date of this filing, they will be addressed on reply.

restructuring described in the Second Amended Complaint. ECF No. 100 at 8-9. Even in its reconstituted form, which Defendants might argue is not liable for the claims in this action, iAnthus's shares are trading at just $0.02 cents per share. Grunfeld Decl. ¶48. This factor thus supports the Settlement. Moreover, even if Defendants could withstand a greater judgment, "[t]he mere fact that a defendant is able to pay more than it offers in settlement does not, standing alone, indicate the settlement is unreasonable or inadequate." *Fleisher v. Phoenix Life Ins. Co.*, 2015 WL 10847814, at *9 (S.D.N.Y. Sept. 9, 2015); *see also In re Sinus Buster Prods. Consumer Litig.*, 2014 WL 5819921, at *11 (E.D.N.Y. Nov. 10, 2014) ("[T]he defendant's ability to pay is much less important than the other factors, especially where the other *Grinnell* factors weigh heavily in favor of settlement approval."); *In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 339 (E.D.N.Y. 2010) (same).

### C.    The Plan of Allocation Is Fair and Reasonable and Should Be Approved

"To warrant approval, the plan of allocation must also meet the standards by which the settlement was scrutinized—namely, it must be fair and adequate." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005). "As numerous courts have held, a plan of allocation need not be perfect." *Christine Asia*, 2019 WL 5257534, at *15. Rather, "[w]hen formulated by competent and experienced counsel, a plan for allocation of net settlement proceeds need have only a reasonable, rational basis." *IMAX*, 283 F.R.D. at 192; *see also Christine Asia,* 2019 WL 5257534, at 15‑16. Thus, "[i]n determining whether a plan of allocation is fair, courts look largely to the opinion of counsel." *Marsh & McLennan*, 2009 WL 5178546, at *13.

The proposed Plan of Allocation, developed by Plaintiff's damages expert in conjunction with Lead Counsel, reflects an assessment of the damages that Plaintiff contends could have been recovered under the theories of liability asserted in the Action, after accounting for the Motion to

20

Dismiss decision.[11]  Grunfeld Decl. ¶¶65-72.  More specifically, the Plan of Allocation reflects, and is based on, Plaintiff's allegation that the price of iAnthus common stock was artificially inflated during the Settlement Class Period due to Defendants' alleged materially false and misleading statements and omissions.  *Id.*  The Plan of Allocation is based on the premise that the decrease in the price of iAnthus' common stock that occurred on February 27, 2020, April 6, 2020, June 12, 2020, June 23, 2020, and July 13, 2020, following alleged corrective disclosures, may be used to measure the alleged artificial inflation in the price of iAnthus common stock prior to the disclosures.  *Id.*; Teichmiller Decl., Ex. B (Long-Form Notice) ¶48.

An individual Claimant's recovery under the Plan of Allocation will depend on a number of factors, including how many shares of iAnthus common stock the Claimant purchased, acquired, or sold during the Settlement Class Period, when that Claimant bought, acquired, or sold the stock, and the number of valid claims filed by other Claimants.  Grunfeld Decl. ¶69.  If a Claimant has an overall market *gain* with respect to his, her, or its transactions in iAnthus common stock during the relevant period, the Claimant is not entitled to recover under the Plan of Allocation. *Id.* at ¶71; Teichmiller Decl., Ex. B (Long-Form Notice) ¶50.  Specifically, if a Recognized Loss is calculated to be a negative number, that Recognized Loss shall be set to zero.  *Id.*   Moreover, if a Claimant purchased iAnthus common stock during the relevant period, but did not hold any of shares through one of the alleged disclosure events, the Claimant would have no Recognized Loss under the Plan of Allocation, as any loss suffered would not have been caused by the revelation of the alleged fraud.  Grunfeld Decl. ¶70; Teichmiller Decl., Ex. B (Long-Form) ¶48.

