**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IN RE iANTHUS CAPITAL HOLDINGS, INC. SECURITIES LITIGATION | No. 20-cv-03135-LAK<br>No. 20-cv-03513-LAK |
| THIS DOCUMENT RELATES TO:<br>Nos. 20-cv-03135 (Securities Class Action),<br>20-cv-03513 (Cedeno) |  |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN
AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES,
<u>AND COMPENSATORY AWARD TO LEAD PLAINTIFF</u>**

**TABLE OF CONTENTS**

I.  PRELIMINARY STATEMENT ................................................................................. 1

II.  ARGUMENT ........................................................................................................ 3

    A.  The Requested Attorneys' Fees Are Reasonable Under the Lodestar Method ............................................................................................... 4

    B.  The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-the-Fund Method ................................................................. 8

    C.  Factors Considered by Courts in the Second Circuit Confirm that the Requested Fee is Fair and Reasonable ......................................................... 9

        1.  Time and Labor Expended Support the Requested Fee .... 10

        2.  The Risks of Litigation Support the Requested Fee ......... 12

        3.  The Magnitude and Complexity of the Action Support the Requested Fee ................................................................... 16

        4.  The Quality of Representation Supports the Requested Fee ......................................................................................... 17

        5.  The Requested Fee in Relation to the Settlement Amount 19

        6.  Public Policy Considerations Support the Requested Fee 19

    D.  The Reaction of the Settlement Class to Date Supports the Requested Fee ......................................................................................................... 20

    E.  Lead Counsel's Expenses Are Reasonable and Were Necessarily Incurred to Achieve the Benefit Obtained ................................................. 21

    F.  The Requested Lead Plaintiff Award is Reasonable ................................ 22

III.  CONCLUSION ..................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anixter v. Home-Stake Prod. Co.*,
 77 F.3d 1215 (10th Cir. 1996) ........................................................................................15

*Asare v. Change Grp. of N.Y., Inc.*,
 2013 WL 6144764 (S.D.N.Y. Nov. 18, 2013)..........................................................................7

*Athale v. Sinotech Energy Ltd.*,
 2013 WL 11310686 (S.D.N.Y. Sept. 4, 2013)...................................................................7, 22

*Backman v. Polaroid Corp.*,
 910 F.2d 10 (1st Cir. 1990)...............................................................................................15

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
 472 U.S. 299 (1985).......................................................................................................3

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
 603 F.2d 263 (2d Cir. 1979)...............................................................................................16

*Boeing Co. v. Van Gemert*,
 444 U.S. 472 (1980)........................................................................................................3

*Burns v. Falconstor Software, Inc.*,
 2014 WL 12917621 (E.D.N.Y. Apr. 10, 2014) .................................................................7, 22

*City of Birmingham Ret. & Relief Sys. v. Credit Suisse Grp. AG*,
 2020 WL 7413926 (S.D.N.Y. Dec. 17, 2020) .................................................................13, 20

*City of Detroit v. Grinnell Corp.*,
 495 F.2d 448 (2d Cir. 1974),
 *abrogated on other grounds*, *Goldberger*, 209 F.3d...............................................................12

*City of Providence v. Aeropostale, Inc.*,
 2014 WL 1883494 (S.D.N.Y. May 9, 2014)................................................................6, 17, 20

*Cornwell v. Credit Suisse Grp.*,
 2011 WL 13263367 (S.D.N.Y. July 18, 2011) ........................................................................7

*Davis v. J.P. Morgan Chase & Co.*,
 827 F. Supp. 2d 172 (W.D.N.Y. 2011).................................................................................7

*Fishoff v. Coty Inc.*,
　2010 WL 305358 (S.D.N.Y. Jan. 25, 2010),
　*aff'd*, 634 F.3d 647 (2d Cir. 2011) ...............................................................................15

*Fogarazzo v. Lehman Bros.*,
　2011 WL 671745 (S.D.N.Y. Feb. 23, 2011)......................................................................8

*Goldberger v. Integrated Res., Inc.*,
　209 F.3d 43 (2d Cir. 2000).......................................................................... *passim*

*Gong v. Neptune Wellness Sols. Inc.*,
　2023 WL 6594352 (E.D.N.Y. July 18, 2023) ...................................................................9

*Great Neck Cap. Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers,*
　*L.L.P.*,
　212 F.R.D. 400 (E.D. Wis. 2002) ...................................................................................13

*Guevoura Fund Ltd. v. Sillerman*,
　2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ................................................................6, 7

*Hicks v. Morgan Stanley*,
　2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ................................................................3, 4

*Hubbard v. BankAtlantic Bancorp, Inc.*,
　688 F.3d 713 (11th Cir. 2012) .........................................................................................15

*In re 3D Sys. Sec. Litig.*,
　2024 WL 50909 (E.D.N.Y. Jan. 4, 2024) .........................................................................9

*In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*,
　2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006),
　*aff'd*, 272 F. App'x 9 (2d Cir. 2008).................................................................................18

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
　2006 WL 903236 (S.D.N.Y. Apr. 6, 2006).......................................................................16

*In re Bank of Am. Corp. Sec., Deriv., & ERISA Litig.*,
　772 F.3d 125 (2d Cir. 2014).............................................................................................24

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
　909 F. Supp. 2d 259 (S.D.N.Y. 2012)...........................................................................6, 14

*In re Bisys Sec. Litig.*,
　2007 WL 2049726 (S.D.N.Y. July 16, 2007) ....................................................................7

*In re Blech Sec. Litig.*,
　2000 WL 661680 (S.D.N.Y. May 19, 2000) ..................................................................6, 18

*In re China Sunergy Sec. Litig.*,
  2011 WL 1899715 (S.D.N.Y. May 13, 2011) ........................................................................21

*In re Colgate-Palmolive Co. ERISA Litig.*,
  36 F. Supp. 3d 344 (S.D.N.Y. 2014)......................................................................................7

*In re Comverse Tech., Inc. Sec. Litig.*,
  2010 WL 2653354 (E.D.N.Y. June 24, 2010) ...........................................................5, 12, 19

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
  80 F. Supp. 3d 838 (N.D. Ill. 2015) .....................................................................................12

*In re Doral Fin. Corp. Sec. Litig.*,
  No. 1:05-md-1706-JSR, ECF No. 107 (S.D.N.Y. July 17, 2007)............................................7

*In re Elan Sec. Litig.*,
  385 F. Supp. 2d 363 (S.D.N.Y. 2005).....................................................................................7

*In re Facebook, Inc., IPO Sec. & Deriv. Litig.*,
  343 F. Supp. 3d 394 (S.D.N.Y. 2018)...................................................................................18

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
  2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015)..........................................................................11

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  2010 WL 4537550 (S.D.N.Y. 2010)...............................................................12, 13, 20, 21

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
  279 F.R.D. 151 (S.D.N.Y. 2011) ......................................................................................8, 13

*In re Glob. Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) .........................................................................4, 5, 12, 22

*In re Hi-Crush Partners L.P. Sec. Litig.*,
  2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) .....................................................................4, 8

*In re iDreamSky Tech. Ltd. Sec. Litig.*,
  2018 WL 8950640 (S.D.N.Y. Apr. 6, 2018)............................................................................8

*In re Ikon Office Sols., Inc. Sec. Litig.*,
  194 F.R.D. 166 (E.D. Pa. 2000)...........................................................................................16

