O4A6JOSC                        Civil Conference

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

JOSE ANTONIO SILVA, *et al*,

                Plaintiffs,

        v.                              20 CV 3135(LAK)

iANTHUS CAPITAL HOLDINGS, INC.
*et al*,

                Defendants.

------------------------------x
                                        New York, N.Y.
                                        April 10, 2024
                                        10:00 a.m.

Before:

                        HON. LEWIS A. KAPLAN,

                                        District Judge

                        APPEARANCES

POMERANTZ LLP
     Attorneys for Plaintiffs
BY:  MICHAEL GRUNFELD

LEVINE LEE LLP
     Attorneys for Defendant iAnthus
BY:  SETH L. LEVINE
     CHAD ALBERT

REED SMITH LLP
     Attorneys for Defendant Gotham Green
BY:  JASON MAYER

PERKINS COIE LLP
     Attorneys for Defendant Hadley C. Ford
BY:  ADAM R. MANDELSBERG

O4A6JOSC                    Civil Conference

(Case called; appearances noted)

THE COURT:  I asked you to come in because I'm not sure about a number of things in relation to this settlement. First of all, are you able to tell me now how many class members there are?

MR. GRUNFELD:  Your Honor, I don't know the exact number of settlement class members.

THE COURT:  Well, do you have an estimate?

MR. GRUNFELD:  Well, I can say, your Honor, that over 44,000 copies of the notice were sent.  And given the volume of trading in iAnthus stock, the number of class members should be at least in the thousands or tens of thousands, if not more.

THE COURT:  And as of today, how many proofs of claim have you gotten?

MR. GRUNFELD:  As of April 2nd, there were 1,612 proofs of claim.  I spoke with the claims administrator in advance of the hearing, and I believe there are approximately 1800 claims as of earlier this week, and the claims period goes until April 17.

THE COURT:  And how many shares are covered by those 1800?

MR. GRUNFELD:  I'm not sure about that, your Honor.

THE COURT:  Any idea?

MR. GRUNFELD:  I could only estimate, but given the price of iAnthus stock, I would estimate there are many

O4A6JOSC                    Civil Conference

thousands of shares.  But I'm not sure.

THE COURT:  Well, what's the basis for the estimate?

MR. GRUNFELD:  Just based on experience.  But I don't have that information at hand.

THE COURT:  What percentage of the universe of shares eligible to participate held by the 40-some thousand people to whom you sent notice are covered by the filed claims?

MR. GRUNFELD:  I'm also not sure about that.  It would also be hard to determine that because the settlement is limited to shareholders that engaged in domestic transactions, and so that's very case-specific.

THE COURT:  So did you send out 40,000 notices without regard to whether they were domestic or not domestic?

MR. GRUNFELD:  The claims administrator sent out notices to brokers who would then send out or give the claims administrator information of their holders.  I believe that those brokers are U.S. brokers.  But the criteria for a domestic transaction is in the possession of the claimant.

THE COURT:  So I don't have any way of knowing, if I understand you correctly, at least based on what you've told me so far, whether the class members who have filed claims, account for one-one hundredth of a percent of people if they file claims if they're eligible to collect money, or 75 percent, right?

MR. GRUNFELD:  I don't have that information.  What I

O4A6JOSC                    Civil Conference

do know is that the number of claims that have been filed are
consistent with what the claims administrator sees for cases of
this size.  So it's within the realm of what would be expected.

THE COURT:  Define what you mean by "cases of this
size."

MR. GRUNFELD:  Cases with -- where this number of
notices are sent out, which is determined based on the
information that the brokers have for investors whose shares
they cover.

THE COURT:  Is that something that I should take
comfort from or not?

MR. GRUNFELD:  I take comfort from the fact that --

THE COURT:  I'm sure you do.

MR. GRUNFELD:  That it's in line with other similar
cases.

THE COURT:  Is that something I should take comfort
from?