Under the proposed Plan of Allocation, each Authorized Claimant will receive his or her

---

[11] The Plan of Allocation is detailed in the Notice.  *See* Teichmiller Decl., Ex. B (Long-Form Notice) ¶¶45-51.

*pro rata* share of the Net Settlement Fund, subject to a $10 minimum distribution. Grunfeld Decl. ¶71; Teichmiller Decl., Ex. B (Long-Form Notice) ¶61. More precisely, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. *Id.*

If any funds remain after an initial distribution to Authorized Claimants, as a result of uncashed or returned checks or other reasons, A.B. Data Ltd. ("A.B. Data") shall make reasonable and diligent efforts to have Settlement Class Members who are entitled to participate in the distribution of the Net Settlement Fund cash their distribution checks. Teichmiller Decl., Ex. B (Long-Form Notice) ¶65. If there are any remaining funds after these efforts, the remaining balance shall be used to pay any amounts mistakenly omitted from the initial disbursement (if any amounts exist), pay any additional settlement administration fees, costs, and expenses and, if economically feasible, used to make a second distribution to claimants who cashed their checks from the initial distribution. *Id.*

Lead Counsel believes the Plan of Allocation will result in a fair and equitable distribution of the Settlement proceeds among Settlement Class Members who submit valid claims. *See Christine Asia*, 2019 WL 5257534, at *15-16 (approving substantially similar plan of allocation); *Too v. Rockwell Medical, Inc.*, 2020 WL 1023435, at *1 (E.D.N.Y. Feb. 26, 2020) (same). To date, no objections to the Plan of Allocation have been filed on this Court's docket, and Lead Counsel are not aware of any objections. Grunfeld Decl. ¶73. Accordingly, Plaintiff respectfully requests that the Court approve the proposed Plan of Allocation. *See In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115809, at *14 (S.D.N.Y. 2007) (finding that absence of any objections supports approval of the plan of allocation); *In re Heritage Bond Litig.*, 2005 WL 1594403, at *12

22

(C.D. Cal. June 10, 2005) (same).

**D.       The Notice Program Satisfies Rule 23, the PSLRA, and Due Process**

Rule 23(e) and due process together require that notice of a settlement be "reasonable"—*i.e.*, it must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings."  *Wal-Mart*, 396 F.3d at 114 (noting "[t]here are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements"); *see also In re Merrill Lynch & Co., Inc. Rsch. Rep. Sec. Litig.*, 246 F.R.D. 156, 166 (S.D.N.Y. 2007) ("Notice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members.").  The notice program's method of dissemination, as well as its substance, satisfy the applicable standards.

In accordance with the Court's Order approving notice of the Settlement to the Settlement Class for consideration ("Order Approving Notice"), the Court-appointed Claims Administrator, A.B. Data: (a) mailed copies of the Postcard Notice via first-class mail to all Settlement Class Members who could be identified with reasonable effort; and (b) notified brokerage firms and other nominees who regularly act as nominees for beneficial purchasers of securities to either (i) forward the Postcard Notice to all beneficial owners for whose benefit the nominees purchased or otherwise acquired iAnthus securities during the Settlement Class Period, or (ii) send a list of the names and addresses of all such beneficial owners to A.B. Data for A.B. Data to promptly mail the Postcard Notice to such beneficial owners.[12]  Teichmiller Decl. ¶¶2-5.  The Postcard Notice

---

[12] The Postcard Notice directed potential Settlement Class Members to downloadable versions of the Notice and Claim Form posted online at www.iAnthusSecuritiesLitigation.com (the "Settlement Website").  Teichmiller Decl., Ex. A (Postcard Notice).

also advised Class Members that Lead Counsel would seek reimbursement of expenses of up to $250,000. *Id.* at Ex. A (Postcard Notice). As of March 5, 2024, a total of 40,169 potential Settlement Class Members and their nominees were notified by mailed Postcard Notice. Teichmiller Decl. ¶8.