*In re Interpublic Sec. Litig.*,
  2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004) ..........................................................................7

*In re JDS Uniphase Corp. Securities Litigation*,
  2007 WL 4788556 (N.D. Cal. Nov. 27, 2007)......................................................................15

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
  2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ........................................................................23

*In re MetLife Demutualization Litig.*,
  689 F. Supp. 2d 297 (E.D.N.Y. 2010) ....................................................................................22

*In re PPDAI Grp. Inc. Sec. Litig.*,
  2022 WL 198491 (E.D.N.Y. Jan. 21, 2022) ...........................................................................22

*In re Patriot Nat'l, Inc. Sec. Litig.*,
  2019 WL 5882171 (S.D.N.Y. Nov. 6, 2019).............................................................................8

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  991 F. Supp. 2d 437 (E.D.N.Y. 2014) ......................................................................................9

*In re Petrobras Sec.*,
  862 F.3d 250 (2d Cir. 2017)....................................................................................................14

*In re Petrobras Sec. Litig.*,
  317 F. Supp. 3d 858 (S.D.N.Y. 2018), *aff'd*, 784 F. App'x 10 (2d Cir. 2019).......................23

*In re Qudian Inc. Sec. Litig.*,
  2021 WL 2328437 (S.D.N.Y. June 8, 2021) ...........................................................................24

*In re Signet Jewelers Ltd. Sec. Litig.*,
  2020 WL 4196468 (S.D.N.Y. July 21, 2020) ..........................................................................24

*In re Telik, Inc. Sec. Litig.*,
  576 F. Supp. 2d 570 (S.D.N.Y. 2008).......................................................................................5

*In re Veeco Instruments Inc. Sec. Litig.*,
  2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) .................................................................. *passim*

*In re WorldCom, Inc. Sec. Litig.*,
  388 F. Supp. 2d 319 (S.D.N.Y. 2005)......................................................................................21

*Kalnit v. Eichler*,
  99 F. Supp. 2d 327 (S.D.N.Y. 2000), *aff'd*, 264 F.3d 131 (2d Cir. 2001) ..............................15

*Karimi v. Deutsche Bank Aktiengesellschaft*,
  No. 22 Civ. 2854 (JSR), ECF No. 110 (S.D.N.Y. Feb. 26, 2023) ............................................5

*La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*,
  2009 WL 4730185 (D.N.J. Dec. 4, 2009)................................................................................16

*LeBlanc-Sternberg v. Fletcher*,
  143 F.3d 748 (2d Cir. 1998)......................................................................................................4

*Luciano v. Olsten Corp.*,
    109 F.3d 111 (2d Cir. 1997)...................................................................................5

*Maley v. Del Glob. Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002)..............................................3, 7, 17, 19

*McDaniel v. County of Schenectady*,
    595 F.3d 411 (2d Cir. 2010)..................................................................................4

*Missouri v. Agyei ex rel. Jenkins*,
    491 U.S. 274 (1989)..............................................................................................4

*Morrison v. National Australia Bank Ltd.*,
    561 U.S. 247 (2010).................................................................................... *passim*

*ODS Cap. LLC v. JA Solar Holdings Co.*,
    2023 WL 4527592 (S.D.N.Y. Jul. 13, 2023) ......................................................5

*Puddu v. 6D Glob. Techs., Inc.*,
    2021 WL 1910656 (S.D.N.Y. May 12, 2021) ..................................................6, 8

*Savoie v. Merchs. Bank*,
    166 F.3d 456 (2d Cir. 1999)..............................................................................5, 9

*Shapiro v. JPMorgan Chase & Co.*,
    2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ...................................................12

*Spann v. AOL Time Warner Inc.*,
    2005 WL 1330937 (S.D.N.Y. June 7, 2005) .....................................................6, 8

*Springer v. Code Rebel Corp.*,
    2018 WL 1773137 (S.D.N.Y. Apr. 10, 2018)......................................................8

*Stefaniak v. HSBC Bank USA, N.A.*,
    2008 WL 7630102 (W.D.N.Y. June 28, 2008) .....................................................9

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
    258 F. Supp. 2d 254 (S.D.N.Y. 2003)..................................................................8

*Taft v. Ackermans*,
    2007 WL 414493 (S.D.N.Y. Jan. 31, 2007) ......................................................17

*TAL Educ. Grp.*, 2021 WL 5578665, at *12................................................................16

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
    2004 WL 1087261 (S.D.N.Y. May 14, 2004) ...................................................12

*Tellabs, Inc. v. Makor Issues & Rights., Ltd.*,
    551 U.S. 308 (2007)........................................................................................3, 19

*Too v. Rockwell Med., Inc.*,
    2020 WL 1026410 (E.D.N.Y. Feb. 26, 2020)...........................................................................5

*Vaccaro v. New Source Energy Partners L.P.*,
    2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017) ..........................................................................8

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)....................................................................................................7, 9

*Woburn Ret. Sys. v. Salix Pharms., Ltd.*,
    2017 WL 3579892 (S.D.N.Y. Aug. 18, 2017).........................................................................7

**Statutes**

15 U.S.C. §78j(b)...............................................................................................................10, 16

15 U.S.C. §78t(a) .....................................................................................................................10

15 U.S.C. § 78u-4 ................................................................................................................1, 23

Private Securities Litigation Reform Act of 1995 ................................................................ *passim*

**Rules**

Fed. R. Civ. P. 23....................................................................................................................14

Court-appointed Lead Counsel Pomerantz LLP ("Pomerantz," or "Lead Counsel"), on behalf of all Plaintiffs' Counsel,[1] respectfully submit this memorandum of law in support of their request for attorneys' fees of $965,700 (plus accrued interest), reimbursement of $116,615.44 in out-of-pocket expenses advanced by counsel (plus accrued interest), and $15,000 to the Court-appointed Lead Plaintiff Jose Antonio Silva ("Lead Plaintiff" or "Plaintiff"), as authorized by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(4).[2]

## I.    PRELIMINARY STATEMENT

The proposed Settlement, if approved by the Court, will resolve this Action in its entirety in exchange for a $2.9 million cash payment pursuant to the terms of the Stipulation. The Settlement brings to a close, with a very favorable result, nearly four years of litigation, including vigorous and complex motion practice and robust arm's-length negotiations between highly experienced counsel. At the time of the Settlement, Plaintiff had successfully opposed, in part, Defendants' motion to dismiss the Second Amended Complaint. However, there was no guarantee of recovery given the challenges Plaintiff would have faced if the litigation continued. For instance, Defendants inevitably would have attempted to limit the scope of the case based on the Court's dismissal of certain claims related to Defendants' alleged conflicts of interest. Defendants also likely would have raised vigorous challenges to class certification based the criteria the Court set forth in its Motion to Dismiss decision for satisfying *Morrison v. National Australia Bank Ltd.*,

---

[1] Pomerantz was assisted in its representation of Plaintiff and the Settlement Class by Bronstein, Gewirtz & Grossman, LLC ("BGG"). *See* Grunfeld Decl. ¶¶1 and 28. Pomerantz and BGG are referred to herein as "Plaintiff's Counsel."