MR. GRUNFELD:  I think so.  But we can also provide
your Honor with additional information if that would be
helpful.

THE COURT:  Is there any conceivable set of
circumstances in which anybody who has filed a claim would
recover more than 100 cents on the dollar of the loss computed
according to your proposed plan of allocation?

MR. GRUNFELD:  No.  That's set out in the plan of

O4A6JOSC                    Civil Conference

allocation, that claimants cannot recover more than their

recognized loss.

THE COURT:  What happens if there's money left over?

MR. GRUNFELD:  That's a rare occurrence.  But if that

were to happen, the settlement provides that that would go to a

designated charitable organization.

THE COURT:  I don't believe that's what it says.

MR. GRUNFELD:  Let me --

THE COURT:  You may be right, because there are a lot

of papers here.  I thought what it said was that if there's

money left over, you might make a secondary distribution to

claimants.

MR. GRUNFELD:  You're right.  The secondary

distribution -- but the secondary distribution is only -- would

never exceed a claimant's recognized loss.  The secondary

distribution is if the first distribution, there was money left

over because of rounding or something like that, and then

there's money left over --

THE COURT:  So you're telling me there's a particular

cy pres provision.

MR. GRUNFELD:  I'm looking.  I'm looking for that

provision in the stipulation.

THE COURT:  Anybody else know?  Why don't you provide

that in a letter?

MR. GRUNFELD:  Yes, your Honor.

THE COURT:  Now, your papers say that the settlement amount is basically one-sixth of what a full recovery would be if the case were tried successfully to verdict.  That would be true if all potential claimants claimed, yes?

MR. GRUNFELD:  That's right, your Honor.

THE COURT:  And if 1 percent of the claimants have claimed, just to pick a number, and assuming what you say about a cy pres provision is accurate, basically almost nothing would go to claimants unless they turned out to be a large majority of the eligible shares, which we don't know, and the rest would go to some charitable organization; is that right?

MR. GRUNFELD:  That's right, in theory.  That's extremely rare in securities class action settlements.  And the fact that there have already been over 1800 claims suggests that's an extremely unlikely scenario.

THE COURT:  Well, I don't understand why you say that. This is a settlement for pennies.  There's no real money on the table.  I don't mean to denigrate $2.9 million, but this is a trivial settlement as compared to the general rung of securities class action settlements.  And I just don't know why I should assume that your supposition is accurate.

MR. GRUNFELD:  Well, again, it's based on the number of claims that have been filed so far.  1800 and more are going to come in between now and the claims filing deadline, suggests that the claims will come out to significantly more than --

O4A6JOSC                Civil Conference

THE COURT:  Well, if the claims are made in relation to eligible transactions by claimants that are representative of the class generally, then it would cover 1800 divided by 40 million, the percentage of the total claims that are possible.

MR. GRUNFELD:  I'm not sure -- excuse me, but the 40 million number.  I'm not sure what that's in reference to.

THE COURT:  Well, you said you sent out 40 million notices.

MR. GRUNFELD:  44,000 notices.

THE COURT:  44,000.  Excuse me.  I stand corrected.

44,000.  So it's in the nature of 2 or 3 percent.

MR. GRUNFELD:  Well, the notice program is intentionally broad, so we rather err on sending out more notices than being too narrow.  So presumably, a substantial amount of people who receive the notice determine that their manageable to file a claim for one reason or another.

THE COURT:  Let's say that's half.  So now we're up to 5 or 6 percent.

MR. GRUNFELD:  Your Honor, I think that that would be a pretty standard claims rate.  As we discussed before, that might or might not be a positive factor in your Honor's view.

THE COURT:  A pretty standard claims rate for cases in which the anticipated distribution would average 7 cents a share.  I mean, in order to send any claims, somebody has to

O4A6JOSC                    Civil Conference

buy a stamp, and the cost of the stamp is eight times the

per-share settlement.

MR. GRUNFELD:  Well, claims can also be submitted

online.