As required by Fed. R. Civ. P. 23(c)(2)(B), the Notice informs Settlement Class Members of, among other things: (a) the nature of the Action; (b) the Settlement Class definition; (c) the claims and defenses asserted; (d) a description of the terms of the Settlement; (e) the right of a Settlement Class Member to enter an appearance; (f) the right of a Settlement Class Member to request exclusion from the Settlement Class, and instructions for how and when to do so; (g) the right of a Settlement Class Member to object to any aspect of the Settlement, and the instructions for how and when to do so; (h) the binding effect of the Settlement on Settlement Class Members that do not elect to be excluded; and (i) the date and time of the final Settlement Hearing. *See* Fed. R. Civ. P. 23(c)(2)(B); Teichmiller Decl., Ex. B (Long-Form Notice).[13]

The notice program also satisfies the requirements of the PSLRA, 15 U.S.C. § 78u-4(a)(7), by setting forth in plain, easily understandable language: (a) an introductory section summarizing the information in the Notice; (b) a statement of the Settlement Class's recovery, and the estimated recovery per damaged share; (c) a statement of potential outcomes of the case; (d) a statement of attorneys' fees and expenses sought; (e) identification of the attorneys' representatives; and the (g) reasons for the settlement. Teichmiller Decl., Ex. B (Long-Form Notice).

---

[13] The Notice further advised that Lead Counsel will apply to the Court for an award of attorneys' fees on behalf of all Plaintiff's Counsel in an amount not to exceed 33.3% of the Settlement Fund, as well as reimbursement of Litigation Expenses not to exceed $250,000, including an application for reimbursement of the reasonable costs and expenses incurred by Lead Plaintiff directly related to his representation of the Class, and explained that Settlement Class Members may object to any aspect of the fee and expenses request. Teichmiller Decl. Ex. B (Long-Form Notice) ¶66.

24

In addition to ensuring the dissemination of the Postcard notice to 40,169 potential Settlement Class Members and their nominees, A.B. Data caused the Summary Notice to be published once in *Investor's Business Daily* and transmitted once over the *PR Newswire* on January 22, 2024.   Teichmiller Decl. ¶9.  A.B. Data also posted the downloadable versions of the Stipulation, Order Approving Notice, Notice, Claim Form, Postcard Notice, and Second Amended Complaint on the Settlement Website (*id.* ¶11), and established a toll-free number to respond to Settlement Class Member inquiries.  *Id.* ¶10.   These various methods of notice provided all necessary information for Settlement Class Members to make an informed decision regarding the Settlement.   Moreover, courts routinely find that a mailed postcard directing the class to a more detailed online notice is sufficient to satisfy due process requirements.  *See In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 n.3 (S.D.N.Y. 2014) (citing cases).   Accordingly, the notice program satisfied the requirements of Rule 23, the PSLRA and due process.

**E.    The Court Should Certify the Class for Settlement Purposes and Appoint Lead Counsel as Class Counsel for the Settlement Class**

The Court's December 20, 2023, Order Approving Notice finds that it will likely be able to certify the Settlement Class for settlement purposes under Fed. R. Civ. P. 23(e)(1)(B)(ii).  ECF No. 133 ¶5.  In particular, the Court found:

> [E]ach element required for certification of the Settlement Class pursuant to Rule 23 of the Federal Rules of Civil Procedure has been met or will likely be met: (a) the members of the Settlement Class are so numerous that their joinder in the Action would be impracticable; (b) there are questions of law and fact common to the Settlement Class which predominate over any individual questions; (c) the claims of Lead Plaintiff in the Action are typical of the claims of the Settlement Class; (d) Lead Plaintiff and Lead Counsel have and will fairly and adequately represent and protect the interests of the Settlement Class; and (e) a class action on behalf of the Settlement Class is superior to other available methods for the fair and efficient adjudication of the Action."