[2] Unless otherwise noted, capitalized terms have the meanings set forth in the Stipulation and Agreement of Settlement dated June 16, 2023 ("Stipulation," ECF No 131-1, or in the concurrently filed Declaration of Michael Grunfeld in Support of: (I) Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Grunfeld Declaration" or "Grunfeld Decl.").

561 U.S. 247 (2010). Even if class certification was granted, Plaintiff still was faced with summary judgment motions, motions *in limine*, and establishing both Defendants' liability and damages at trial.

In the face of these hurdles—as well as the fully contingent nature of the case—Lead Counsel devoted substantial resources to prosecuting this Action against highly skilled opposing counsel. Among the other work detailed in the Grunfeld Declaration, Lead Counsel: (i) conducted a comprehensive investigation into Defendants' allegedly wrongful acts; (ii) drafted and filed an 88-page Amended Complaint based on their extensive investigation (ECF No. 48); (iii) opposed Defendants' motions to dismiss the Amended Complaint (ECF Nos. 73-74); (iv) conducted an intensive investigation, pursuant to the Court's order dismissing the Amended Complaint, to show that Lead Plaintiff engaged in domestic transactions under *Morrison*; (v) successfully moved for leave to amend (ECF Nos. 82-84, 90); (vi) drafted and filed a 95-page Second Amended Complaint addressing the issues that the Court raised in its dismissal of the Amended Complaint (ECF No. 91); (vii) successfully opposed, in part, Defendants' motions to dismiss the Second Amended Complaint (ECF Nos. 93-103, 108-109, 112); (vii) pursued third-party discovery requests; and (ix) prepared for the next steps in the litigation. Lead Counsel also engaged in extensive mediation efforts, overseen by Jed D. Melnick of JAMS, which included the preparation of mediation briefs, a full-day mediation session, and subsequent negotiations over the terms of the Settlement and the Stipulation. *See generally* Grunfeld Decl. at ¶¶14-27, 77.

Lead Counsel's requested fee is particularly deserving here because it represents a ***negative*** lodestar "multiplier" of approximately 0.90. In other words, Lead Counsel's lodestar is larger than the amount of fees requested. As demonstrated below, the fee request is well within the range of attorneys' fees typically awarded in securities class action settlements of this size in the Second

2

Circuit. The Court should also approve the requests for payment of Litigation Expenses in the amount of $116,615.44, and reimbursement of $15,000 to Lead Plaintiff for the time and resources he dedicated to diligently representing the Settlement Class because these requests are well supported by both case law and the facts of this case.

## II.    ARGUMENT

The Supreme Court and the Second Circuit have long recognized that attorneys whose efforts create a "common fund" are entitled to a reasonable attorneys' fee from that fund. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000).[3]  Awarding reasonable attorneys' fees from a common fund serves an important policy goal: it encourages "skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons," and thus discourages "future misconduct of a similar nature." *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at *2 (S.D.N.Y. Nov. 7, 2007); *see also Hicks v. Morgan Stanley*, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005).

The common fund doctrine is particularly applicable to securities class actions that result in a monetary settlement, where the applicant's efforts thus "confer a 'substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread costs proportionately among them.'" *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (quoting *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 393-94 (1970)). The Supreme Court has emphasized that private securities actions are "an essential supplement to criminal prosecutions and [SEC] civil enforcement actions." *Tellabs, Inc. v. Makor Issues & Rights., Ltd.*, 551 U.S. 308, 313 (2007); *accord Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (private securities

---

[3] Unless otherwise noted, all emphasis is added and internal citations and quotations are omitted.

3

actions provide "a most effective weapon in the enforcement of the securities laws and are a necessary supplement to [SEC] action"). Compensating counsel for bringing these actions is important because "[s]uch actions could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class." *Hicks*, 2005 WL 2757792, at *9 .

In the Second Circuit, courts "may award attorneys' fees in common fund cases under either the 'lodestar' method or the 'percentage of the fund' method." *McDaniel v. County of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010). "[W]hether calculated pursuant to the lodestar or the percentage method, the fees awarded in common fund cases may not exceed what is 'reasonable' under the circumstances." *Goldberger*, 209 F.3d at 47. Both methods for calculating attorneys' fees support Lead Counsel's requested fee award of $965,700.

### A.      The Requested Attorneys' Fees Are Reasonable Under the Lodestar Method

The fee request here is supported by Lead Counsel's lodestar. The "lodestar" is calculated by multiplying the number of hours expended on the litigation by each particular attorney or paralegal, by their current reasonable and customary hourly rate, and totaling the amounts for all time-keepers.[4]

Lead Counsel's fee request here is particularly supported because "[u]nder the lodestar method of fee computation, a multiplier is typically applied to the lodestar," but Lead Counsel do not request that any multiplier be applied to their fee request. *In re Glob. Crossing Sec. & ERISA*

---

[4] "[T]he use of current rates to calculate the lodestar figure has been endorsed repeatedly by the Supreme Court, the Second Circuit and district courts within the Second Circuit as a means of accounting for the delay in payment inherent in class actions and for inflation." *In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at *15 (S.D.N.Y. Dec. 19, 2014); *see also Missouri v. Agyei ex rel. Jenkins*, 491 U.S. 274, 283-84 (1989); *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998) ("[C]urrent rates, rather than historical rates, should be applied in order to compensate for the delay in payment.").

*Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004). "The multiplier represents the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors." *Id.* (citing *Goldberger*, 209 F.3d at 47); *Savoie v. Merchs. Bank*, 166 F.3d 456, 460 (2d Cir. 1999). Thus, "[w]here, as here, counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar." *In re Comverse Tech., Inc. Sec. Litig.*, 2010 WL 2653354, at *5 (E.D.N.Y. June 24, 2010).

Here, Lead Counsel (including attorneys and paralegals) collectively devoted a total of 1,320.74 hours to the prosecution of this Action, resulting in a lodestar of $1,072,024.25. Grunfeld Decl. ¶80. Lead Counsel's lodestar is based on counsel's current hourly rates, which are comparable to those in the legal community for similar services by attorneys of reasonably comparable skill, experience, and reputation. *See Id.* ¶79; Ex. 4 (chart of rates charged by peer plaintiff and defense counsel in complex litigation).[5]  Courts in this District and Circuit have approved requests for attorneys' fees based on the same or similar rates as those submitted here. *See, e.g.*, *ODS Cap. LLC v. JA Solar Holdings Co.*, 2023 WL 4527592 (S.D.N.Y. Jul. 13, 2023); *Karimi v. Deutsche Bank Aktiengesellschaft*, No. 22 Civ. 2854 (JSR), ECF No. 110 (S.D.N.Y. Feb. 26, 2023); *Too v. Rockwell Med., Inc.*, 2020 WL 1026410 (E.D.N.Y. Feb. 26, 2020).

Additionally, "[p]erhaps the best indicator of the market rate in the New York area for plaintiffs' counsel in securities class actions is to examine the rates charged by New York firms that *defend* class actions on a regular basis." *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 589 (S.D.N.Y. 2008); *Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997) ("The 'lodestar' figure should be in line with those rates prevailing in the community for similar services by lawyers of

---

[5] Lead Counsel's rates for attorneys here range from $975 to $1,325 for partners and $510 to $715 for other attorneys.

reasonably comparable skill, experience, and reputation."). Lead Counsel submits that its rates are comparable to, or less than, peer defense-side law firms litigating matters of similar magnitude. *See* Grunfeld Decl. Ex. 4.