THE COURT:  You get my point.

MR. GRUNFELD:  I understand, your Honor.  But in

assessing the amount per share, it's also important to look at

the share price.  And so 7 cents per share on a stock trading

at 1 dollar is the equivalent -- I hope my quick math is

correct, but is the equivalent of $7 per share on the stock

trading at $100 per share.

THE COURT:  What was this stock trading at at the

relevant period?

MR. GRUNFELD:  It was -- I need to check that.  But it

was on the relatively low side.  I do know that as of the

current time, the stock and the reconstituted form of the

company trades at literally pennies.  During the class period,

it was I believe under $10.  But I'm trying to check that.

So, your Honor, and I'm looking at your Honor's

decision on the motion, the second motion to dismiss.  iAnthis'

share price was $3.69 at the beginning of the class period in

this case, and then it continued to drop over the course of the

class period.

THE COURT:  I'm obviously worried about the efficacy

of the notice in all the circumstances.  I'm obviously worried

O4A6JOSC                    Civil Conference

about whether any material value is going to pass to anybody but the lawyers.  And I need a lot more information to evaluate that.

Now, I think you have to do a much better job of persuading me that this is something that ought to go forward, and that has a lot to do with identifying where the money is going.  I don't know the answer on cy pres.  I'm not confident of the answer, though I'm not suggesting that you're not speaking in good faith to whether there's any way anybody could recover here more on the settlement than they lost in the first place, assuming that your expert's view is reliable, which raises another question in my mind.

Who is your expert?  I'm sure it must have been identified at some point, but I don't remember it.

MR. GRUNFELD:  Our expert is Dr. Zachary Nye.

THE COURT:  Okay.  And how did he get to this 16.6 percent figure?

MR. GRUNFELD:  So, your Honor, that is based on taking the corrective disclosures alleged in the second amended complaint that remain in the case following your Honor's decision on the second motion to dismiss and taking the ones that are statistically significant and multiplying -- essentially multiplying those share price drops by the amount of shares that are estimated based on complicated trading models to be eligible for damages.  And when you add up those

figures, that's how you get to the 16.6 million figure.

THE COURT:  I'd like to see this all laid out.  And if he can estimate that, he ought to be able to estimate on a similar basis how much would go to claimants as a percentage of how much would have gone to all eligible persons, had they submitted claims.

I mean, here we are.  We've cranked up all this machinery.  We spent three-plus years litigating.  We're talking about legal expenses, on the plaintiffs' side only, claimed somewhere in the general ballpark of a million dollars.  I understand it doesn't cross the seven-figure threshold.  And I'd like to know how much these class members are actually going to get as a percentage of their losses, as a percentage of the universe.

Doesn't make any sense for society to spend a couple million dollars on legal fees, counting all the lawyers involved, to bring forth this tiny little redistribution of wealth.  I'm concerned about it.

Anybody want to add anything, either Mr. Grunfeld or anybody else?

MR. GRUNFELD:  I would add, your Honor, an important factor to consider also is in addition to the size of the company, it's -- $2.9 million for a company the size of iAnthus is more significant than that amount for a much larger company.  It's also important to consider that at the time of litigation

O4A6JOSC                    Civil Conference

and mediation, iAnthus had gone through a restructuring in Canada, and so it didn't exist in the form it existed as a defendant in the case, which also limited the amount of funds available to pay a settlement here.

And in addition to that, this was not a straightforward case.  There were complications this arose along the course of litigation that made settlement a favorable option.  But we can also provide you with any additional information that would be helpful to follow up.

THE COURT:  Thank you.  Anyone else want to say anything?

I mean, this is a settlement in the nature of an insurance premium based on the hypothesis that it's buying some kind of protection against absent class members who didn't make a claim in circumstances where, if somebody ever made a claim, I don't know if it would stand up anyway in terms of the protection that the defendants think they are buying.

All things seems much ado about very little.