The Court also found that "that it will likely be able to certify Lead Plaintiff as Class Representative for the Settlement Class and appoint Lead Counsel as Class Counsel for the

25

Settlement Class, pursuant to Rule 23(g) of the Federal Rules of Civil Procedure." *Id.* ¶6.

The Settlement Class comprises "all persons and entities who purchased or otherwise acquired iAnthus securities between May 14, 2018 and July 10, 2020, both dates inclusive, pursuant to domestic transactions, and were allegedly damaged thereby," subject to certain exceptions for persons or entities related to Defendants and those that exclude themselves from the Settlement. Stipulation ¶1(oo).

There have been no changes to alter the propriety of class certification for settlement purposes since this ruling.  The Court should therefore certify the Settlement Class, with Lead Plaintiff as Class Representative, and appoint Lead Counsel as Class Counsel for the Settlement Class, for the reasons stated in Plaintiff's Memorandum of Law in Support of Unopposed Motion for Approval of Notice of Class Action Settlement. (Approval of Notice Brief, ECF No. 130).

As the Approval of Notice Brief explains, the Parties have stipulated to the certification of the Settlement Class for settlement purposes only (Stipulation ¶2), and the proposed Settlement Class satisfies all of the applicable requirements of Rules 23(a) and 23(b)(3).

### 1.      The Rule 23(a) Requirements Are Satisfied

**Numerosity:** Numerosity is satisfied given that millions of iAnthus securities traded during the Settlement Class Period and the United States over-the-counter ("OTC") marketplace was the largest market for those securities.  Approval of Notice Brief at 21.

**Commonality:** Commonality is satisfied for the same reason that it is easily met in most securities fraud cases.  All Settlement Class Members have been similarly injured by Defendants' common course of conduct through the material misrepresentation and omissions that they made to the investing public.  Approval of Notice Brief at 22.

**Typicality:** Lead Plaintiff's claims are typical of the Settlement Class because they are based on the same set of alleged misrepresentations and omissions that apply to the Settlement

26

Class as a whole.  Approval of Notice Brief at 22.

**Adequacy:** Lead Plaintiff is an adequate class representative because he has an "interest in vigorously pursuing the claims" here to recover as much as possible in damages for the Settlement Class in light of his significant losses.  Approval of Notice Brief at 22-23 (quoting *Patriot*, 828 F. App'x at 764).  In addition, there are no intra-class conflicts because all Settlement Class Members are similarly situated in that they all suffered losses as a result of Defendants' alleged misstatements and omissions and they all engaged in domestic transactions in iAnthus securities.  Approval of Notice Brief at 23.  In particular, the Notice and Claim Form set out specific criteria that Settlement Class Members must meet to show they engaged in domestic transactions under *Morrison*.  *Id.*  The Approval of Notice Brief explains why these factors satisfy Morrison under the governing case law, the Court's Motion to Dismiss Decision, and the specific way that iAnthus stock traded on the U.S. OTC market.  *Id.* at 23-27.

There is also no intra-class conflict for the independent reason that regardless of whether the Settlement criteria definitively constitute domestic transactions (which they do for the reasons described above), the existence of foreign transactions in the Settlement Class therefore not preclude certification for settlement purposes because they would not raise an intra-class conflict so severe as to be "the type of 'fundamental' conflict that renders the class uncertifiable." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009); Approval of Notice Brief at 27-28.  There is no "fundamental" conflict here because all Settlement Class Members and Lead Plaintiff are situated the same with respect to their transactions.  Approval of Notice Brief at 28-29.[14]

---

[14] In addition to supporting certification of the Settlement Class for settlement purposes, Lead Plaintiff's satisfaction of the typicality and adequacy requirements supporting appoint Lead Plaintiff as Class Representative of the Settlement Class.  *See Denney v. Deutsche Bank AG*, 443

### 2.    The Rule 23(b)(3) Requirements Are Satisfied

The Settlement Class also satisfies the predominance and superiority requirements of Rule 23(b)(3).