The requested fee of $965,700 represents a ***negative*** multiplier of 0.90 of the total lodestar of Lead Counsel. In other words, Lead Counsel are requesting fees that are less than lodestar resulting from the total amount of work that they devoted to this matter. Courts in this Circuit routinely recognize that negative lodestar multipliers, falling below one, provide "a strong indication of the reasonableness of the [requested] fee." *See In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 271 (S.D.N.Y. 2012)*; see also  City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *13 (S.D.N.Y. May 9, 2014) (finding a negative multiplier is "well below the parameters used throughout district courts in the Second Circuit" and affords additional evidence that the requested fee is reasonable), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015); *Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at *18 (S.D.N.Y. Dec. 18, 2019) (holding lodestar approach "clearly demonstrates" that a fee request is reasonable where the lodestar multiplier is negative, noting that courts "repeatedly recognize" the reasonableness of a fee request is reinforced by a negative lodestar multiplier); *In re Blech Sec. Litig.*, 2000 WL 661680, at *5 (S.D.N.Y. May 19, 2000) (finding that a percentage fee request "is reinforced by evidence that the percentage fee would represent a *negative* multiplier of the lodestar"); *Puddu v. 6D Glob. Techs., Inc.*, 2021 WL 1910656, at *6 (S.D.N.Y. May 12, 2021) (awarding $133,333.33 fee of an approximate $400,000 settlement where lodestar multiplier was negative); *Spann v. AOL Time Warner Inc.*, 2005 WL 1330937, at *13 (S.D.N.Y. June 7, 2005) (awarding fees of 966,666.66 of $2.9 million settlement where lodestar exceeded the amount of fees requested by several thousand dollars).

6

Further, in securities class actions and other complex litigation, courts in this Circuit, including this District, commonly award lodestar multipliers that are significantly higher than the one presented here. *See, e.g.*, *Maley*, 186 F. Supp. 2d at 369 (awarding $3,832,950.00 fee of approximate $11.5 million settlement equal to a 4.65 multiplier, which was "well within the range awarded by courts in this Circuit and courts throughout the country"); *In re Doral Fin. Corp. Sec. Litig.*, No. 1:05-md-1706-JSR, ECF No. 107 (S.D.N.Y. July 17, 2007) (awarding $19,672,500 fee of $129 million settlement representing a multiplier of 10.26); *In re Bisys Sec. Litig.*, 2007 WL 2049726, at *3 (S.D.N.Y. July 16, 2007) (awarding $19,762,500 fee of $65,870,000 settlement representing a 2.99 multiplier and finding that the multiplier "falls well within the parameters set in this district and elsewhere").[6]

Moreover, additional work will be required of Lead Counsel on an ongoing basis, including: correspondence with Settlement Class Members; preparation for, and participation in, the final approval hearing; supervising the claims administration process being conducted by the Claims Administrator; and supervising the distribution of the Net Settlement Fund to Settlement

---

[6] *See also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 123 (2d Cir. 2005) (upholding multiplier of 3.5 as reasonable on appeal); *Burns v. Falconstor Software, Inc.*, 2014 WL 12917621, at *10 (E.D.N.Y. Apr. 10, 2014) (awarding multiplier of 4.75); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 185 (W.D.N.Y. 2011) (awarding fee representing a multiplier of 5.3, which was "not atypical" in similar cases); *In re Elan Sec. Litig.*, 385 F. Supp. 2d 363, 376 (S.D.N.Y. 2005) (awarding multiplier of 3.47 in light of an early settlement); *Athale v. Sinotech Energy Ltd.*, 2013 WL 11310686, at *8 (S.D.N.Y. Sept. 4, 2013) (stating that courts routinely award lodestar multipliers of "between four and five"); *Guevoura Fund*, 2019 WL 6889901, at *18 ("[M]ultipliers of between three and four times…have been routinely awarded in this Circuit."); *In re Interpublic Sec. Litig.*, 2004 WL 2397190, at *12 (S.D.N.Y. Oct. 26, 2004) ("In recent years multipliers of between 3 and 4.5 have been common in federal securities cases."); *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 353 (S.D.N.Y. 2014) (awarding fee representing a multiplier of 5.2, which was "large, but not unreasonable"); *Asare v. Change Grp. of N.Y., Inc.*, 2013 WL 6144764, at *19 (S.D.N.Y. Nov. 18, 2013) ("Typically, courts use multipliers of 2 to 6 times the lodestar."); *Cornwell v. Credit Suisse Grp.*, 2011 WL 13263367, at *2 (S.D.N.Y. July 18, 2011) (awarding fee representing a 4.7 multiplier); *Woburn Ret. Sys. v. Salix Pharms., Ltd.*, 2017 WL 3579892, at *6 (S.D.N.Y. Aug. 18, 2017) (awarding fee representing a 3.14 multiplier).

7

Class Members who have submitted valid Claim Forms. However, Lead Counsel will not seek payment for this additional work.

For all these reasons, the lodestar method strongly supports the reasonableness of the requested fee.

### B.    The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-the-Fund Method

Lead Counsel's requested fee is also fair and reasonable as a percentage of the Settlement Fund. The Second Circuit and courts in this District regularly award attorneys' fees that are one-third of the settlement amount in class actions of similar sizes as this one. *See, e.g.*, *Vaccaro v. New Source Energy Partners L.P.*, 2017 WL 6398636, at \*8 (S.D.N.Y. Dec. 14, 2017) (awarding one-third of $2,850,000 settlement); *In re iDreamSky Tech. Ltd. Sec. Litig.*, 2018 WL 8950640, at \*4 (S.D.N.Y. Apr. 6, 2018) (awarding 33% of $4.15 million settlement after decision on motion to dismiss but prior to formal discovery); *Springer v. Code Rebel Corp.*, 2018 WL 1773137, at \*5 (S.D.N.Y. Apr. 10, 2018) (awarding one-third fee of a $1 million settlement and finding such an award is "within the range of fee awards typically awarded"); *Puddu*, 2021 WL 1910656, at \*6 (awarding one-third fee of an approximate $400,000 settlement); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 164 (S.D.N.Y. 2011) (approving 33% fee); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) (awarding one-third of $1.5 million settlement and collecting cases); *Fogarazzo v. Lehman Bros.*, 2011 WL 671745, at \*3 (S.D.N.Y. Feb. 23, 2011) (awarding one-third of $6.75 million settlement); *In re Patriot Nat'l, Inc. Sec. Litig.*, 2019 WL 5882171, at \*1 (S.D.N.Y. Nov. 6, 2019) (awarding 33% of $6.5 million settlement entered before the filing of a motion to dismiss); *In re Hi-Crush Partners L.P.*, 2014 WL 7323417, at \*18 (awarding 33.3% fee request of $3.8 million settlement); *Spann*, 2005 WL

1330937, at *8 (awarding 33.3% of $2.9 million settlement).[7]

One of the merits of awarding fees on a percentage basis is that it does not penalize attorneys for achieving a prompt resolution of a case, where, as here, Lead Counsel has developed sufficient information concerning the strengths and weaknesses of the case necessary to make an informed decision about the value of the claims. *See Wal-Mart,* 396 F.3d at 121 (explaining the percentage method "provides a powerful incentive for the efficient prosecution and early resolution of litigation"); *Savoie*, 166 F.3d at 460-61 (the percentage method "removes disincentives to prompt settlement").