MR. LEVINE:  If I may, your Honor.

THE COURT:  Mm-hmm.

MR. LEVINE:  Your Honor, I know that plaintiffs' counsel will get back to you after talking to the claims administrator with the issues you asked for.

I'd like to emphasize to the Court that this settlement, given the circumstances, and while I fully

O4A6JOSC                    Civil Conference

appreciate the Court's comments about its size, the settlement is actually a substantial achievement for the plaintiffs, for the reason that this Court would recall, this case was initially dismissed in its entirety on *Morrison* grounds.

Then, the second after they pursued that and had to make an individualized claim about the lead plaintiff, a large portion of the remainder of the case was dismissed.  And so what you really were left with was a very small potential claim with enormous difficulty because since these are traded over-the-counter in the United States, they have to have a domestic transaction.  It was a very difficult case.

And as Mr. Grunfeld has pointed out, iAnthus is in a far different position.  I believe its stock this morning was trading at just over two cents.  And so I do think that while I recognize that there's a substantial question as a policy matter generally about some class action settlements, I actually think in this context, the fact that the plaintiffs were able to I think convince us that there should be a settlement here is more substantial than it might seem simply from the numbers because it was a very, very difficult case and a case that --

THE COURT:  Look.  I understand it was a difficult case.  And I understand -- you represent the issuer, is that it?

MR. LEVINE:  Yes, sir.

THE COURT:  I understand that there comes a point where the price gets so low that it's pretty much a wash. Paying the legal fees to see it to the end on the one hand or paying the plaintiffs' legal fees and getting it rid of it, I understand it.  I mean, I represented lots of defendants in these kinds of cases.

MR. LEVINE:  I know you did, your Honor.

THE COURT:  Not this case, but others.

There were a lot of settlements that were legal fees settlements, much bigger legal fees, much bigger settlements.

Well, you've heard my reservations.

MR. GRUNFELD:  Your Honor, if I could just add.  This is somewhat building on what I was saying before, but I think when you take into account the size of the company and also the smaller number of claimants than would exist for a larger company, the recovery that claimants will get in the settlement is not insignificant.  So even if it comes out --

THE COURT:  I don't know if it's insignificant or not.

MR. GRUNFELD:  We can provide your Honor with additional information on this.

THE COURT:  I really need to know that.

MR. GRUNFELD:  Yes.

THE COURT:  Because on the face of it, somebody who had had 100 shares and is in the preferred time period, may, if that person is lucky and if there's no way they can recover

O4A6JOSC                    Civil Conference

more than the putative loss, is going to get a check someday for $48.  Wow, I don't think you can take a cab ride to 96th Street for that.

MR. GRUNFELD:  That's right.  But someone who had 100 shares, that means their investment would have totaled several hundred dollars.  So it still is in proportion to --

THE COURT:  What are we doing?  This isn't small claims court.

MR. GRUNFELD:  There are presumably -- and I understand we need to provide your Honor with additional information.  But there are presumably shareholders who had more than 100 shares, and they would receive larger recoveries.

THE COURT:  Maybe, but show me.  I mean, really. Maybe what we need to do is have a new class action vehicle available to small claims court.  I mean, this case has, over the years, taken a significant amount of your time and mine. And, you know, I do it because it's my job, and that's fine. I'm not complaining about that.  But is this an appropriate allocation of resources for society, and that's what I'm looking for help on.

Okay.  I thank you.  Obviously nothing personal.  I'm just trying to get my arms around whether to approve this.

MR. GRUNFELD:  Thank you, your Honor.  We will plan to provide additional information.  Is there a particular date by which you'd like?

O4A6JOSC                    Civil Conference

THE COURT:  No.  There isn't, actually.  I mean, nothing is going to happen unless and until you get me more information and you persuade me.

MR. GRUNFELD:  Thank you, your Honor.

THE COURT:  Okay.  Thank you.

(Adjourned)