**Predominance:** The common questions of law and fact involving violations of the securities laws based on Defendants' common course of conduct directed at the entire Settlement Class predominate over any individualized questions that may exist. Approval of Notice Brief at 30. Moreover, any "manageability concerns" that would be relevant to the predominance inquiry in the litigation context "do not stand in the way of certifying a settlement class." *Id.* (quoting *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 242 (2d Cir. 2012)). This is because "the predominance requirement differs between trial and settlement" in that "with a settlement class, the manageability concerns posed by numerous individual questions [] disappear." Approval of Notice Brief at 30 (quoting *Petrobras II*, 317 F. Supp. 3d at 870).

**Superiority:** A class action is superior to other methods of litigation because, as with most securities class actions, "the alternatives are either no recourse for thousands of stockholders" or "a multiplicity and scattering of suits with the inefficient administration of litigation which follows in its wake." Approval of Notice Brief at 30-31. *In re MF Glob. Holdings Ltd. Inv. Litig.*, 310 F.R.D. 230, 239 (S.D.N.Y. 2015).

### 3.    The Court Should Appoint Lead Counsel as Counsel for the Settlement Class

The Court should appoint Lead Counsel Pomerantz as Class Counsel for the Settlement Class under Rule 23(g). Under this Rule, the Court considers: "(1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling

---

F.3d 253, 262 (2d Cir. 2006) (affirming "the district court's approval of the class representatives, conditional certification 'for settlement purposes only'").

class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class."  Fed. R. Civ. P. 23(g)(1)(A).

Pomerantz satisfies these criteria based on the substantial time, effort, and resources that it has devoted since it was appointed lead Counsel in July 2020 to vigorously prosecute this Action on behalf of Lead Plaintiff and the Settlement Class.  (*See supra* at 2-3, 7-9).

Moreover, Pomerantz is highly experienced and successful at handling securities class action litigation.  *See* Grunfeld Decl., Ex. 5 (Pomerantz firm resume); *Advanced Battery Techs.*, 298 F.R.D. at 181 ("Pomerantz LLP has extensive experience and a stellar reputation in the field of class action and securities litigation."); *Strougo v. Barclays PLC*, 312 F.R.D. 307, 328 (S.D.N.Y. 2016) (appointing Pomerantz as class counsel, noting "[t]he Pomerantz firm has litigated securities fraud cases under federal and state laws for seventy-five years").  The Court should therefore appoint Lead Counsel to serve as Class Counsel.

## III.  CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court approve the proposed Settlement as fair, reasonable, and adequate, approve the Plan of Allocation as fair, reasonable, and adequate, certify the Settlement Class for settlement purposes only, appoint Lead Plaintiff as the Settlement Class Representative, and appoint Lead Counsel as Class Counsel for the Settlement Class.  Proposed orders will be submitted with Plaintiff's reply papers, after the deadlines for objections and seeking exclusion have passed.

Dated: March 6, 2024

Respectfully submitted,

*/s/ Michael Grunfeld*

Jeremy A. Lieberman
Michael Grunfeld
Brandon M. Cordovi
**POMERANTZ LLP**

29

600 Third Avenue, Floor 20
New York, NY 10016
Phone: 212-661-1100
Fax: 917-463-1044
jalieberman@pomlaw.com
mgrunfeld@pomlaw.com
bcordovi@pomlaw.com

*Lead Counsel for Lead Plaintiff and the
Settlement Class*

**BRONSTEIN, GEWIRTZ & GROSSMAN,
LLC**

Peretz Bronstein
Eitan Kimelman
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
Fascimile: (212) 697-7296
peretz@bgandg.com
eitank@bgandg.com

*Additional Counsel for Lead Plaintiff*

30

**CERTIFICATE OF SERVICE**

I hereby certify that on March 6, 2024, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

By:     */s/ Michael Grunfeld*
Michael Grunfeld