In sum, Lead Counsel's requested fee award is well within the range of what courts in this Circuit regularly award in class actions such as this one, whether calculated in relation to Lead Counsel's lodestar or as a percentage of the fund. Moreover, as discussed below, each factor established by the Second Circuit in *Goldberger* supports a finding that the requested fee is reasonable.

### C.    Factors Considered by Courts in the Second Circuit Confirm that the Requested Fee is Fair and Reasonable

The Second Circuit has set forth the following criteria that courts should consider when reviewing a request for attorneys' fees in a common fund case:

---

[7] The same is true in other courts. *See, e.g.*, *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 445 (E.D.N.Y. 2014) ("[I]t is very common to see 33% contingency fees in cases with funds of less than $10 million, and 30% contingency fees in cases with funds between $10 million and $50 million."); *In re 3D Sys. Sec. Litig.*, 2024 WL 50909, at *15 (E.D.N.Y. Jan. 4, 2024) (awarding 33% of $4 million settlement); *Gong v. Neptune Wellness Sols. Inc.*, 2023 WL 6594352, at *2 (E.D.N.Y. July 18, 2023) (awarding 33% of $4.25 million settlement), *R & R adopted*, 2023 WL 5793557 (E.D.N.Y. Sept. 7, 2023); *Stefaniak v. HSBC Bank USA, N.A.*, 2008 WL 7630102, at *3 (W.D.N.Y. June 28, 2008) (awarding 33% of fund, finding it "typical in class action settlements in the Second Circuit").

(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

*Goldberger*, 209 F.3d at 50. Consideration of these factors, together with the analyses above, demonstrate that the requested fee is reasonable.

### 1.    Time and Labor Expended Support the Requested Fee

The time and effort expended by Lead Counsel in prosecuting the Action and achieving the Settlement support the requested fee. Among other things, Lead Counsel:

- drafted the initial complaint in the Action and moved for the appointment of Lead Plaintiff and Lead Counsel;

- conducted an extensive investigation of the claims asserted, which included, among other things: (a) reviewing and analyzing (i) iAnthus's filings with the Canadian Securities Exchange ("CSE"), (ii) research reports prepared by securities and financial analysts, and news and industry articles, concerning iAnthus, (iii) iAnthus's investor call transcripts, and (iv) other publicly available material related to iAnthus and Gotham Green Partners; (b) retaining and working with private investigators, who interviewed numerous former Company employees; and (c) working with a damages and loss causation expert to analyze iAnthus's stock price movements;

- utilized the foregoing comprehensive investigation and additional research to draft and file the comprehensive 88-page Amended Complaint (ECF No. 48), which asserted claims against all Defendants under Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and against the Individual Defendants under Section 20(a) of the Exchange Act;

- researched and drafted the opposition to Defendants' motions to dismiss the Amended Complaint (ECF Nos. 73-74);

- conducted an intensive investigation, pursuant to the Court's order dismissing the Amended Complaint, to show that Lead Plaintiff engaged in domestic transactions under *Morrison*, 561 U.S. at 247;

- successfully moved for leave to amend (ECF Nos. 82-84, 90);

- drafted and filed a 95-page Second Amended Complaint addressing the issues that the Court raised concerning *Morrison* (ECF No. 91);

- successfully opposed, in part, Defendants' motions to dismiss the Second Amended Complaint (ECF Nos. 93-103, 108-109, 112);

- pursued and obtained third-party discovery requests (*see* ECF No. 119; Grunfeld Declaration ¶21);

10

- began preparing to move for class certification and for the discovery process;

- engaged in a mediation process overseen by a highly experienced third-party mediator, Jed D. Melnick, Esq., which involved an exchange of written submissions concerning the facts of the case, liability and damages, a full-day formal mediation session, and extensive consultation with Plaintiff's expert on damages, loss causation, and class certification;

- negotiated a detailed confidential settlement term sheet with Defendants' counsel, which was executed on January 30, 2023;

- drafted and then negotiated the terms of the Stipulation (including the exhibits thereto) and Supplemental Agreement with Defendants' Counsel;

- worked with a damages expert to craft a plan of allocation that treats Plaintiff and all other members of the proposed Settlement Class fairly;

- drafted the Motion for Approval of Notice of Class Action Settlement and supporting papers (ECF Nos. 129-131);

- oversaw the implementation of the notice process; and

- drafted this Motion for Final Approval and supporting papers.

Grunfeld Decl. ¶¶14-27, 77.

Moreover, the legal work related to the Settlement will not end with the Court's approval of the proposed Settlement. Additional hours and resources will be expended assisting Settlement Class Members with their Claim Forms, responding to Settlement Class Members' inquiries, shepherding the claims process to conclusion, and coordinating the distribution to Settlement Class Members. No additional compensation will be sought for this work, other than reimbursement of any additional out of pocket expenses incurred in fulfilling these tasks. *See In re Facebook, Inc. IPO Sec. & Deriv. Litig.*, 2015 WL 6971424, at *10 (S.D.N.Y. Nov. 9, 2015) ("Considering that the work in this matter is not yet concluded for Plaintiffs' counsel who will necessarily need to oversee the claims process, respond to inquiries, and assist Class Members in submitting their Proof of Claims, the time and labor expended by counsel in this matter support a conclusion that a 33% fee award in this matter is reasonable.").

Accordingly, this factor supports the requested fee.

11

### 2.    The Risks of Litigation Support the Requested Fee

"[T]he risk of success [is] perhaps the foremost factor to be considered in determining" a reasonable award of attorneys' fees. *Goldberger*, 209 F.3d at 54; *see also Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at \*21 (S.D.N.Y. Mar. 24, 2014) ("The Second Circuit long ago recognized that courts should consider the risks associated with lawyers undertaking a case on a contingent fee basis."); *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 80 F. Supp. 3d 838, 847-48 (N.D. Ill. 2015) ("When determining the reasonableness of a fee request, courts put a fair amount of emphasis on the severity of the risk (read: financial risk) that class counsel assumed in undertaking the lawsuit."). This is because "[n]o one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974), *abrogated on other grounds*, *Goldberger*, 209 F.3d at 49-50. In applying this factor, "'[l]itigation risk must be measured as of when the case is filed,' rather than with the hindsight benefit of subsequent events." *Glob. Crossing*, 225 F.R.D. at 467. The many severe risks that Lead Counsel faced in prosecuting this suit more than justify the requested fee. *See* Grunfeld Decl. ¶¶28-48.

Numerous courts have recognized that "class actions confront even more substantial risks than other forms of litigation[,]"*Comverse*, 2010 WL 2653354, at \*5, and that "[s]ecurities class actions such as this are notably difficult and notoriously uncertain." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at \*27 (S.D.N.Y. 2010).[8]  This case was no exception. From the

---

[8] *See also Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, 2004 WL 1087261, at \*3 (S.D.N.Y. May 14, 2004) ("Little about litigation is risk-free, and class actions confront even more substantial

outset, Lead Counsel understood that they were embarking on a complex, expensive, and potentially lengthy litigation with no guarantee of ever being compensated for the substantial investment of time and money the case would require. In undertaking that responsibility, "plaintiffs' counsel were obligated to assure that sufficient attorney and para-professional resources were dedicated to the prosecution of the Action; counsel also faced the responsibility of advancing litigation and overhead expenses on this case for [more than two] years." *Giant Interactive*, 279 F.R.D. at 164. Indeed, "[u]nlike counsel for Defendants, who are paid substantial hourly rates and reimbursed for their expenses on a regular basis, [Plaintiffs' Counsel] have not been compensated for any time or expenses since this case began more than [two] years ago." *Flag Telecom*, 2010 WL 4537550, at *27. Lead Counsel's commitment was substantial (*i.e.*, $1,072,024.25 in lodestar and $116,615.44 in expenses), and had they not obtained a recovery, it could have all been lost. Grunfeld Decl. Ex. 3 (lodestar), ¶98 (expenses). To put it bluntly, complex litigation is not risk free, and this case was not guaranteed to succeed.[9]

Plaintiff's claims in this case were accompanied by substantial risks unique to this case, which support the requested fee even more than in the ordinary case. *See City of Birmingham Ret. & Relief Sys. v. Credit Suisse Grp. AG*, 2020 WL 7413926, at *3 (S.D.N.Y. Dec. 17, 2020)

---

risks than other forms of litigation."); *Great Neck Cap. Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 409 (E.D. Wis. 2002) ("Shareholder class actions are difficult and unpredictable, and skepticism about optimistic forecasts of recovery is warranted.").

[9] For a further discussion of the litigation, and thus contingency fee risks inherent in this case, the Court is respectfully referred to the concurrently filed Final Approval Memorandum and Grunfeld Declaration. *See* Final Approval Memorandum § II(B)(3); Grunfeld Decl. ¶¶28-48.

("[G]reater risks undertaken by counsel who accept a case on a contingent fee basis support a higher settlement percentage.").

For example, the Court initially dismissed Plaintiff's claims in their entirety under *Morrison*, 561 U.S. at 247. (ECF No. 81). It was only through Lead Counsel's and Plaintiff's dogged persistence and further investigation into the nature of how iAnthus stock trades on the over-the-counter market that Lead Counsel was able to revive Plaintiff's claims. (ECF No. 112).

Moreover, if the litigation were to continue, Defendants were sure to challenge class certification and such disputes would likely "devolve into yet another battle of the experts." *Bear Stearns*, 909 F. Supp. 2d at 268. For example, the Settlement Class would face the risk, in the litigation context, that Defendants would argue the criteria for satisfying *Morrison* that the Court described in its Motion to Dismiss Decision would pose manageability issues that would preclude a finding of predominance under Rule 23(b)(3). ECF No. 112 at 19-21. Lead Plaintiff is confident this would not pose a hurdle to class certification for the independent reasons that (1) there are clear class-wide criteria for establishing that transactions in iAnthus stock are domestic transactions and (2) "any variation across plaintiffs is, on balance, insufficient to defeat predominance" in the context of the claims as whole. *In re Petrobras Sec.*, 862 F.3d 250, 274 n.27 (2d Cir. 2017). Defendants, however, would likely argue otherwise.

In addition, while Plaintiff believes he effectively demonstrated that Defendants made materially false and misleading statements in violation of the federal securities laws, Defendants would inevitably contest at summary judgment and trial whether their statements are inactionable because they are too general or not objectively verifiable, Defendants publicly warned of the relevant risks, or that the truth was on the market. Further, while the Court sustained core parts of Plaintiff's claims at the motion to dismiss stage, it granted Defendants' motion as to the claims

14

related to Defendants' alleged conflicts of interest. ECF No. 112 at 42. Defendants would be sure to raise this in an effort to limit the scope of the case going forward.

Defendants also argued at the motion to dismiss stage that their allegedly false and misleading statements were not made with the requisite state of mind (*i.e.*, scienter) to support Plaintiff's securities fraud claims. Grunfeld Decl. ¶31. While Plaintiff prevailed on this point on Defendants' motions to dismiss, had the litigation continued, there is simply no guarantee that the trier of fact would have adopted Plaintiff's view of the case. Indeed, scienter is commonly regarded to be the most difficult element to prove in a securities fraud claim. *See, e.g.*, *Fishoff v. Coty Inc.*, 2010 WL 305358, at *2 (S.D.N.Y. Jan. 25, 2010) ("[T]he element of scienter is often the most difficult and controversial aspect of a securities fraud claim."), *aff'd*, 634 F.3d 647 (2d Cir. 2011); *Kalnit v. Eichler*, 99 F. Supp. 2d 327, 345 (S.D.N.Y. 2000) (same), *aff'd*, 264 F.3d 131 (2d Cir. 2001).

Further, despite a chance of later success against Defendants' near-certain opposition to class certification and motions for summary judgment, substantial risks would still persist, given that many securities cases have been lost at trial, on post-trial motions, or on appeal. For example, in *In re JDS Uniphase Corp. Securities Litigation*, the jury issued a verdict in favor of defendants after five years of litigation. 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007). In *Hubbard v. BankAtlantic Bancorp, Inc.*, the jury issued a verdict on liability in favor of plaintiffs, but the Eleventh Circuit affirmed judgment as a matter of law against the plaintiffs for lack of proof of loss causation. 688 F.3d 713 (11th Cir. 2012). In *Backman v. Polaroid Corp.*, the class won a $38 million jury verdict, and a motion for judgment notwithstanding the verdict was denied; however, on appeal, the judgment was reversed and the case dismissed, inflicting a total loss after ten years of active litigation. 910 F.2d 10 (1st Cir. 1990); *see also Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning

plaintiffs' verdict obtained after two decades of litigation); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) (reversing $87 million judgment after trial).

In short, the contingency fee risk in this case was high and, consequently, this factor militates in favor of the requested fee.

### 3. The Magnitude and Complexity of the Action Support the Requested Fee

Courts have repeatedly recognized the "notorious complexity" of securities fraud class actions like this case. *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 2006 WL 903236, at *8 (S.D.N.Y. Apr. 6, 2006) ("*AOL*"); *Lea v. TAL Educ. Grp.*, 2021 WL 5578665, at *9 (S.D.N.Y. Nov. 30, 2021) ("Class action suits have a well-deserved reputation as being most complex, and securities class actions are notably difficult and notoriously uncertain to litigate."); *La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, 2009 WL 4730185, at *8 (D.N.J. Dec. 4, 2009) ("[S]ecurities class actions are inherently complex"). Moreover, "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA," and other changes in the law. *In re Ikon Office Sols., Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000); *see also AOL*, 2006 WL 903236, at *9 ("[T]he legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages.").

The magnitude and complexity of this Action in particular is unquestionable. This was a hard-fought, expensive, multi-year litigation, with millions of dollars of damages at stake, and it required considerable skill and resources to litigate. Indeed, Plaintiff faced two rounds of motion to dismiss briefing, each involving multiple motions to dismiss, that spanned approximately 149 pages total and covered complicated issues spanning the domestic nature of Plaintiff's transactions under *Morrison*, *forum non conveniens* arguments, and arguments related to all elements of Plaintiff's claims under Section 10(b) of the Exchange Act, including falsity, materiality, loss causation,

reliance, and scienter, among other arguments that Defendants made in their multiple motions to dismiss. Grunfeld Decl. ¶85. Consequently, the magnitude and complexity of the litigation here support the requested fee. *See City of Providence*, 2014 WL 1883494, at *16 ("[T]he complex and multifaceted subject matter involved in a securities class action such as this supports the fee request.").

### 4.    The Quality of Representation Supports the Requested Fee

"To determine the 'quality of the representation,' courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Taft v. Ackermans*, 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007); *see also Veeco*, 2007 WL 4115808, at *7. Both factors support the conclusion that the requested fee award in this case is reasonable.

The proposed Settlement is an excellent result in light of the significant risks of continued litigation. Plaintiff's damages expert estimates that if Plaintiffs fully prevailed at summary judgment and trial, the estimate of potential damages, after accounting for the Court's Motion to Dismiss Decision and using the expert's standard damages methodology in securities class actions, would be approximately $17.5 million. Grunfeld Decl. ¶45. Thus, the $2.9 million Settlement represents a recovery of ***approximately 16.6%***, well above the median recovery of 1.8% of estimated damages in securities class actions settled in 2023. *See Id.* at ¶46 and Ex. 1 (Flores and Starykh at 26 (Fig. 22)).

Moreover, weighing that $17.5 million recovery "necessarily assumes Plaintiffs' success on both liability and damages covering the full Class Period alleged in the Complaint," after accounting for the Court's Motion to Dismiss Decision, "as well as the ability of Defendants to pay the judgment." *Maley*, 186 F. Supp. 2d at 365. This case has been pending since 2020, and could be expected to last several more years had the Settlement not been reached. "While additional years of litigation might well have resulted in a higher settlement or verdict at trial,

17

continued litigation could also have reduced the amount of insurance coverage available and not necessarily resulted in a greater recovery." *In re Blech Sec. Litig.*, 2000 WL 661680, at \*5 (S.D.N.Y. May 19, 2000); *see also In re Facebook, Inc., IPO Sec. & Deriv. Litig.*, 343 F. Supp. 3d 394, 414 (S.D.N.Y. 2018) ("Because Plaintiffs face serious challenges to establishing liability, consideration of Plaintiffs' best possible recovery must be accompanied by the risk of non-recovery.").

Additionally, the quality of Lead Counsel and Plaintiff's Counsel's efforts and commitment to providing the Settlement Class with the best possible representation, together with their substantial experience in securities class actions, provided leverage necessary to negotiate the Settlement. *See* Grunfeld Decl. ¶91; *see also id.* Ex. 5 (Pomerantz firm resume) Ex. 6 (BGG firm resume). Indeed, "[n]ot only did Plaintiffs' Counsel's skill and expertise contribute to the favorable settlement for the class, it contributed to the overall efficiency of the case." *Veeco*, 2007 WL 4115808, at \*7.

Finally, courts have recognized that the quality of the opposition faced by Lead Counsel should be taken into consideration in assessing the quality of the counsel's performance. *See, e.g.*, *Veeco*, 2007 WL 4115808, at \*7 (fee award supported by fact that defendants were represented by "one of the country's largest law firms"); *In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*, 2006 WL 3378705, at \*3 (S.D.N.Y. Nov. 16, 2006) ("The fact that the settlements were obtained from defendants represented by formidable opposing counsel from some of the best defense firms in the country also evidences the high quality of lead counsels' work."), *aff'd*, 272 F. App'x 9 (2d Cir. 2008). Here, Defendants were represented by Levine Lee LLP, Reed Smith LLP and Perkins Coie LLP, prestigious and well-respected law firms with substantial securities class action litigation practices, whose lawyers tenaciously represented the interests of their clients throughout

this Action. Grunfeld Decl. ¶92. Notwithstanding this formidable opposition, Lead Counsel's thorough investigation, ability to present a strong case, and demonstrated willingness to vigorously prosecute the Action, ultimately resulted in the favorable Settlement. *Id.* Consequently, this factor militates in favor of the requested fee. *See Veeco*, 2007 WL 4115808, at *7 ("That Plaintiffs' Counsel was able to obtain a substantial settlement from these Defendants confirms the quality of Plaintiffs' Counsel's representation … and is a factor in determining the reasonableness of the fee request.").

### 5.    The Requested Fee in Relation to the Settlement Amount

Courts have interpreted this factor as requiring the review of the fee requested in terms of the percentage it represents of the total recovery. "When determining whether a fee request is reasonable in relation to a settlement amount, the court compares the fee application to fees awarded in similar securities class-action settlements of comparable value." *Comverse*, 2010 WL 2653354, at *3. As discussed in detail in Section II(B), *supra*, the requested 33.3% fee is consistent with percentage fees that courts in the Second Circuit have award in comparable complex cases, particularly where it reflects an amount that is less than counsel's lodestar. Accordingly, the requested fee is reasonable in relation to the Settlement.

### 6.    Public Policy Considerations Support the Requested Fee

"In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered." *Maley*, 186 F. Supp. 2d at 373. This is because private actions such as this one serve to further the objective of the federal securities laws to protect investors. "[The Supreme] Court has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the [SEC]." *Tellabs*, 551 U.S. at 313. If the "important public policy [of enforcing the securities laws] is to be carried

19

out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook." *Flag Telecom*, 2010 WL 4537550, at *29. "[A]s a practical matter, lawsuits such as this one can only be maintained if competent counsel can be retained to prosecute them. This will occur if courts award reasonable and adequate compensation for such services where successful results are achieved." *City of Providence*, 2014 WL 1883494, at *18.

Here, Lead Counsel invested substantial amounts of time and money vigorously pursuing allegedly serious wrongdoing by a public enterprise, and they did so on a fully contingent basis. Had Lead Counsel not done so, the Settlement Class would have received no compensation whatsoever. Accordingly, public policy considerations favor Lead Counsel's attorneys' fee request. *See City of Birmingham*, 2020 WL 7413926, at *2 ("Protecting investors from fraudulent or misleading investments serves the public interest, and Lead Counsel's fees should reflect the important goal of 'serv[ing] as an inducement for lawyers to make similar efforts in the future.'") (quoting *Wal-Mart*, 396 F.3d at 96).

### D.    The Reaction of the Settlement Class to Date Supports the Requested Fee

The reaction of the Settlement Class to date also supports the fee request. Through March 5, 2024, the Claims Administrator has mailed 40,169 copies of the Postcard Notice to potential Settlement Class Members and nominees informing them that, among other things, Lead Counsel intended to apply to the Court for an award of attorneys' fees in an amount not to exceed 33.3% of the Settlement Fund and up to $250,000 in Litigation Expenses. *See* Declaration of Rochelle J. Teichmiller Regarding (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections, dated March 5, 2024 ("Initial Mailing Decl.") attached as Exhibit 1 to the Grunfeld Decl. and Ex. A thereto. While the time to object to the Fee and Expense Application does not expire until March 20, 2024, to date no

20

objections have been received. Lead Counsel will address any that are submitted in their reply papers, which will be filed on or before April 3, 2024.

Additionally, the requested fee is made with the full support of Lead Plaintiff. *See* Grunfeld Decl. Ex. 7 ("Silva Decl."). Lead Plaintiff's endorsement of the fee supports its approval. *See In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 359 (S.D.N.Y. 2005) (finding "the fact than an active and well-qualified Lead Plaintiff has approved [an award for attorneys' fees] …[is] also appropriate to consider when judging the public policy of approving a fee award").

### E.     Lead Counsel's Expenses Are Reasonable and Were Necessarily Incurred to Achieve the Benefit Obtained

Lead Counsel also requests reimbursement of $116,615.44 in expenses incurred while prosecuting the Action. In support of this request, the Grunfeld Declaration sets forth the expenses in detail and attests to their accuracy (Grunfeld Decl. at ¶¶98, 101-105), and thus such expenses are properly recovered by counsel. *See Flag Telecom*, 2010 WL 4537550, at *30 ("It is well accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class."); *In re China Sunergy Sec. Litig.*, 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011) (in a class action, attorneys should be compensated "for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation'").

As set forth in the accompanying Declaration of Michael Grunfeld, Lead Counsel incurred a total of $116,615.44 in unreimbursed expenses to prosecute this Litigation. *See* Grunfeld Decl. ¶98. These costs and charges arise from standard expenses in the course of litigation, including those for (i) experts; (ii) investigators; (iii) mediation fees; (iv) computer research; (v) press releases and newswires; and (vi) travel, among other standard expenses. *Id.* These are the type of expenses routinely approved in securities class actions because they are incurred in support of

21

Lead Counsel's prosecution of the action. *See In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 364 (E.D.N.Y. 2010) (reimbursing "expert fees, electronic research charges, long distance telephone and facsimile charges, postage and delivery expenses . . . filing fees" and "photocopying"); *see also Glob. Crossing*, 225 F.R.D. at 468 ("The expenses incurred—which include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review—are the type for which 'the paying, arms' length market' reimburses attorneys. For this reason, they are properly chargeable to the Settlement fund."); *In re PPDAI Grp. Inc. Sec. Litig.*, 2022 WL 198491, at *17 (E.D.N.Y. Jan. 21, 2022) (granting reimbursement for expenses, the largest of which were for "outside investigators, financial consultants, and the mediator"); *Burns*, 2014 WL 12917621, at *11 (same for "online legal research, copying costs, postage, court filing fees . . . private investigator, and mediation fees"). As provided in the accompanying declaration, these expenses are reflected in Lead Counsel's books and records and were necessary to prosecute this Litigation to resolution. *See* Grunfeld Decl. ¶98.

The reaction of the class also supports the reasonableness of the expense request. In the Notice that was sent out to potential Settlement Class Members, Lead Counsel indicated that they would seek reimbursement for out-of-pocket litigation expenses up to $250,000. The fact that there have been no objections to this amount—which is more than the expenses that Lead Counsel now requests—is further indicia that the expenses incurred are reasonable. *See Athale*, 2013 WL 11310686, at *9 (fact that there were "no objections" to higher expenses request in the notice indicates that the expenses actually incurred were reasonable).

**F.      The Requested Lead Plaintiff Award is Reasonable**

Lead Counsel also respectfully requests a PSLRA award of $15,000 for Plaintiff to compensate him for the time and effort he expended on behalf of the Settlement Class. Grunfeld

Decl. ¶¶106-110. The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4).

Here, Plaintiff took an active role in the litigation by, among other things: (i) regularly communicating with his attorneys regarding the posture and progress of the case; (ii) producing documents to his attorneys; (iii) reviewing all significant pleadings and memoranda; and (iv) consulting with his attorneys regarding the settlement negotiations and approving the proposed Settlement. *See* Grunfeld Decl. Ex. 7 ("Silva Decl."), ¶4. These are "precisely the types of activities that support awarding reimbursement of expenses to class representatives." *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *21 (S.D.N.Y. Dec. 23, 2009). Moreover, Lead Plaintiff played a crucial role in the success of this Action, beyond the ordinary case, by obtaining information concerning his transactions in iAnthus stock that enabled the Settlement Class to overcome the issues that the Court raised under *Morrison* in its initial decision dismissing the Amended Complaint. Indeed, when the Court rejected Defendants' motions to dismiss the Second Amended Complaint, it noted that "Silva now has furnished additional information . . . concerning how TD Ameritrade processed the transactions." ECF No. 112 at 20-21. This information formed the basis for the Court's ruling that "[t]he facts pleaded, viewed in the light most favorable to the plaintiffs, are sufficient to show a domestic purchase under *Morrison*'s second prong." *Id.*

Consequently, Lead Counsel respectfully requests that the Court grant Plaintiff's request for reimbursement of his "reasonable costs and expenses incurred in managing this litigation and representing the Class." *Marsh & McLennan*, 2009 WL 5178546, at *21 (approving $215,000 total award to two lead plaintiffs); *In re Petrobras Sec. Litig.*, 317 F. Supp. 3d 858, 873 (S.D.N.Y. 2018)

(awarding $300,000 to lead plaintiff and $100,000 to named plaintiffs where "[t]he work performed by . . . [class representatives] was beneficial to the class and included reviewing drafts of the complaints, responding to defendants' interrogatories and document requests, producing responsive documents, providing oversight of the mediation and settlement process, authorizing the settlements, and reviewing drafts of the settlements before they were filed with the Court"), *aff'd*, 784 F. App'x 10 (2d Cir. 2019); *In re Qudian Inc. Sec. Litig.*, 2021 WL 2328437, at *2 (S.D.N.Y. June 8, 2021) (awarding lead plaintiff $25,000, and class representative $12,500, for "reasonable costs and expenses directly related to [their] representation of the Class"); *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *24 (S.D.N.Y. July 21, 2020) (collecting cases and awarding $25,410 to lead plaintiff); *Veeco*, 2007 WL 4115808, at *12 (awarding lead plaintiff approximately $15,900 of $5.5 million settlement for time spent supervising litigation, explaining that such awards are "routine" in this Circuit); *see also In re Bank of Am. Corp. Sec., Deriv., & ERISA Litig.*, 772 F.3d 125, 132 (2d Cir. 2014) (affirming award of approximately $453,000 to representative plaintiffs).

## III.    CONCLUSION

For the foregoing reasons, Lead Counsel respectfully request that the Court award attorneys' fees in the amount of $965,700, plus accrued interest; $116,615.44 in Litigation Expenses incurred by Lead Counsel, plus accrued interest; and $15,000 to Lead Plaintiff pursuant to the PSLRA. A proposed order will be submitted with Lead Counsel's reply papers, after the deadline for objecting has passed.

Dated: March 6, 2024                        Respectfully submitted,

                                            */s/ Michael Grunfeld*
                                            Jeremy A. Lieberman
                                            Michael Grunfeld
                                            Brandon M. Cordovi
                                            **POMERANTZ LLP**

600 Third Avenue, Floor 20
New York, NY 10016
Phone: 212-661-1100
Fax: 917-463-1044
jalieberman@pomlaw.com
mgrunfeld@pomlaw.com
bcordovi@pomlaw.com

*Lead Counsel for Lead Plaintiff and the
Settlement Class*

**BRONSTEIN, GEWIRTZ & GROSSMAN,
LLC**

Peretz Bronstein
Eitan Kimelman
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
Fascimile: (212) 697-7296
peretz@bgandg.com
eitank@bgandg.com

*Additional Counsel for Lead Plaintiff*

25

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that the foregoing document was electronically filed with the Clerk of

Court via the CM/ECF system, which will send Notice of such filing to all counsel of record.


Dated: March 6, 2024                              */s/ Michael Grunfeld*
                                                  Michael Grunfeld